UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| SAUL MARTINEZ, SARAH MARTINEZ; JAMES DONALDSON; PEGGY DONALDSON, INDIVIDUALLY AND FOR THE ESTATE OF ADRIAN BUTLER, ELDRIDGE BUTLER; WALTER TOLLEFSON, INDIVIDUALLY AND FOR THE ESTATE OF JOHN TOLLEFSON, MARY STEINMAN, JESSICA MECKLENBURG, KATHRYN MILLER; RANDALL WENDLING, INDIVIDUALLY AND FOR THE ESTATE OF MICHAEL WENDLING, CARRIE WENDLING; BRYAN ANDERSON, ROBERT ANDERSON, JANET WASWO, JIM WASWO, BRIANA WASWO; KAYLEEN SCHILD, INDIVIDUALLY AND FOR THE ESTATE OF RICHARD SCHILD, KEELY MARIE SCHILD, KOBY SCHILD, BRUCE SCHILD, BROOKS SCHILD; MIRTHA POUNCE, INDIVIDUALLY AND FOR THE ESTATE OF ROLAND CALDERON, A.R.C., a Minor, A.J.C., a Minor, ROSA MILAGROS ASCENCIO, SAUL RAUDA, YENY RAUDA, JASMYN RAUDA, EVELYN RAUDA; WENDY GREEN (WEIKEL), INDIVIDUALLY AND FOR THE ESTATE OF IAN WEIKEL, J.W., a minor, CHAD WEIKEL; TAMMY RICHARD, INDIVIDUALLY AND FOR THE ESTATE OF BRANDON TEETERS, GLENN RICHARD, HEATHER RICHARD; YARISSA TORRES, INDIVIDUALLY AND FOR THE ESTATE OF TEODORO TORRES; NICHOLAS PAUPORE, MARIE PAUPORE, CODY PAUPORE, MAILEY PAUPORE, SHARON OSBORNE, JOE PAURORE, THOMAS PAUPORE, LESLIE PAUPORE BUENO, JOE | CASE NO.: 1:16-cv-02193-EGS<br><br>**JURY TRIAL DEMANDED** |

1

PAUPORE; BRIAN SAARISTO, CHERYL )
SAARISTO, BRIAN SAARISTO, JR., )
LEAH MARIE SAARISTO, SHIRLEY )
ANN SAARISTO, BRENDA ANGELL, )
BARBARA LIIMATAINEN; LONNIE )
FORD, INDIVIDUALLY AND FOR THE )
ESTATE OF JOSHUA A. FORD, LINDA )
MATTISON-FORD, JESSICA MATSON, )
SHAWN FORD; COREY SCHLENKLER, )
INDIVIDUALLY AND FOR THE )
ESTATE OF WILLIAM THORNE, )
KAREN THORNE, DOYLE THORNE, )
JOEY ROBINSON; JOHN A. BOTTS, )
JENNIFER BOTTS, DARA BOTTS, JOHN )
S. BOTTS, ELIZABETH CUNNINGHAM )
(BOTTS);  DANIEL PEREZ, )
INDIVIDUALLY AND FOR THE )
ESTATE OF EMILY PEREZ, VICKI )
PEREZ, KEVYN PEREZ; BRIAN BEEM, )
ELIZABETH BEEM, CASSANDRA )
BEEM, KAITLYN BEEM, KELLY BEEM, )
DIANE BEEM, JOSEPH BEEM, JOSEPH )
BEEM JR., CYNTHIA COLON; DIANE )
TRAYNOR SOWINSKI, INDIVIDUALLY )
AND FOR THE ESTATE OF NICHOLAS )
SOWINSKI, JARED SOWINSKI, AUSTIN )
SOWINSKI; BRANDON BYERS, MEGAN )
BYERS, CAMERON BYERS; )
SAMANTHA GAGE, INDIVIDUALLY )
AND FOR THE ESTATE OF JOSEPH )
GAGE, MICHAEL GAGE, RANDY )
GAGE, TAMARA GAGE, JULIE ROSA; )
JENNIFER WHITE, INDIVIDUALLY )
AND FOR THE ESTATE OF LUCAS )
WHITE, JULIA BROOKS, MARCUS )
RAMOS, LYLE BROOKS; JOSHUA )
COPE, ERICA OWENS (f/k/a COPE), )
PHILIP COPE, LINDA COPE, JACOB )
COPE, JONATHAN COPE, L.C. a Minor; )
AMY MORRIS, INDIVIDUALLY AND )
FOR THE ESTATE OF DANIEL MORRIS, )
GLENN MORRIS, ADAM MORRIS, )
CASSIDY MORRIS; KRISTY PEARSON, )
INDIVIDUALLY AND FOR THE )
ESTATE OF ANDREW NELSON; )
MARIAH COWARD; DEREK GAGNE, )
FAYE MROCZKOWSKI; AUDREY )

BARBER, INDIVIDUALLY AND FOR
THE ESTATE OF BRANDON STOUT,
CALLIE MCGEE, STEPHANIE
BENEFIELD;  MICHELLE WAGER;
TRAVIS VENDELA, MARIANNE
VENDELA; NADIA CADAVERO,
INDIVIDUALLY AND FOR THE
ESTATE OF JONATHAN CADAVERO,
MICHELLE DEARING (f/k/a
CADAVERO), KRISTIA MARKARIAN,
DAVID CADAVERO; JOANNA HARRIS,
INDIVIDUALLY AND FOR THE
ESTATE OF BLAKE HARRIS, J.H. a
Minor, DEBORAH HARRIS; JOHN
MAYO, INDIVIDUALLY AND FOR THE
ESTATE OF BARRY W. MAYO,
REBECCA MAYO, ANDY MAYO;
KATHY MOORE, INDIVIDUALLY AND
FOR THE ESTATE OF RYAN D.
RUSSELL, THOMAS EDISON-MOORE,
JR.; ERIN DRUCTOR, INDIVIDUALLY
AND FOR THE ESTATE OF BLAKE
STEPHENS; JAKE HAMILTON
ALTMAN, NADJA ALTMAN, J.A., a
Minor, GLORIA PROSSER, MICHAEL
ALTMAN, CHARLES ALTMAN; LOUIS
DAHLMAN, KAY STOCKDALE,
**LARRY STOCKDALE,** LUCAS
DAHLMAN, AMBER DAHLMAN;
JAMES SCHUMANN, INDIVIDUALLY
AND FOR THE ESTATE OF JASON
SCHUMANN, BENJAMIN SCHUMANN,
KRISTIE NELSON, KAYLA NELSON,
BRENT ANDERSON; JERRAL
HANCOCK, J.H. a Minor, A.H. a Minor,
STACIE SCHERNY, SAMANTHA
HANCOCK, DIRRICK BENJAMIN,
SAVANNAH TSCHERNY; BRENDA
RICHARDS, INDIVIDUALLY AND FOR
THE ESTATE OF SHAWN GAJDOS;
JULIE PAYNE, INDIVIDUALLY AND
FOR THE ESTATE OF CAMERON
PAYNE, A.P, a Minor, K.P. a Minor; JULIE
MONTANO, INDIVIDUALLY AND FOR
THE ESTATE OF JOSHUA MODGLING,
KEITH MODGLING, CHRISTOPHER
MODGLING, KELLILYYN MODGLING,

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

MICHELLE MODGLING, KENNETH )
SCHAFFER; JOSEPH ZAPFE, EDWARD )
ZAPFE; CHELSEA ADAIR, )
INDIVIDUALLY AND FOR THE )
ESTATE OF JAMES ADAIR; JOHN )
TAKAI, MAE TAKAI, JONAMAE )
TAKAI, NIANA TAKAI, K.T., a Minor, )
I.T., a Minor, PATRICIA CRUZE, JUAN L. )
TAKAI, JOLENE TAKAI, JERMAINE )
TAKAI; CONSTANCE AHEARN, KEVIN )
AHEARN; PAMELA MCKEAN, FOR )
THE ESTATE OF KEITH KLINE, BETTY )
JEAN KLINE, JOHN KLINE, JR.; )
ANTHONY LILL, INDIVIDUALLY AND )
FOR THE ESTATE OF ERIC LILL, CODY )
LILL, M.L., a Minor, CHARMAINE LILL, )
KORTNE JONES, SKYE OTERO; )
SIMONA FRANCIS, INDIVIDUALLY )
AND FOR THE ESTATE OF LERON )
WILSON; DAVID KUBE, )
INDIVIDUALLY AND FOR THE )
ESTATE OF CHRISTOPHER KUBE, )
DEBBIE OTTE, JONATHAN KUBE, )
JESSICA KUBE, JASON KUBE, )
JENNIFER KUBE; LAURA GONZALEZ, )
INDIVIDUALLY AND FOR THE )
ESTATE OF ZACHARIAH GONZALEZ, )
BENEDICT GONZALEZ; **JAKE** )
**GONZALEZ**; DAVID WAKEMAN, )
INDIVIDUALLY AND FOR THE )
ESTATE OF DUSTIN WAKEMAN, )
MARGARET WAKEMAN, WILLIAM )
WAKEMAN; SHERRI COTTRELL, )
BRANDY COTTRELL, MEGAN )
COTTRELL, E.C., a Minor, JAMES )
COTTRELL, DOESHIE WATERS, )
NORRIS WATERS; LAURA RUSSELL )
KENNEDY, INDIVIDUALLY AND FOR )
THE ESTATE OF JONATHAN EDDS, )
JULIA EDDS, BARRY EDDS, JOEL )
EDDS; ANDREW TONG; LEESHA )
CROOKSTON, INDIVIDUALLY AND )
FOR THE ESTATE OF DUNCAN )
CROOKSTON; STEPHANIE )
MARCIANTE, INDIVIDUALLY AND )
FOR THE ESTATE OF LUIGI )
MARCIANTE, JR., L.M. a Minor, MARIA )

MARCIANTE, LUIGI MARCIANTE,
ENZA BALESTRIERI; JOSHUA WELLS,
J.W., a Minor, LYDIA LANTRIP, BILLIE
WELLS, JR., DAVID BLAKE LANTRIP;
BRYAN WAGNER; JEANETTE KNAPP,
INDIVIDUALLY AND FOR THE
ESTATE OF DAVID KNAPP; NORMAN
FORBES IV; JENNIFER RUBIO, N.R., a
minor; DEMPSEY BENNETT,
INDIVIDUALLY AND FOR THE
ESTATE OF DURRELL BENNETT,
DORIS BENNETT, DARNELL
BENNETT; JULIE ROSENBERG,
INDIVIDUALLY AND FOR THE
ESTATE OF MARK ROSENBERG, J.R. a
Minor, M.R. a Minor; MONIQUE
SHANTEL GREEN RICHARD, LOIS
RICHARD, JOSEPH RICHARD JR.,
CARMEN RICHARD BILLEDEAUX;
JONMARIE PEARSON, INDIVIDUALLY
AND FOR THE ESTATE OF ANDREW
PEARSON; WALTER MIXON,
INDIVIDUALLY AND FOR THE
ESTATE OF JUSTIN MIXON, MELINDA
MIXON, TIA MIXON, T.R.M., a Minor,
KENNETH MIXON, KIMBERLY
SPILLYARDS; LISA THOMPSON,
INDIVIDUALLY AND FOR THE
ESTATE OF JOSHUA PLOCICA,
BRENNA CORBIN, LOWELL
THOMPSON; JOHN BLICKENSTAFF,
MISTY BLICKENSTAFF, M.B., a Minor,
C.B., a Minor, PAM JONES, JARED
BLICKENSTAFF, ADRIANNE
BLICKENSTAFF, TRISTA CARTER;
GARY L. HENRY; THE PUBLIC
ADMINISTRATOR FOR THE COUNTY
OF NEW YORK o/b/o THE ESTATE OF
JOSE ULLOA, MELANIE ATZMANN,
S.U., a Minor, JOSE ULLOA SR.,
FRANCISCA MARMOL, RUBERTERNA
ULLOA, STEPHANIE MARMOL;
LORAMAY DIAMOND, INDIVIDUALLY
AND FOR THE ESTATE OF SEAN
DIAMOND, TAYLOR DIAMOND,
MADISON DIAMOND, SEAN
DIAMOND, A.D. a minor, SALLY

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

DIAMOND WILEY, JAMES MICHAEL )
WILEY, JASON DIAMOND, MICHAEL )
DIAMOND; TRISTA MOFFETT, )
INDIVIDUALLY AND FOR THE )
ESTATE OF MICHAEL ANAYA,
CHERYL ANAYA, CARMELO ANAYA, )
JR.; CHARLENE WILCOX, )
INDIVIDUALLY AND FOR THE )
ESTATE OF CARLOS WILCOX, )
BIANCA WILCOX, ONA WILCOX, )
CHARLES WILCOX III;  JOSH CRAVEN, )
HOLLY CRAVEN; MARIA VAZQUEZ, )
INDIVIDUALLY AND FOR THE )
ESTATE OF OMAR VAZQUEZ, PABLO )
VAZQUEZ, PABLO VAZQUEZ, JR., )
MARISEL VAZQUEZ, JAVIER )
VAZQUEZ; JASON RZEPA, )
CASSANDRA RZEPA, K.R., a Minor, )
C.R., a Minor, ANN RZEPA, DAVID )
SHAIDELL; VANESSA BEYERS, )
INDIVIDUALLY AND FOR THE )
ESTATE OF NATHAN BEYERS, TYLER )
BEYERS, E.B., a Minor, TIM BEYERS,
SONJA BEYERS; )
                                        )
                                        )
                    Plaintiffs,         )
            v.                          )
                                        )
                                        )
ISLAMIC REPUBLIC OF IRAN                )
                                        )
                    Defendant.          )

## SECOND AMENDED COMPLAINT

## I.   NATURE OF THE ACTION

1.   This is a civil action pursuant to the Foreign Sovereign Immunities Act, 28 U.S.C.

§1605A (hereinafter "FSIA") brought against the Defendant, the Islamic Republic of Iran ("Iran")

by the estates and families of United States nationals and/or members of the U.S. Armed Forces

(as defined in 10 U.S.C. §101) who were killed or injured by Iran and/or its agents and proxies in

Iraq from 2004 to 2011.

2.   Iran's aforementioned agents and proxies included the U.S.-designated "Foreign

6

Terrorist Organization" ("FTO") (as that term is defined in 8 U.S.C. §1189 of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")), Hezbollah; the U.S.-designated FTO, the Islamic Revolutionary Guard Corps ("QF"), whose subdivision known as the Islamic Revolutionary Guard Corps-Qods Force ("IRGC-QF") is a U.S.-designated Specially Designated Global Terrorist ("SDGT"); and other terrorist agents and proxies that included a litany of Iraqi Shia terror groups (referred to herein collectively as "Special Groups"), including but not limited to an FTO, Kata'ib Hezbollah ("KH").

3.      The United States officially designated Iran as a State Sponsor of Terrorism ("SSOT") on January 19, 1984, pursuant to §6(j) of the Export Administration Act, §40 of the Arms Export Control Act, and §620A of the Foreign Assistance Act. Iran has maintained that ignominious designation as an SSOT since 1984.

4.      The United States designated Hezbollah a Specially Designated Terrorist ("SDT") on January 25, 1995; a Foreign Terrorist Organization ("FTO") on October 8, 1997, and a "Specially Designated Global Terrorist" ("SDGT") on October 31, 2001, pursuant to E.O. 13224.

5.      The United States designated the IRGC as an FTO on April 15, 2019; and as an SDGT on October 13, 2017.

6.      The United States designated the QF as a SDGT on October 25, 2007.

7.      At all times relevant to this Second Amended Complaint, the IRGC and QF were instrumentalities and extensions of Iran, funded by the Iranian government and acting in strict accordance with its directives, and as such they were and are Iranian agents which were acting within the scope of their agency and/or political subdivision status with and for Iran.

8.      At all times relevant to this Second Amended Complaint, Hezbollah was an agent and proxy of Iran, the IRGC, and the QF, and was funded, trained, equipped, and directed by Iran, the IRGC, and the QF, and was acting in strict accordance with their directives, and as such was acting within the course and scope of its agency with and for Iran.

9.      At all times relevant to this Second Amended Complaint, the Special Groups were

agents and proxies of Iran, the IRGC, the QF, and Hezbollah, and were funded, trained, equipped, and directed by Iran, the IRGC, the QF, and Hezbollah, and acting in strict accordance with their directives, and as such were acting within the course and scope of their agency with and for Iran.

## II.      JURISDICTION AND VENUE

10.      This Court has jurisdiction over this matter and over Iran pursuant to 28 U.S.C. §§1330(a), 1330(b), 1331, 1332(a)(2) and 1605A(a)(1), which create subject-matter and personal jurisdiction for civil actions for wrongful death and personal injury against State Sponsors of Terrorism and their officials, employees and agents.

11.      28 U.S.C. §1605A(c) provides a federal private right of action against a foreign state that is an SSOT, and also against any official, employee or agent of that foreign state while acting within the scope of his or her office, employment or agency, for wrongful death, personal injury and related torts.

12.      Venue is proper in this District pursuant to 28 U.S.C. §1391(f) (4), which provides that a civil action may be brought in the District Court for the District of Columbia if the action is brought against a foreign state.

## III.     THE DEFENDANT

13.      At all times relevant to this Complaint, Iran is and was a foreign state within the meaning of 28 U.S.C. §1603 and designated an SSOT pursuant to §6(j) of the Export Administration Act of 1979 (50 U.S.C. App. §2405(j)).

14.      Iran provided material support and resources for the commission of and in certain instances participated in the actual commission of acts of extrajudicial killing, within the meaning of 28 U.S.C. §1605A, including the terrorist attacks that are the subject matter of this lawsuit in which Plaintiffs were killed, injured or maimed while participating in peacekeeping activities in post-Saddam Hussein Iraq from 2004 through 2011.

15.      The Government of Iran is politically and ideologically hostile to the United

States and its allies, and has consistently provided material support for acts of international terrorism, including extrajudicial killings, torture and hostage takings, particularly through its IRGC, QF and its Lebanese proxy, Hezbollah.

16.     According to an April 30, 2009, U.S. Department of State Report on State Sponsors of Terrorism (the "2009 State Department Report"):

> Despite its pledge to support the stabilization of Iraq, Iranian authorities continued to provide lethal support, including weapons, training, funding, and guidance, to Iraqi militant groups that targeted Coalition and Iraqi forces and killed innocent Iraqi civilians.

17.     The Islamic Revolutionary Guard Corps ("IRGC") is nominally comprised of five branches (Ground Forces, Air Force, Navy, Basij militia, and (QF")), in addition to a counterintelligence directorate and representatives of the Supreme Leader. Several of the IRGC's and QF's leaders have been sanctioned under U.N. Security Council Resolution 1747 and by the United States Government.

18.     According to the U.S. State Department's 2005 Country Reports on Terrorism:

> "[t]he IRGC was increasingly involved in supplying lethal assistance to Iraqi militant groups, which destabilizes Iraq … Senior Iraqi officials have publicly expressed concern over Iranian interference in Iraq, and there were reports that Iran provided funding, safe passage, and arms to insurgent elements."

19.     According to the U.S. State Department's 2008 Country Reports on Terrorism:

> [In 2007 the IRGC-QF] continued to provide Iraqi militants with Iranian-produced advanced rockets, sniper rifles, automatic weapons, mortars that have killed thousands of Coalition and Iraqi Forces, and explosively formed projectiles (EFPs) that have a higher lethality rate than other types of improvised explosive devices (IEDs), and are specially designed to defeat armored vehicles used by Coalition Forces.

20.     The QF's "Department 2000" manages the Government of Iran's relationship with Hezbollah, which includes the flow of some of Iran's most sophisticated weapon systems, including military-grade Explosively Formed Penetrators ("EFPs"), anti-tank guided missiles, Improvised Explosive Devices ("IEDs"), and various rockets, such as the Fajr-5.

21.     EFPs in large part were used to injure and kill the Plaintiffs. Such bombs are sometimes inaccurately called "Improvised Explosive Devices" ("IEDs"); in reality, the EFPs were not "improvised" at all, but were professionally manufactured and specifically designed by Iran, as well as its agents and proxies, including Hezbollah, to target U.S. and Coalition Forces' armor-protected vehicles.

22.     In October 2007, the QF was designated as an "SDGT" pursuant to E.O. 13324 for its terrorism-related activities. The U.S. Treasury Department's press release announcing the designation noted that:

> The Qods Force has had a long history of supporting Hezbollah's military, paramilitary, and terrorist activities, providing it with guidance, funding, weapons, intelligence, and logistical support. The Qods Force operates training camps for Hezbollah in Lebanon's Bekaa Valley and has reportedly trained more than 3,000 Hezbollah fighters at IRGC training facilities in Iran. The Qods Force provides roughly $100 to $200 million in funding a year to Hezbollah and has assisted Hezbollah in rearming in violation of U.N. Security Council Resolution 1701.
>
> *In addition, the Qods Force provides lethal support in the form of weapons, training, funding, and guidance to select groups of Iraqi Shia militants who target and kill Coalition and Iraqi forces and innocent Iraqi civilians.* (Italics added.)

## IV.     IRAN'S MATERIAL SUPPORT TO ACTS OF TERRORISM IN IRAQ 2004-2011

### A.     ISLAMIC REVOLUTIONARY GUARD CORPS - QODS FORCE IN IRAQ

23.     Even before the U.S. invasion of Iraq in 2003, the IRGC and QF had long cultivated ties to Shia opposition groups opposed to Saddam Hussein's brutal regime, including the Badr Corps that was headquartered in Iran but spread about throughout Iraq in the 1990s.

24.     During that time, the Badr Corps smuggled men and weapons into Iraq to conduct attacks against the Hussein regime.

25.     Before 2003, the Badr Corps served as Iran's most important surrogate inside Iraq, acting as a *de facto* arm of the QF.

26.     After Saddam Hussein's overthrow in 2003, the Badr Corps renamed itself the Badr Organization, and many of its operatives joined the newly formed Iraqi security forces.

27.     Published reports indicate that thousands of members of the Badr Organization remained on the QF payroll after 2004.

28.     Several senior Badr Corps operatives later emerged as key conduits for funneling weapons to Iranian agents and proxies in Iraq from 2004-2011, including Abu Mustafa al-Sheibani, a key smuggler of deadly Iranian IEDs and EFPs, and Jamal Ja'far Muhammad, a/k/a Abu Mahdi al-Muhandis (a.k.a. "The Engineer"), who later led Kata'ib Hezbollah ("KH").

29.     "Department 1000" of the QF, known as the Ramezan Corps, was in charge of Iraq operations and remains the largest QF command outside of Iran. It coordinated, armed and influenced the Badr Organization.

30.     Although the Badr Organization evolved into a major political organization with seats in the new Iraqi parliament, it also played a significant role in facilitating Special Groups operations in Iraq.

31.     A segment of senior Special Groups commanders such as Al-Muhandis are, or were, initially Badr Corps personnel.

32.     President Bush declared on May 1, 2003, that "major combat operations in Iraq have ended."

33.     On May 23, 2003, the Coalition Provisional Authority established as the interim government for Iraq and disbanded the Iraqi military forces.

34.     The U.N. Security Council authorized the post-conflict occupation of Iraq by Coalition Forces in October 2003 to maintain "security and stability." S.C. Res. 1511, para. 13, U.N. Doc. S/RES/1511 (Oct. 16, 2003).

35.     Although U.S. policy (supported by U.N. Security Council resolutions) was to establish peace and stability in Iraq in the hopes of establishing a democratic government, Iran viewed the U.S. peacekeeping efforts in Iraq as a potential threat to its regime.

11

36.     Rather than engage in armed conflict with the U.S. or other Coalition Forces, Iran chose to undermine U.S. peacekeeping efforts by supporting terrorism and sectarian violence in Iraq.

37.     After 2003, the IRGC inserted hundreds of its Iranian-trained operatives into Iraq's state security organs (notably the Ministry of Interior intelligence structure) in part through its influence within the Badr Organization.

38.     In addition to its coordination with the Badr Organization, the Ramezan Corps also cultivated, armed, trained and supported several Shia terror groups in Iraq that the U.S. Military later termed "Special Groups."

39.     Although a June 7, 2004, U.N. Security Council Resolution (S.C. Res. 1546, U.N. Doc. S/RES/1546) expressly assigned Coalition Forces in Iraq the task of helping Iraq "*by preventing and deterring terrorism*," Iran set out to target Coalition Forces and force them out of Iraq.

40.     In sum, from October 16, 2003, and onward, even though U.S. Military personnel in Iraq were participants in an internationally recognized peacekeeping mission, Iran embarked on a policy of terrorism, murder, kidnapping and torture to thwart those efforts.

41.     Iran opposed U.S. peacekeeping efforts and initiated acts of international terrorism against American Military personnel, Coalition Forces and Iraqi citizens with the goals of destabilizing Iraq and increasing Iranian influence in that country.

42.     Iran, through its authorized agents, and proxies, and instrumentalities acting within the scope of their employment, agency and direction from the Iranian government, provided material support and/or resources that facilitated and/or in certain instances actually participated in acts of torture, extrajudicial killing and hostage-taking that caused personal injury or death to more than one thousand Americans in Iraq.

43.     In particular, Iranian agents and proxies developed and cultivated Shia Special Groups, providing training in the use of EFPs, IEDs, Improvised Rocket Assisted

Munitions ("IRAMs", rocket-propelled grenades, sniper fire and mortars and operational and computer security.

### B.     SHIA "SPECIAL GROUPS"

#### 1.     JAYSH AL MAHDI and the PROMISED DAY BRIGADES

44.     Jaysh al Mahdi (the "Mahdi Army" or "JAM") was established by radical Shia cleric Muqtada al-Sadr in June 2003. Like the Badr Organization, it received support and training from the IRGC.

45.     On April 18, 2004,JAM led the first major armed confrontation against U.S.-led forces in Iraq from the Shia community.

46.     JAM was co-founded by Imad Mughniyah, one of Hezbollah's senior commanders, acting under the direction of Iran.

47.     JAM expanded its territorial control of mixed or predominantly Shia neighborhoods and displaced or killed the local Sunni population. JAM was able to gain initial control in many of the neighborhoods surrounding Baghdad (including "Sadr City") by offering the Shi'a population protection and social services.

48.     Al-Sadr purportedly dissolved part of his militia after 2007, but he maintained a small group of Iranian-supported terrorists called the Promised Day Brigades ("PDB") to carry out attacks against Coalition Forces.

49.     The PDB received funding, training and weapons from the IRGC, which is an arm of the Government of Iran.

50.     The PDB actively targeted U.S. forces in an attempt to disrupt security operations and further destabilize Iraq. By way of example, on June 28, 2011, the PDB issued a statement claiming responsibility for 10 mortar and Katyusha rocket attacks against U.S. Military convoys in which U.S. officials confirmed that three U.S. troops were killed.

## 2.   KATA'IB HEZBOLLAH

51.     For many years, Kata'ib Hezbollah ("KH") functioned as Iran's go-to terrorist group in Iraq and received support from Hezbollah, including training in weapons use; IED construction and operation; and sniper, rocket, and mortar attacks.

52.     Historically, KH operated mainly in Shia areas of Baghdad, such as Sadr City, and throughout the south.

53.     On June 24, 2009 the United States designated KH a " Foreign Terrorist Organization" ("FTO").

54.     The U.S. State Department's announcement concerning KH's designation stated:

> The organization has been responsible for numerous violent terrorist attacks since 2007, including improvised explosive device bombings, rocket propelled grenade attacks, and sniper operations. KH also targeted the International Zone in Baghdad in a November 29, 2008 rocket attack that killed two U.N. workers.  In addition,  KH has threatened the lives of Iraqi politicians and civilians that support the legitimate political process in Iraq.

55.     KH was also simultaneously designated a Specially Designated Global Terrorist ("SDGT") because it was "responsible for numerous terrorist acts against Iraqi, U.S., and other targets in Iraq since 2007."

56.     The Treasury Department's press release announcing KH's designation explained that it had "committed, directed, supported, or posed a significant risk of committing acts of violence against Coalition and Iraqi Security Forces."

57.     The press release also quoted then-Under Secretary for Terrorism and Financial Intelligence, Stuart Levey as stating: "The IRGC-Qods Force provides lethal support to Kata'ib Hezbollah and other Iraqi Shia militia groups who target and kill Coalition and Iraqi Security Forces."

58.     The press release further reported that between March 2007 and June 2008, KH led a number of attacks against U.S. forces in Iraq, advising: "[A]s of 2008, Kata'ib Hezbollah was funded by the IRGC-Qods Force and received weapons training and support from

Lebanon-based Hezbollah. In one instance, Hezbollah provided training-- to include building and planting IEDs and training in coordinating small and medium arms attacks, sniper attacks, mortar attacks, and rocket attacks---to Kata'ib Hezbollah members in Iran."

59.     Furthermore, the press release noted:

> Recordings made by Kata'ib Hezbollah for release to the public as propaganda videos further demonstrate that Kata'ib Hezbollah conducted attacks against Coalition Forces. In mid- August 2008, Coalition Forces seized four hard drives from a storage facility associated with a Kata'ib Hezbollah media facilitator. The four hard drives included approximately 1,200 videos showing Kata'ib Hezbollah's sophisticated planning and attack tactics, techniques, and procedures, and Kata'ib Hezbollah's use of the most lethal weapons--including RPG-29s, IRAMs, and EFPs--against Coalition Forces in Iraq.

> One of the hard drives contained 35 attack videos edited with the Kata'ib Hezbollah logo in the top right corner. Additionally, between February and September 2008, Al-Manar in Beirut, Lebanon, broadcast several videos showing Kata'ib Hezbollah conducting multiple attacks against Coalition Forces in Iraq.

> Immediately preceding the Government of Iraq's approval of the United States-Iraq security agreement in late November 2008, Kata'ib Hezbollah posted a statement that the group would continue fighting Coalition Forces and threatened to conduct attacks against the Government of Iraq if it signed the security agreement with the United States.

60.     In 2008, the U.S. Department of Defense stated "[KH], also known as Hezbollah Brigades, is a terrorist group believed to receive funding, training, logistics and material support from Iran to attack Iraqi and coalition forces using what the military calls 'explosively formed penetrators' – roadside bombs designed to pierce armor-hulled vehicles – and other weapons such as rocket-assisted mortars.

61.     KH's leadership includes Abu Mahdi al-Muhandis (real name: Jamal al-Ibrahimi), a longstanding member of the Badr Organization who lived for many years in Iran.

62.     Al-Muhandis was wanted in Kuwait for his alleged role in the 1983 bombings of the American and French embassies in Kuwait City, as well as for his alleged involvement in the assassination attempt on the Kuwaiti Emir in 1985.

63.     Al-Muhandis was designated a Specially Designated Global Terrorist ("SDGT") in

July of 2009 on the same day KH was so designated. The press release noted:

> As of early 2007, al-Muhandis formed a Shia militia group
> employing instructors from Hezbollah to prepare this group and
> certain Jaysh al-Mahdi (JAM) Special Groups for attacks against
> Coalition Forces. The groups received training in guerilla warfare,
> handling bombs and explosives, and employing weapons-to
> include missiles, mortars, and sniper rifles. In another instance as of
> September 2007, al-Muhandis led networks that moved
> ammunition and weapons--to include explosively formed
> penetrators (EFPs)--from Iran to Iraq, distributing them to certain
> JAM militias to target Coalition Forces. As of mid-February 2007,
> al-Muhandis also ran a weapons smuggling network that moved
> sniper rifles through the Iran-Iraq border to Shia militias that
> targeted Coalition Forces.
>
> Al-Muhandis also provided logistical support for attacks against
> Iraqi Security Forces and Coalition Forces conducted by JAM
> Special Groups and certain Shia militias. In one instance, in April
> 2008, al-Muhandis facilitated the entry of trucks--containing
> mortars, Katyusha rockets, EFPs, and other explosive devices--
> from Iran to Iraq that were then delivered to JAM Special Groups
> in Sadr City, Baghdad. Additionally, al-Muhandis organized
> numerous weapons shipments to supply JAM Special Groups who
> were fighting Iraqi Security Forces in the Basrah and Maysan
> provinces during late March-early April 2008.
>
> In addition to facilitating weapons shipments to JAM Special
> Groups and certain Shia militias, al-Muhandis facilitated the
> movement and training of Iraq-based Shia militia members to
> prepare them to attack Coalition Forces. In one instance in
> November 2007, al-Muhandis sent JAM Special Groups members
> to Iran to undergo a training course in using sniper rifles. Upon
> completion of the training course, the JAM Special Groups
> members had planned to return to Iraq and carry out special
> operations against Coalition Forces. Additionally, in early March
> 2007, al-Muhandis sent certain Shia militia members to Iran for
> training in guerilla warfare, light arms, marksmanship, improvised
> explosive devices (IED) and anti-aircraft missiles to increase the
> combat ability of the militias to fight Coalition Forces.
>
> In addition to the reasons for which he is being designated today,
> al-Muhandis participated in the bombing of Western embassies in
> Kuwait and the attempted assassination of the Emir of Kuwait in
> the early 1980s. Al-Muhandis was subsequently convicted in
> absentia by the Kuwaiti government for his role in the bombing
> and attempted assassination.

In a July 2010 press briefing, U.S. General Ray Odierno described  KH as "clearly connected to

Iranian IRGC."

### 3.    ASA'IB AHL AL-HAQ ("AAH")

64.    Asa'ib Ahl al-Haq ("AAH") is a Shia Special Group, supported and influenced by Hezbollah and the QF, which has conducted assassinations and operations against Iraqi civilians, Iraqi Security Forces and Coalition Forces.

65.    AAH was originally established by a follower of Muqtada al-Sadr named Qais al-Khazali.

66.    His brother, Laith Khazali, also helped lead the organization.

67.    AAH split from al-Sadr's JAM organization in 2006. After that time, AAH conducted thousands of EFP and IED attacks against U.S. and Iraqi forces; targeted kidnappings of Westerners; launched rocket and mortar attacks on the U.S. Embassy; murdered American soldiers; and assassinated Iraqi officials.

68.    At all relevant times, AAH received significant funding, training and arms from Iran, and closely coordinated with Iran's QF and Hezbollah.

69.    In particular, Hezbollah operative Ali Musa Daqduq provided training to AAH terrorists.

70.    Hezbollah and the QF provided JAM, the PDB, KH, AAH and other Shia Special Groups with a variety of weapons used to target U.S. and Coalition Forces engaged in their post-2003 peacekeeping mission.

71.    These weapons included signature Iranian munitions, such as EFPs, IEDs, and IRAMs, as well as 107 mm rockets (often used as part of IRAMs), 120 mm and 60 mm mortars, RPG launchers and other small arms.

### C.    EXPLOSIVELY FORMED PENETRATORS ("EFPs")

72.    One of Iran's primary forms of material support and/or resources that facilitated extrajudicial killings of U.S. citizens in Iraq was the financing, manufacturing and deployment of

EFPs.

73.    As noted above, the EFPs deployed by the IRGC and Hezbollah in Iraq were not truly "improvised" explosive devices at all, but were professionally manufactured and specifically designed to target U.S. and Coalition Forces' armor-protected vehicles.

74.    EFPs constitute "weapons of mass destruction" as that term is defined in 18 U.S.C. §2332a(2)(A).

75.    First used by Hezbollah against Israeli armored vehicles in Lebanon, EFPs are known as shaped charges, usually made with a manufactured concave copper disk and a high explosive packed behind the liner.

76.    In Iraq, EFPs were often triggered by a passive infra-red device that set off the explosion within the EFP's casing, forcing the copper disk forward and turning it into a high velocity slug that could pierce most military-grade armor.

77.    To produce these weapons, copper sheets are often loaded onto a punch press to yield copper discs. These discs are annealed in a furnace to soften the copper. The discs are then loaded into a large hydraulic press and formed into the disk-like final shape.

78.    EFPs are far more sophisticated than homemade explosive devices such as traditional IEDs, and they are designed specifically to target vehicles such as armored patrols and supply convoys, though Hezbollah and the Special Groups have deployed them against U.S. and Iraqi civilians as well.

79.    Although Iran's use of EFPs was publicly disclosed by U.S. and British officials in 2005, the official identification of *specific* attacks as EFP attacks was not first publicly disclosed until 2010.

80.    In 2006, the U.S. State Department's Country Reports on Terrorism further documented Iran's specific efforts to provide terrorists with lethal EFPs to ambush and murder U.S. and other Coalition Forces:

        Iranian government forces have been responsible for at least some

of the increasing lethality of anti-Coalition attacks by providing
Shia militants with the capability to build IEDs with explosively
formed projectiles similar to those developed by Iran and Lebanese
Hezbollah. The Iranian Revolutionary Guard was linked to armor-
piercing explosives that resulted in the deaths of Coalition Forces.
The Revolutionary Guard, along with Lebanese Hezbollah ,
implemented training programs for Iraqi militants in the
construction and use of sophisticated IED technology. *These
individuals then passed on this training to additional militants in
Iraq.* (emphasis added.)

81.     Also in 2006, Brigadier Gen. Michael Barbero, Deputy Chief of Staff for

Strategic Operations of the Multi-National Force – Iraq stated: "Iran is definitely a destabilizing

force in Iraq. I think it's irrefutable that Iran is responsible for training, funding and equipping

some of these Shia extremist groups and also providing advanced IED technology to them, and

there's clear evidence of that."

82.     Brigadier Gen. Kevin Bergner commented on Iran funding of Hezbollah

operatives in Iraq:

> Actions against these Iraqi groups have allowed coalition
> intelligence officials to piece together the Iranian connection to
> terrorism in Iraq […] Iran's Quds Force, a special branch of Iran's
> Revolutionary Guards, is training, funding and arming the Iraqi
> groups. […] It shows how Iranian operatives are using Lebanese
> surrogates to create Hezbollah-like capabilities. And it paints a
> picture of the level of effort in funding and arming extremist
> groups  in  Iraq…. The groups operate throughout Iraq. They
> planned and executed a string of bombings, kidnappings, sectarian
> murders and more against Iraqi citizens, Iraqi forces and coalition
> personnel. They receive arms -- including explosively formed
> penetrators, the deadliest form of improvised explosive device --
> and funding from Iran. They also have received planning help
> and orders from Iran.

83.     In May 2007, the Commander of the Multinational Division-Center, U.S. Army

Major General Richard Lynch, commented that "[m]ost of our casualties have come from

improvised explosive devices. That's still the primary threat to our soldiers -- IEDs. And we

have an aggressive campaign to counter those IEDs, but they still are taking a toll on our

soldiers: 13 killed, 39 soldiers wounded. *What we're finding is that the technology and the

financing and the training of the explosively formed penetrators are coming from Iran.* The EFPs

are killing our soldiers, and we can trace that back to Iran." (emphasis added.)

84.     According to the U.S. State Department's 2007 Country Reports on Terrorism:

> Despite its pledge to support the stabilization of Iraq, Iranian authorities continued to provide lethal support, including weapons, training, funding, and guidance, to some Iraqi militant groups that target Coalition and Iraqi security forces and Iraqi civilians. In this way, Iranian government forces have been responsible for attacks on Coalition forces. The Islamic Revolutionary Guard Corps (IRGC)-Qods Force, continued to provide Iraqi militants with Iranian-produced advanced rockets, sniper rifles, automatic weapons, mortars that have killed thousands of Coalition and Iraqi Forces, and explosively formed projectiles (EFPs) that have a higher lethality rate than other types of improvised explosive devices (IEDs), and are specially designed to defeat armored vehicles used by Coalition Forces. The Qods Force, in concert with Lebanese Hezbollah, provided training outside Iraq for Iraqi militants in  the construction   and use of sophisticated IED technology and other advanced weaponry. These individuals then passed on this training to additional militants inside Iraq, a "train-the-trainer" program. In addition, the Qods Force and Hezbollah have also provided training inside Iraq. In fact, Coalition Forces captured a Lebanese Hezbollah operative in Iraq in 2007.

85.     Other U.S. Government reports, such as the Department of Defense's December 2007 "Measuring S t a b i l i t y  and  Security  in  Iraq"  quarterly  report  to  Congress, similarly concluded that:

> Iranian Islamic Revolutionary Guard Corps - Qods Force (IRGC-QF) efforts to train, equip, and fund Shia extremists also continue despite reported assurances to Prime Minister Maliki that Iran will cease lethal aid.

86.     These observations continued in 2008. According to the U.S. State Department's 2008 Country Reports on Terrorism:

> The Qods Force, an elite branch of the Islamic Revolutionary Guard Corps (IRGC), is the regime's primary mechanism for cultivating and supporting terrorists abroad. The Qods Force provided aid in the form of weapons, training, and funding to HAMAS and other Palestinian terrorist groups, Lebanese Hezbollah, Iraq-based militants, and Taliban fighters in Afghanistan …
>
> Despite its pledge to support the stabilization of Iraq, Iranian authorities continued to provide lethal support, including weapons, training, funding, and guidance, to Iraqi militant groups that

targeted Coalition and Iraqi forces and killed innocent Iraqi civilians. Iran's Qods Force continued to provide Iraqi militants with Iranian-produced advanced rockets, sniper rifles, automatic weapons, and mortars that have killed Iraqi and Coalition Forces as well as civilians. Tehran was responsible for some of the lethality of anti-Coalition attacks by providing militants with the capability to assemble improvised explosive devices (IEDs) with explosively formed projectiles (EFPs) that were specially designed to defeat armored vehicles. The Qods Force, in concert with Lebanese Hezbollah, provided training both inside and outside of Iraq for Iraqi militants in the construction and use of sophisticated IED technology and other advanced weaponry.

### D.   IMPROVISED ROCKET ASSISTED MUNITIONS ("IRAMs")

87.     Along with EFPs, IRAMs were a signature weapon of Shia militias in Iraq that were supplied by the IRGC.

88.     An IRAM is a rocket-fired improvised explosive device made from a large metal canister – such as a propane gas tank – filled with explosives, scrap metal and ball bearings and propelled by rockets, most commonly 107 mm rockets launched from fixed or mobile sites by remote control. They are designed to cause catastrophic damage and inflict mass casualties

89.     According to The Joint Improvised Explosive Device Defeat Organization ("JIEDDO") of the U.S. Department of Defense, IRAMs were first introduced by Iran in November 2007 against U.S. personnel in Iraq.

90.     Although Iran's use of IRAMs was publicly disclosed by U.S. officials after their introduction in 2007, systematic identification of *specific* attacks as IRAM attacks was not publicly disclosed until 2010.

91.     IRAM attacks occurred primarily in Baghdad and in the Shia dominated areas in southern Iraq, where Iranian-backed Special Groups primarily operated.

92.     All of the foregoing support from Iran and its agents for attacks on Coalition Forces and Iraqi civilians was financed and facilitated in substantial part by material support in the form of funds transfers initiated by Iran through Iranian banks on behalf of and for the

benefit of Hezbollah and other agents of Iran's IRGC and QF.

## V.     THE PLAINTIFFS

## ATTACK 1: JULY 14, 2005 - KIRKUK, IRAQ

### A. James Donaldson

93.     Specialist James Donaldson was a citizen and national of the United States and a member of the United States Army when he was wounded near Kirkuk, Iraq, on July 14, 2005. Donaldson is a resident of the State of Idaho.

94.     On that date at about 6:42 a.m., Specialist Donaldson, along with two other Soldiers riding in an M1114 HUMVEE as part of a three-vehicle convoy, were on a patrol at C25 Sector, Kirkuk, Iraq, when an EFP detonated from the side of the vehicle in which he was riding, thus causing both legs to be blown off and other very serious physical and emotional injuries.

95.     The convoy of which Specialist Donaldson was a part was traveling back to Forward Operating Base ("FOB") Normandy when the EFP attack occurred.

96.     Photographs of the blown-up HUMVEE vehicle revealed that its armor had circular puncture holes, a signature finding of EFP devices.

97.     The device used to injure Specialist Donaldson was an Iranian-manufactured and -designed EFP provided to Iranian-funded and -trained Special Groups in Iraq.

98.     The SIGACT report specifically indicated that this IED strike was a "possible shape charge" that penetrated Specialist Donaldson's M1114 up-armored HUMVEE door armor was "consistent with an EFP strike."

99.     As a result of the EFP attack, Specialist Donaldson lost both legs, his right leg below the knee, and his left leg above the knee; and experienced multiple other and additional physical and emotional injuries, including multiple debridement procedures, treatments for multiple infections, loss of the right dominant index finger, causing permanent radial nerve damage in the right forearm resulting in lost grip strength, traumatic brain injury ("TBI"), post-concussive

syndrome, anxiety, cognitive disorder, and sleep apnea.

100.    As a result of the EFP attack, and the physical and emotional injuries he suffered as a direct result therefrom, Specialist Donaldson has experienced severe physical and emotional pain and suffering in the past and will experience same into the indeterminable future; has incurred medical bills for medical and rehabilitation services rendered and will incur same into the indeterminable future; has incurred an overwhelming loss of income and earnings capacity and will experience same into the indeterminable future; has experienced permanent injuries to his person and psyche; and has experienced severe mental anguish, anxiety and depression and will experience same into the indeterminable future.

## ATTACK 2: JULY 27, 2005 – CAMP ASHRAF, IRAQ

### B.  The Butler Family

101.    Specialist Adrian Josiah Butler was a citizen and national of the United States and a member of the United States Army when he was killed in Iraq on July 27, 2005.

102.    On that date, Specialist Butler was positioned as the gunner of an M1114 HUMVEE vehicle traveling on Route Dover in Baghdad, Iraq, just north of Sadr City, when an IED detonated nearby, thus causing the death of Specialist Butler.

103.    The Final Autopsy Report concluded that Specialist Butler died due to "multiple blast injuries" in the subject attack such that his entire torso was blown off at the sacrum level. Later, the charred lower body torso and parts of Specialist Butler had to be identified with DNA to match the torso with what was left of his body.

104.    The device used to kill Specialist Butler was an Iranian-provided IED to Iranian-funded and -trained Special Groups in Iraq.

105.    Plaintiff, Peggy Donaldson, was at the time of Specialist Butler's death and still is a citizen of the United States and a resident of the State of Michigan.  She is the Mother of Adrian Josiah Butler.

106.    Plaintiff, Eldridge Butler, was at the time of Specialist Butler's death and still is a

citizen of the United States and a resident of the State of Michigan.  He is the Brother of Adrian Josiah Butler.

107.    Plaintiff, Peggy Donaldson, brings an action individually and on behalf of the Estate of Adrian Josiah Butler, as its Personal Representative in Wayne County, Michigan, under File No.: 2018-841373-DE.

108.    As a direct result of the IED attack, and the resulting wrongful death of Adrian Butler, the Estate of Adrian Butler is entitled to recover for the substantial economic and earnings capacity loss.

109.    As a direct result of the IED attack, and the resulting death of Adrian Josiah Butler, Plaintiffs, Peggy Donaldson and Eldridge Butler, have experienced various solatium-related damages, including intentional infliction of severe emotional distress, severe mental anguish, extreme emotional pain and suffering, a loss of society, companionship, comfort, advice and counsel, and substantial economic loss.

### C.  The Tollefson Family

110.    Specialist John Olliver Tollefson was a citizen and national of the United States and a member of the United States Army when he was killed in Iraq on July 27, 2005.

111.    On that date, Specialist Tollefson was riding in an M1114 HUMVEE vehicle traveling on Route Dover in Baghdad, Iraq, just north of Sadr City, when an IED detonated nearby, thus causing the death of Specialist Tollefson.

112.    The device used to kill Specialist Tollefson was an Iranian-provided IED to Iranian-funded and -trained Special Groups in Iraq.

113.    Plaintiff, Walter Tollefson, was at the time of Specialist Tollefson's death and still is a citizen of the United States and a resident of the State of Wisconsin.  He is the Father of John Olliver Tollefson.

114.    Plaintiff, Mary Steinman, was at the time of Specialist Tollefson's death and still is a citizen of the United States and a resident of the State of Wisconsin.  She is the Mother of John

Oliver Tollefson.

115.    Plaintiff, Jessica Mecklenburg, was at the time of Specialist Tollefson's death and still is a citizen of the United States and a resident of the State of Wisconsin.  She is the Sister of John Olliver Tollefson.

116.    Plaintiff, Kathryn Miller, was at the time of Specialist Tollefson's death and still is a citizen of the United States and a resident of the State of Wisconsin.  She is the Sister of John Olliver Tollefson.

117.    Plaintiff, Walter Tollefson, brings an action individually and on behalf of the Estate of John Olliver Tollefson, as its Personal Representative in Fond du Lac County, Wisconsin, under File No.: 2018PR00047.

118.    As a direct result of the IED attack, and the resulting wrongful death of John Olliver Tollefson, the Estate of John Tollefson is entitled to recover for the substantial economic and earnings capacity loss.

119.    As a direct result of the IED attack, and the resulting death of John Olliver Tollefson, Plaintiffs, Walter Tollefson, Mary Steinman, Jessica Mecklenburg, and Kathryn Miller have experienced various solatium-related damages, including intentional infliction of severe emotional distress, severe mental anguish, extreme emotional pain and suffering, a loss of society, companionship, comfort, advice and counsel, and substantial economic loss.

## ATTACK 3: SEPTEMBER 26, 2005 - SHU'AIBA, IRAQ

### D.  The Wendling Family

120.    Specialist Michael Jacob Wendling was a citizen and national of the United States and a member of the United States Army when he was killed in Iraq on September 26, 2005.

121.    On that date, Specialist Wendling was driving a vehicle along Main Supply Route ("MSR") Tampa as part of a 40-vehicle convoy near Basra City, near its intersection with Route Heart/Tampa, when an EFP detonated near the vehicle, thus causing a massive explosion and major blast injuries to Wendling which later that day caused his death.

122.   The Army concluded that the device used to kill Michael Wendling was an Iranian-manufactured and -designed EFP provided to Iranian-funded and -trained Special Groups in Iraq.

123.   Plaintiff, Randall Wendling, was at the time of Specialist Wendling's death and still is a citizen of the United States and a resident of the State of Wisconsin.  He is the Father of Michael Wendling.

124.   Plaintiff, Carrie Wendling, was at the time of Specialist Wendling's death and still is a citizen of the United States and a resident of the State of Wisconsin.  She is the Mother of Michael Wendling.

125.   Plaintiff, Randall Wendling, brings an action individually and on behalf of the Estate of Michael Wendling, as its Personal Representative in Dodge County, Wisconsin under File No.: 2018PR000224.

126.   As a direct result of the EFP attack, and the resulting wrongful death of Michael Wendling, the Estate of Michael Wendling is entitled to recover for pain and suffering experienced by Michael Wendling between the time of the EFP attack and his death, and for the substantial economic and earnings capacity loss.

127.   As a direct result of the EFP attack, and the resulting death of Michael Wendling, Plaintiffs, Randall Wendling and Carrie Wendling, have experienced various solatium-related damages, including intentional infliction of severe emotional distress, severe mental anguish, extreme emotional pain and suffering, a loss of society, companionship, comfort, advice and counsel, and substantial economic loss.

## ATTACK 4:   OCTOBER 23, 2005 - RUSAFA DISTRICT, BAGHDAD, IRAQ

### E.  The Anderson Family

128.   Sergeant Bryan Anderson was a citizen and national of the United States and a member of the United States Army when he was seriously wounded in Iraq on October 23, 2005. He is a citizen and resident of the State of Illinois.

129.   On that date at about noon, Sergeant Anderson was riding in an up-armored

HUMVEE vehicle traveling in the Rusafa District of Baghdad, which is very close to Sadr City, when a massive explosion occurred from the left side of the vehicle, thus causing circular holes to pierce through the sides of the vehicle and copper shrapnel pieces to blow off Sergeant Anderson's legs, ultimately resulting in above-the-knee amputations of both of Sergeant Anderson's legs, and causing other very serious physical and emotional injuries.

130.    Photographs of the blown-up HUMVEE vehicle revealed that its armor had circular holes, a signature finding of EFP devices.

131.    Subsequent to the attack, Sergeant Anderson's health care providers removed copper fragments lodged in and throughout his person, another signature finding of EFP detonations.

132.    The SIGACT report concluded that it was an EFP device which was involved in the explosion.

133.    The device used to injure Sergeant Anderson was an Iranian-manufactured and -designed EFP provided to Iranian-funded and -trained Special Groups in Iraq.

134.    As a result of the attack, Sergeant Anderson lost both legs above-the-knee and his left arm below-the-elbow; severely damaged and suffered fractures to his right (dominant) hand and fingers; had shrapnel fragments blow into and all over his body; had his right lung collapse; experienced multiple surgeries to address and treat his injuries; developed decubitus ulcers on his person due to his immobility caused by his various injuries; developed heterotopic ossification on his two leg stumps; and has experienced psychological problems and issues from the horrific experience and as a result of all of his physical injuries.

135.    As a result of the EFP attack, and the physical and emotional injuries he suffered as a direct result therefrom, Sergeant Anderson has experienced severe physical and emotional pain and suffering in the past and will experience same into the indeterminable future; has incurred medical bills for medical and rehabilitation services rendered and will incur same into the indeterminable future; has incurred an overwhelming loss of income and earnings capacity and will

experience same into the indeterminable future; has experienced permanent injuries to his person and psyche; and has experienced severe mental anguish, anxiety and depression and will experience same into the indeterminable future.

136.    Plaintiff, Janet Waswo, was at the time of Sergeant Anderson's attack and still is a citizen of the United States and a resident of the State of Illinois.  She is the Mother of Sergeant Anderson.

137.    Plaintiff, James Waswo, was at the time of Sergeant Anderson's attack and still is a citizen of the United States and a resident of the State of Illinois.  He is the Step-Father of Sergeant Anderson.  James Waswo has, for most of the Life of Sergeant Anderson, acted as a "Father figure" to and for Sergeant Anderson and raised Sergeant Anderson as if he were his own son.

138.    Plaintiff, Robert Anderson, was at the time of Sergeant Anderson's attack and still is a citizen of the United States and a resident of the State of Illinois.  He is the Brother of Sergeant Anderson.

139.    Plaintiff, Briana Waswo, was at the time of Sergeant Anderson's attack and still is a citizen of the United States and a resident of the State of Illinois.  She is the Sister of Sergeant Anderson.

140.    As a direct result of the EFP attack, and the resulting serious physical and emotional injuries sustained by Bryan Anderson, Plaintiffs, Janet Waswo, James Waswo, Robert Anderson, and Briana Waswo, have experienced various solatium-related damages, including intentional infliction of severe emotional distress, severe mental anguish, extreme emotional pain and suffering, and substantial economic loss.

## ATTACK 5:  DECEMBER 4, 2005 - BAGHDAD, IRAQ

### F.  The Schild Family

141.    Sergeant First Class Richard Schild was a citizen and national of the United States and a member of the United States Army when he was killed in Iraq on December 4, 2005.

142.    On that date, Sergeant First Class Schild was on a patrol in a three-vehicle convoy

of M1114 HUMVEE vehicles near the Jurf Naddaf neighborhood near Jisr Diyala, Iraq, just east of Baghdad, when two separate arrays of EFPs detonated near the HUMVEE vehicle in which he was riding, thus causing a massive explosion, killing Schild and another Soldier in the convoy, and severely injuring three other Soldiers.

143.    The Army concluded that the devices used to kill Sergeant First Class Schild were Iranian-manufactured or -designed EFPs provided to Iranian-funded and -trained Special Groups in Iraq.

144.    The Army's Certificate of Death concluded that "projectile shrapnel injuries due to blast" were the cause of Sergeant First Class Schild's death.

145.    After the attack, the Special Group, Kata'ib Hezbollah ("KH"), released a video displaying the entire attack and taking credit for it.

146.    Plaintiff, Kay Schild, was at the time of Richard Schild's death and still is a citizen of the United States and a resident of the State of South Dakota.  She is the Widow and Wife of Richard Schild.

147.    Plaintiff, Koby Schild, was at the time of Richard Schild's death and still is a citizen of the United States and a resident of the State of South Dakota.  He is the Son of Richard Schild.

148.    Plaintiff, Keely Schild, was at the time of Richard Schild's death and still is a citizen of the United States and a resident of the State of South Dakota.  She is the Daughter of Richard Schild.

149.    Plaintiff, Bruce Schild, was at the time of Richard Schild's death and still is a citizen of the United States and a resident of the State of South Dakota.  He is the Brother of Richard Schild.

150.    Plaintiff, Brooks Schild, was at the time of Richard Schild's death and still is a citizen of the United States and a resident of the State of South Dakota.  He is the Brother of Richard Schild.

151.    Plaintiff, Kay Schild, brings an action individually and on behalf of the Estate of

Richard Schild, as its Personal Representative in Bon Homme County, South Dakota under File No.: 2018PR00022.

152.    As a direct result of the EFP attack, and the resulting wrongful death of Richard Schild, the Estate of Richard Schild is entitled to recover for the substantial economic and earnings capacity loss.

153.    As a direct result of the EFP attack, and the resulting death of Richard Schild, Plaintiffs, Kay Schild, Koby Schild, Keely Schild, Bruce Schild, and Brooks Schild have experienced various solatium-related damages, including intentional infliction of severe emotional distress, severe mental anguish, extreme emotional pain and suffering, a loss of society, companionship, comfort, advice and counsel, and substantial economic loss.

## ATTACK 6:  APRIL 12, 2006 - MISIAB, IRAQ

### G.  The Calderon Family

154.    Specialist/Tanker Roland Calderon was a citizen and national of the United States and a member of the United States Army when he was killed in Iraq on April 12, 2006.

155.    On that date, Calderon was driving an up-armored M1114 HUMVEE southbound along Route Cleveland and was the second such vehicle in a four-vehicle convoy, when an array of at least five EFPs detonated from the median strip at or near his vehicle in Najaf, Iraq, thus killing Calderon.

156.    The so-called "CIDNE" ("Combined Information Data Network Exchange") Report concluded that the devices used in the attack were in fact an array of EFPs.

157.    The so-called "CEXC" ("Combined Explosives Exploitation Cell") Report concluded that the pattern of circular puncture holes in the M1114 HUMVEE indicated that the devices used in the attack were in fact EFPs.

158.    The devices used to kill Roland Calderon were Iranian-manufactured or -designed EFPs provided to Iranian-funded and -trained Special Groups in Iraq.

159.    Plaintiff, Mirtha Ponce, was at the time of Roland Calderon's death and still is a

citizen of the United States and is a resident of the State of Georgia. She is the Widow and Wife of Roland Calderon and is the Personal Representative of the Estate of Roland Calderon in Hardee County, Florida under File No.: 252018CP000032.

160.    Plaintiff, A.R.C., a Minor, represented by his legal guardian, Mirtha Ponce, was at the time of Rolando Calderon's death and still is a citizen of the United States and is a resident of the State of Georgia. He is the Son of Roland Calderon.

161.    Plaintiff, A.J.C., a Minor, represented by his legal guardian, Mirtha Ponce, was at the time of Roland Calderon's death and still is a citizen of the United States and is a resident of the State of Georgia. He is the Son of Roland Calderon.

162.    Plaintiff, Rosa Milagro Ascencio, was at the time of Roland Calderon's death and still is a citizen of the United States and is a resident of the State of Florida. She is the Mother of Roland Calderon.

163.    Plaintiff, Saul Rauda, was at the time of Roland Calderon's death and still is a citizen of the United States and is a resident of the State of Florida. He is the Step-Father of Roland Calderon.

164.    Plaintiff, Yeny Rauda, was at the time of Roland Calderon's death and still is a citizen of the United States and is a resident of the State of Florida. She is the Sister of Roland Calderon.

165.    Plaintiff, Jasmyn Rauda, was at the time of Roland Calderon's death and still is a citizen of the United States and is a resident of the State of Florida. She is the Sister of Roland Calderon.

166.    Plaintiff, Evelyn Rauda, was at the time of Roland Calderon's death and still is a citizen of the United States and a resident of the State of Florida. She is the Sister of Roland Calderon.

167.    As a direct result of the EFP attack, and the resulting wrongful death of Roland Calderon, the Estate of Roland Calderon is entitled to recover for the substantial economic and

earnings capacity loss.

168.    As a direct result of the EFP attack, and the resulting death of Roland Calderon,

Plaintiffs, Mirtha Ponce, A.R.C., a Minor, A.J.C., a Minor, Rosa Milagro, Saul Rauda, Yeny

Rauda, Jasmyn Rauda, and Evelyn Rauda have experienced various solatium-related damages,

including intentional infliction of severe emotional distress, severe mental anguish, extreme

emotional pain and suffering, a loss of society, companionship, comfort, advice and counsel, and

substantial economic loss.

## ATTACK 7: APRIL 18, 2006 - BAGHDAD, IRAQ

### H.  The Weikel Family

169.    Captain Ian Weikel was a citizen and national of the United States and a member of

the United States Army when he was killed in Iraq on April 18, 2006.

170.    On that date, the AR 15-6 Investigative Report indicated that Captain Weikel's

armored HUMVEE vehicle in which he was riding was blown up by an EFP near the intersection

of Alternative Supply Route ("ASR") Vernon and Main Supply Route ("MSR") Tampa just north

of Baghdad, Iraq.

171.    The AR 15-6 Investigative Report concluded that: "[T]he circular shapes of the

penetrations are consistent with previous EFP attacks.  Further evidence was collected from inside

the vehicle in the form of copper fragmentation.  Melted copper is the projectile material used in

EFPs."

172.    Captain Weikel was not killed in the attack, but died later on an operating table as

health care providers tried to stabilize his condition.

173.    The device used to kill Captain Weikel was an Iranian-manufactured and -designed

EFP provided to Iranian-funded and -trained Special Groups in Iraq.

174.    Upon information and belief, the specific Iranian-funded and -trained group

perpetrating this attack was JAM/Sadrists.  JAM was formed by Muqtada al Sadr in June of 2003

in response to the United States invasion of Iraq and had as its goal the expulsion of United States

and Coalition Forces from Iraq and the establishment of an Iraqi Shiite government.

175.    The JAM/Sadrists, or the Mahdi Army, was just another one of Iran's Special Groups its QF promoted, sponsored, financed, and trained for anti-American and terroristic activities in Iraq from 2004-2011.

176.    Plaintiff, Wendy Green, was at the time of Ian Weikel's death and still is a citizen of the United States and is a resident of the State of Minnesota.  She is the Widow and Wife of Ian Weikel.

177.    Plaintiff, J.T.W., a Minor, represented by his legal guardian, Wendy Green, was at the time of Ian Weikel's death and still is a citizen of the United States and is a resident of the State of Minnesota. He is the Son of Ian Weikel.

178.    Plaintiff, Chad Weikel, was at the time of Ian Weikel's death and still is a citizen of the United States and is a resident of the State of Colorado.  He is the Brother of Ian Weikel.

179.    Plaintiff, Wendy Green, brings an action individually and on behalf of the Estate of Ian Weikel, as its Personal Representative in Bell County, Texas under Case No.: 26076.

180.    As a direct result of the EFP attack, and the resulting wrongful death of Ian Weikel, the Estate of Ian Weikel action is entitled to recover for the pain, suffering, and mental anguish experienced by Ian Weikel between the time of the EFP attack and his death, and for the substantial economic and earnings capacity loss.

181.    As a direct result of the EFP attack, and the resulting wrongful death of Ian Weikel, Plaintiffs, Wendy Green, J.T.W., a Minor, and Chad Weikel have experienced various solatium-related damages, including intentional infliction of severe emotional distress, severe mental anguish, extreme emotional pain and suffering, a loss of society, companionship, comfort, advice and counsel, and substantial economic loss.

## ATTACK 8: APRIL 20, 2006 – SHUHADA AL SYDIA, BAGHDAD, IRAQ

### I.    The Teeters Family

182.    Sergeant Brandon Teeters was a citizen and national of the United States and a

member of the United States Army when he died on May 12, 2006, due to blast injuries sustained in an EFP attack in the Dora Zone of Baghdad on April 20, 2006.

183.    On that date, Sergeant Teeters was riding in an M2A2 Bradley Fighting Vehicle just west of the intersection of Baghdad Road and the Dora Expressway in the Shuhada Al Sydia section of Baghdad.  Sergeant Teeters was in the "gunner" position in the vehicle when an array of EFPs detonated, thus causing a massive explosion, thus causing five Soldiers to be seriously injured, and one, Sergeant Teeters, to die subsequently from his blast injuries.

184.    Sergeant Teeters suffered burns over 80% of his body before being removed, alive, from the Bradley Fighting Vehicle.

185.    The Army concluded that a copper-shaped EFP hit the fuel cell on the M2A2 Bradley Fighting Vehicle in which Sergeant Teeters was then riding, thus causing a huge fire within the vehicle.

186.    The devices used to kill Sergeant Teeters were Iranian-manufactured and -designed EFPs provided to Iranian-funded and -trained Special Groups in Iraq.

187.    Plaintiff, Tammy Richard, was at the time of Brandon Teeters' death and still is a citizen of the United States and a resident of the State of Louisiana.  She is the Mother of Brandon Teeters.

188.    Plaintiff, Glenn Richard, was at the time of Brandon Teeters' death and still is a citizen of the United States and a resident of the State of Louisiana.  He is the Father of Brandon Teeters.

189.    Plaintiff, Heather Richard, was at the time of Brandon Teeters' death and still is a citizen of the United States and a resident of the State of Louisiana.  She is the Sister of Brandon Teeters.

190.    Plaintiff, Tammy Richard, brings an action individually and on behalf of the Estate of Brandon Teeters, as its Independent Administratrix in the Parish of St. Mary, Louisiana under Docket No.: 20960.

191.    As a direct result of the EFP attack, and the resulting wrongful death of Brandon Teeters, the Estate of Brandon Teeters is entitled to recover for the pain, suffering, and mental anguish experienced by Brandon Teeters between the time of the EFP attack and his death, and for the substantial economic and earnings capacity loss.

192.    As a direct result of the EFP attack, and the resulting wrongful death of Brandon Teeters, Plaintiffs, Glenn Richard, Tammy Richard and Heather Richard have experienced various solatium-related damages, including intentional infliction of severe emotional distress, severe mental anguish, extreme emotional pain and suffering, a loss of society, companionship, comfort, advice and counsel, and substantial economic loss.

## ATTACK 9: MAY 5, 2006 - BAGHDAD, IRAQ

### J.   The Torres Family

193.    Private First Class Teodoro Torres was a citizen and national of the United States and a member of the United States Army when he was killed in Iraq on May 5, 2006.

194.    On that date, Private Torres was riding in a convoy of four M1114 HUMVEE vehicles on a patrol on Highway 8 just to the north of Al Hillah and south of Baghdad, when an array of five to eight EFPs detonated and blew up the first vehicle in the convoy in which Torres was riding in the gunner's cupola, thus killing him.

195.    The Certificate of Death indicated that Private Torres was killed by "blast injuries of the pelvis and lower extremities."

196.    The Army concluded that the devices used to kill Private Torres were Iranian-manufactured and -designed EFPs provided to Iranian-funded and -trained Special Groups in Iraq.

197.    Plaintiff, Yarissa Torres, was at the time of Teodoro Torres' death and still is a citizen of the United States and a resident of the State of New York. She is the Widow of Teodoro Torres.

198.    Plaintiff, Yarissa Torres, brings an action individually and on behalf of the Estate of Teodoro Torres, as its Personal Representative in Taylor County, Texas under Case No.: 29516.

199.    As a direct result of the EFP attack, and the resulting wrongful death of Teodoro Torres, the Estate of Teodoro Torres is entitled to recover for the substantial economic and earnings capacity loss.

200.    As a direct result of the EFP attack, and the resulting death of Teodoro Torres, Plaintiff, Yarissa Torres, has experienced various solatium-related damages, including intentional infliction of severe emotional distress, severe mental anguish, extreme emotional pain and suffering, a loss of society, companionship, comfort, advice and counsel, and substantial economic loss.

## ATTACK 10: JULY 2, 2006 – KIRKUK, IRAQ

### K.  The Paupore Family

201.    Specialist Nicholas Paupore was a citizen and national of the United States and a member of the United States Army when he was seriously injured in Iraq on July 2, 2006.  Paupore is a resident of the State of Virginia.

202.    On that date, Specialist Paupore was on a patrol riding in an M114 HUMVEE vehicle along Route Ford, along with five other similar vehicles, near Kirkuk, Iraq, when a multiple array of EFPs detonated from the median strip just adjacent to the vehicle in which he was riding, thus causing his right leg to be blown off and other very serious physical and emotional injuries.

203.    The so-called "WIT" ("Weapons Intelligence Team") Report found copper fragments throughout the damaged HUMVEE, a signature finding of EFP devices and detonations.

204.    The devices used to injure Specialist Paupore were Iranian-manufactured and -designed EFPs provided to Iranian-funded and -trained Special Groups in Iraq.

205.    As a result of the EFP attack, Specialist Paupore lost his right leg above the knee, along with multiple other and additional physical and emotional injuries, including multiple debridement procedures, treatments for multiple infections, a mangled left thigh and right forearm from shrapnel, permanent radial nerve damage in the right forearm resulting in lost grip strength,

traumatic brain injury ("TBI"), post-concussive syndrome, cognitive disorder, and sleep apnea.

206.    As a result of the EFP attack, and the physical and emotional injuries he suffered as a direct result therefrom, Specialist Paupore has experienced severe physical and emotional pain and suffering in the past and will experience same into the indeterminable future; has incurred medical bills for medical and rehabilitation services rendered and will incur same into the indeterminable future; has incurred an overwhelming loss of income and earnings capacity and will experience same into the indeterminable future; has experienced permanent injuries to his person and psyche; and has experienced severe mental anguish, anxiety and depression and will experience same into the indeterminable future.

207.    Plaintiff, Maria Paupore, was at the time of Nicholas Paupore's attack and still is a citizen of the United States and is a resident of the State of Virginia. She is the Wife of Nicholas Paupore.

208.    Plaintiff, Mailey Paupore, was at the time of Nicholas Paupore's attack and still is a citizen of the United States and a resident of the State of Virginia.  She is the Daughter of Nicholas Paupore.

209.    Plaintiff, Cody Paupore, was at the time of Nicholas Paupore's attack and still is a citizen of the United States and is a resident of the State of Virginia. He is the Son of Nicholas Paupore.

210.    Plaintiff, Sharon Osborne, was at the time of Nicholas Paupore's attack and still is a citizen of the United States and is a resident of the State of Michigan. She is the Mother of Nicholas Paupore.

211.    Plaintiff, Thomas Paupore, was at the time of Nicholas Paupore's attack and still is a citizen of the United States and is a resident of the State of Arizona. He is the Father of Nicholas Paupore.

212.    Plaintiff, Leslie Paupore Bueno, was at the time of Nicholas Paupore's attack and still is a citizen of the United States and is a resident of the State of Arizona. She is the Sister of

Nicholas Paupore.

213.    Plaintiff, Joe Paupore, was at the time of Nicholas Paupore's attack and still is a citizen of the United States and is a resident of the State of Michigan. He is the Brother of Nicholas Paupore.

214.    As a result of the EFP attack, and the physical and emotional injuries suffered by Nicholas Paupore as a direct result therefrom, Plaintiffs, Maria Paupore, Mailey Paupore, Cody Paupore, Sharon Osborne, Thomas Paupore, Leslie Paupore Bueno, and Joe Paupore, have experienced various solatium-related damages, including intentional infliction of severe emotional distress, severe mental anguish, extreme emotional pain and suffering, and substantial economic loss.

## L. The Saaristo Family

215.    Sergeant Brian Saaristo was a citizen and national of the United States and a member of the United States Army when he was seriously injured in Iraq on July 2, 2006.  Saaristo is a resident of the State of Minnesota.

216.    On that date, Sergeant Saaristo was on a patrol riding in an M114 HUMVEE vehicle along Route Ford, along with five other similar vehicles, near Kirkuk, Iraq, when a multiple array of EFPs detonated from the median strip just adjacent to the vehicle in which he was riding, thus causing both of his legs to be sheared off below the knees, along with other very serious physical and emotional injuries.

217.     The so-called "WIT" ("Weapons Intelligence Team") Report found copper fragments throughout the damaged HUMVEE, a signature finding of EFP devices and detonations.

218.    The devices used to injure Sergeant Saaristo were Iranian-manufactured and -designed EFP provided to Iranian-funded and -trained Special Groups in Iraq.

219.    As a result of the EFP attack, Sergeant Saaristo lost both of his legs below the knee, along with multiple other and additional physical and emotional injuries, including multiple debridement procedures, treatments for multiple infections, hypertrophic ossification, "phantom

pain" in the areas where his legs should be, hearing loss, and an anxiety disorder.

220.    As a result of the EFP attack, and the physical and emotional injuries he suffered as a direct result therefrom, Brian Saaristo has experienced severe physical and emotional pain and suffering in the past and will experience same into the indeterminable future; has incurred medical bills for medical and rehabilitation services rendered and will incur same into the indeterminable future; has incurred an overwhelming loss of income and earnings capacity and will experience same into the indeterminable future; has experienced permanent injuries to his person and psyche; and has experienced severe mental anguish, anxiety and depression and will experience same into the indeterminable future.

221.    Plaintiff, Cheryl Saaristo, was at the time of Brian Saaristo's attack and still is a citizen of the United States and is a resident of the State of Minnesota. She is the Wife of Brian Saaristo.

222.    Plaintiff, Leah Saaristo, was at the time of Brian Saaristo's attack and still is a citizen of the United States and a resident of the State of Minnesota.  She is the Daughter of Brian Saaristo.

223.    Plaintiff, Brian Saaristo, Jr., was at the time of Brian Saaristo's attack and still is a citizen of the United States and a resident of the State of Minnesota.  He is the Son of Brian Saaristo.

224.    Plaintiff, Shirley Ann Saaristo, was at the time of Brian Saaristo's attack and still is a citizen of the United States and a resident of the State of Minnesota. She is the Mother of Brian Saaristo.

225.    Plaintiff, Brenda Angell, was at the time of Brian Saaristo's attack and still is a citizen of the United States and a resident of the State of Minnesota. She is the Sister of Brian Saaristo.

226.    Plaintiff, Barbara Liimatainen, was at the time of Brian Saaristo's attack and still is a citizen of the United States and a resident of the State of Minnesota. She is the Sister of Brian

Saaristo.

227.    As a result of the EFP attack, and the physical and emotional injuries suffered by Brian Saaristo, Plaintiffs, Cheryl Saaristo, Leah Saaristo, Brian Saaristo, Jr., Shirley Ann Saaristo, Brenda Angell, and Barbara Liimatainen have experienced various solatium-related damages, including intentional infliction of severe emotional distress, severe mental anguish, extreme emotional pain and suffering, and substantial economic loss.

## ATTACK 11: JULY 31, 2006 – AL NUMANIYAH, IRAQ

### M. The Ford Family

228.    Specialist Joshua Ford was a citizen and national of the United States and a member of the United States Army when he was killed in Iraq on July 31, 2006.

229.    On that date, Specialist Ford was driving a Bobtail truck which was vehicle No. 20 in a long convoy of 24 tractor trucks, fuel trucks, trailers, and HUMVEEs and vehicles along Alternate Supply Route ("ASR") Kiev, Zone 514, near the checkpoint outside of the entrance to the Numaniyah Iraqi Army Base near Hillah, when his truck was blown off course by an EFP detonation.

230.    The Army's investigation into this EFP attack concluded that the penetrations in the truck Specialist Ford was driving were consistent with and distinctive of an EFP array.

231.    Specialist Ford died soon after the EFP attack due to blast and shrapnel-related injuries all over his person.

232.    The devices used to kill Specialist Ford were Iranian-manufactured and -designed EFPs provided to Iranian-funded and -trained Special Groups in Iraq.

233.    Plaintiff, Lonnie Ford, was at the time of Specialist Ford's death and still is a citizen of the United States and domiciled in the State of Nebraska. He is the Father of Joshua Ford.

234.    Plaintiff, Linda Mattison-Ford, was at the time of Specialist Ford's death and still is a citizen of the United States and domiciled in the State of Nebraska. She is the Step-Mother of Joshua Ford.

235.    Plaintiff, Jessica Matson, was at the time of Specialist Ford's death and still is a citizen of the United States and a resident of the State of Nebraska. She is the Sister of Joshua Ford.

236.    Plaintiff, Shawn Ford, was at the time of Specialist Ford's death and still is a citizen of the United States and resident of the State of Nebraska. She is the Sister of Joshua Ford.

237.    Plaintiff, Lonnie Ford, brings an action individually and on behalf of the Estate of Joshua Ford, as its Personal Representative in Thurston County, Nebraska, under Case No.: 18-2.

238.    As a direct result of the EFP attack, and the resulting wrongful death of Joshua Ford, the Estate of Joshua Ford is entitled to recover for the pain and suffering experienced by Joshua Ford between the time of the EFP attack and his death, and for the substantial economic and earnings capacity loss.

239.    As a direct result of the EFP attack, and the resulting wrongful death of Joshua Ford, Plaintiffs, Lonnie Ford, Linda Mattison-Ford, Jessica Matson, and Shawn Ford have experienced various solatium-related damages, including intentional infliction of severe emotional distress, severe mental anguish, extreme emotional pain and suffering, a loss of society, companionship, comfort, advice and counsel, and substantial economic loss.

## ATTACK 12: AUGUST 24, 2006 - BAGHDAD, IRAQ

### N.  The Thorne Family

240.    Private First Class William Thorne was a citizen and national of the United States and a member of the United States Army when he was killed in Iraq on August 24, 2006.

241.    On August 24, 2006, Private Thorne was operating an M1114 HUMVEE armored vehicle for the 1st Squadron of the 10th Cavalry Regiment in Arab ad Dalim, just south of Baghdad, when an IED detonated nearby, thus killing Private Thorne and injuring two other Soldiers and destroying the M1114 HUMVEE.

242.    The devices used to kill Private Thorne were Iranian-manufactured and -designed IEDs provided to Iranian-funded and -trained Special Groups in Iraq.

243.    Plaintiff, Karen Thorne, was at the time of Private Thorne's death and still is a citizen of the United States and a resident of the State of Iowa. She is the Mother of William Thorne.

244.    Plaintiff, Doyle Thorne, was at the time of Private Thorne's death and still is a citizen of the United States and a resident of the State of Iowa. He is the Brother of William Thorne.

245.    Plaintiff, Joey Robinson, was at the time of Private Thorne's death and still is a citizen of the United States and a resident of the State of Nebraska. She is the Sister of William Thorne.

246.    As a direct result of the IED attack, and the resulting wrongful death of William Thorne, Plaintiffs, Karen Thorne, Doyle Thorne, and Joey Robinson, have experienced various solatium-related damages, including intentional infliction of severe emotional distress, severe mental anguish, extreme emotional pain and suffering, a loss of society, companionship, comfort, advice and counsel, and substantial economic loss.

## ATTACK 13: SEPTEMBER 7, 2006 - SADR CITY, IRAQ

### O.  The Botts Family

247.    Sergeant John Botts was a citizen and national of the United States and a member of the United States Army Military Police when he was seriously injured in Iraq on September 7, 2006.  Botts is a resident of the State of Texas.

248.    On that date, Sergeant Botts was acting as Team Leader/Truck Commander of a Military Police Company and riding in the front passenger seat of an unarmored M1114 HUMVEE vehicle in a patrol convoy just east of Sadr City, Iraq, when an IED suddenly detonated next to the vehicle, thus causing him to experience a traumatic amputation of his left leg and additional very serious physical and emotional injuries as a result of the blast.

249.    Botts' unit had been on "high alert" for the presence of insurgents from the Mahdi Army a/k/a Jaysh al-Mahdi ("JAM") in the region in and around Sadr City, and had been briefed

on the placement of IEDs along roadways in this region by these insurgents.

250.   The device used to injure Plaintiff John Botts was an Iranian-manufactured and -designed IED provided to Iranian-funded and -trained Special Groups in Iraq.

251.   Upon information and belief, the specific Iranian-funded and/or trained Special Group perpetrating this attack was JAM/Sadrists.  JAM was formed by Muqtada al Sadr in 2003 in response to the United States invasion of Iraq and had as its goal the expulsion of United States and Coalition Forces from Iraq and the establishment of an Iraqi Shiite Government.

252.   JAM was just another one of Iran's Special Groups its QF promoted, sponsored, financed, and trained for anti-American and terroristic activities in Iraq from 2004-2011.

253.   Investigation of the blown-up HUMVEE vehicle revealed penetration patterns, circular in nature, which are signature findings of an IED attack.

254.   As a result of the EFP attack, John Botts lost almost his entire left leg, along with multiple other and additional physical and emotional injuries, including a major right tibia fracture, a major soft tissue injury to his right calf, facial burns, shrapnel pieces lodged throughout his body, multiple debridement procedures, treatments for multiple infections and osteomyelitis, "phantom pain" in the area where his left leg should be, hepatitis C from bad transfusions, strength, traumatic brain injury ("TBI"), post-traumatic stress disorder ("PTSD"), anxiety, and depression.

255.   As a result of the EFP attack, and the physical and emotional injuries he suffered as a direct result therefrom, John Botts has experienced severe physical and emotional pain and suffering in the past and will experience same into the indeterminable future; has incurred medical bills for medical and rehabilitation services rendered and will incur same into the indeterminable future; has incurred an overwhelming loss of income and earnings capacity and will experience same into the indeterminable future; has experienced permanent injuries to his person and psyche; and has experienced severe mental anguish, anxiety and depression and will experience same into the indeterminable future.

256.   Plaintiff, Jennifer Botts, was at the time of John Botts' attack and still is a citizen of

the United States and a resident of the State of Texas. She is the Wife of John Botts.

257.     Plaintiff, Dara Botts, was at the time of John Botts' attack and still is a citizen of the United States and a resident of the State of Tennessee. She is the Mother of John Botts.

258.     Plaintiff, John Stephen "Steve" Botts, was at the time of John Botts' attack and still is a citizen of the United States and a resident of the State of Tennessee. He is the Father of John Botts.

259.     Plaintiff, Elizabeth Cunningham, was at the time of John Botts' attack and still is a citizen of the United States and a resident of the State of Tennessee. She is the Sister of John Botts.

260.     As a result of the EFP attack, and the physical and emotional injuries suffered by John Botts as a direct result therefrom, Plaintiffs, Jennifer Botts, Dara Botts, John Stephen "Steve" Botts, and Elizabeth Cunningham have suffered and experienced intentional infliction of severe emotional distress and loss of consortium-related damages.

## ATTACK 14: SEPTEMBER 12, 2006 - AL KIFL, IRAQ

### P.  The Perez Family

261.     Second Lieutenant Emily Perez was a citizen and national of the United States and was a member of the United States Army when she was killed in Iraq on September 9, 2006.

262.     On that date, Second Lieutenant Perez was providing security as the lead vehicle in a 21-vehicle convoy near Al Kifl, Iraq, riding as the front passenger in an M1114 HUMVEE armored vehicle when an array of five EFPs detonated near the vehicle, thus causing a massive explosion, thus causing her death and serious physical injuries to another Soldier in the vehicle.

263.     The Army concluded that the devices used to kill Second Lieutenant Perez were Iranian-manufactured and -designed EFPs provided to Iranian-funded and -trained Special Groups in Iraq.

264.     Plaintiff, Daniel Perez, was at the time of Emily Perez's death and still is a citizen of the United States and a resident of the State of Georgia. He is the Father of Emily Perez.

265.     Plaintiff, Vicki Perez, was at the time of Emily Perez's death and still is a citizen of

the United States and a resident of the State of Georgia. She is the Mother of Emily Perez.

266.    Plaintiff, Kevyn Perez, was at the time of Emily Perez's death and still is a citizen of the United States and a resident of the State of Maryland. He is the Brother of Emily Perez.

267.    Plaintiff, Daniel Perez, brings an action individually and on behalf of the Estate of Emily Perez, as its Personal Representative in Bell County, Texas, under Case No.: 33577.

268.    As a direct result of the EFP attack, and the resulting wrongful death of Emily Perez, the Estate of Emily Perez is entitled to recover for any pain and suffering experienced by Emily Perez between the time of the EFP attack and her death, and for the substantial economic and earnings capacity loss.

269.    As a direct result of the EFP attack, and the resulting death of Emily Perez, Plaintiffs, Daniel Perez, Vicki Perez, and Kevyn Perez have experienced various solatium-related damages, including intentional infliction of severe emotional distress, severe mental anguish, extreme emotional pain and suffering, a loss of society, companionship, comfort, advice and counsel, and substantial economic loss.

## ATTACK 15: OCTOBER 11, 2006 – SADR CITY, BAGHDAD, IRAQ

### Q.  The Beem Family

270.    Staff Sergeant Brian Beem was a citizen and national of the United States and the Army Platoon Leader of the Stryker Vehicle Crew C11 as a member of the 1st Platoon, C Troop, 4th Squadron, 14th Cavalry, 172nd Stryker Brigade when he was wounded in Iraq on October 11, 2006. Beem is a resident of the State of Colorado.

271.    On that date at approximately 1:30 a.m., Staff Sergeant Beem was riding on the back-left hatch in a Stryker Reconnaissance Variant Vehicle when an EFP detonated near his vehicle, causing a massive explosion which, in turn, caused very serious personal injuries to Beem.

272.    The device used to injure Staff Sergeant Beem was an Iranian-manufactured and -designed EFP provided to Iranian-funded and -trained Special Groups in Iraq.

273.    Investigation of the blown-up HUMVEE vehicle revealed penetration patterns,

circular in nature, which are signature findings of an EFP attack.

274.    As a result of the EFP attack, Staff Sergeant Beem lost almost his entire left leg, along with multiple other and additional physical and emotional injuries, including a major right tibia fracture, a major soft tissue injury to his right calf, facial burns, shrapnel pieces lodged throughout his body, multiple debridement procedures, treatments for multiple infections and osteomyelitis, "phantom pain" in the area where his left leg should be, hepatitis C from bad transfusions, strength, traumatic brain injury ("TBI"), post-traumatic stress disorder ("PTSD"), anxiety, and depression.

275.    As a result of the EFP attack, and the physical and emotional injuries he suffered as a direct result therefrom, Staff Sergeant Beem has experienced severe physical and emotional pain and suffering in the past and will experience same into the indeterminable future; has incurred medical bills for medical and rehabilitation services rendered and will incur same into the indeterminable future; has incurred an overwhelming loss of income and earnings capacity and will experience same into the indeterminable future; has experienced permanent injuries to his person and psyche; and has experienced severe mental anguish, anxiety and depression and will experience same into the indeterminable future.

276.    Plaintiff, Elizabeth Beem, was at the time of the attack and still is a citizen of the United States and resident of the State of Colorado. She is the Wife of Brian Beem.

277.    Plaintiff, Diane Beem, was at the time of the attack and still is a citizen of the United States and resident of the State of New York. She is the Mother of Brian Beem.

278.    Plaintiff, Joseph Beem, was at the time of the attack and still is a citizen of the United States and resident of the State of New York. He is the Father of Brian Beem.

279.    Plaintiff, Cassandra Beem, was at the time of the attack and still is a citizen of the United States and resident of the State of Colorado. She is the Daughter of Brian Beem.

280.    Plaintiff, Kaitlyn Beem, was at the time of the attack and still is a citizen of the United States and resident of the State of Colorado. She is the Daughter of Brian Beem.

281.    Plaintiff, Kelly Beem, was at the time of the attack and still is a citizen of the United States and a resident of the State of Colorado. She is the Daughter of Brian Beem.

282.    Plaintiff, Cynthia Colón, was at the time of the attack and still is a citizen of the United States and resident of the State of Tennessee. She is the Sister of Brian Beem.

283.    Plaintiff, Joseph Beem, Jr., was at the time of the attack and still is a citizen of the United States and resident of the State of Virginia. He is the Brother of Brian Beem.

284.    As a result of the EFP attack, and the physical and emotional injuries suffered by Brian Beem as a direct result therefrom, Plaintiffs, Elizabeth Beem, Diane Beem, Joseph Beem, Cassandra Beem, Kaitlyn Beem, Kelly Beem, Cynthia Colón and Joseph Beem, Jr. have suffered and experienced intentional infliction of severe emotional distress and loss of consortium-related damages.

**R. The Sowinski Family**

285.    Sergeant Nicholas Sowinski was a citizen and national of the United States as well as a member of the Stryker Vehicle Crew C11 of the 1st Platoon, C Troop, 4th Squadron, 14th Cavalry, 172nd Stryker Brigade and a member of the United States Army when he was killed in Iraq on October 11, 2006.

286.    On that date, Sergeant Sowinski was riding as a Gunner in a Stryker Reconnaissance Variant Vehicle when an EFP detonated near his vehicle, causing a massive explosion which, in turn, caused Sergeant Sowinski's death.

287.    The device used to kill Sergeant Sowinski was an Iranian-manufactured and -designed EFP provided to Iranian-funded and -trained Special Groups in Iraq.

288.    Plaintiff, Diane Traynor Sowinski, was at the time of Nicholas Sowinski's death and still is a citizen of the United States and a resident of the State of Arizona. She is the Mother of Nicholas Sowinski.

289.    Plaintiff, Jared Sowinski, was at the time of Nicholas Sowinski's death and still is a citizen of the United States and a resident of the State of Arizona. He is the Brother of Nicholas

Sowinski.

290.    Plaintiff, Austin Sowinski, was at the time of Nicholas Sowinski's death and still is a citizen of the United States and a resident of the State of Arizona. He is the Brother of Nicholas Sowinski.

291.    Plaintiff, Diane Traynor Sowinski, brings an action individually and on behalf of the Estate of Nicholas Sowinski, as its Personal Representative, in Superior Court of Arizona, Yavapai County, under No: P1300PB201800102.

292.    As a direct result of the EFP attack, and the resulting wrongful death of Nicholas Sowinski, the Estate of Nicholas Sowinski is entitled to recover for any pain and suffering experienced by Nicholas Sowinski between the time of the EFP attack and his death, and for the substantial economic and earnings capacity loss.

293.    As a direct result of the EFP attack, and the resulting wrongful death of Nicholas Sowinski, Plaintiffs, Diane Traynor Sowinski, Jared Sowinski, and Austin Sowinski have experienced various solatium-related damages, including intentional infliction of severe emotional distress, severe mental anguish, extreme emotional pain and suffering, loss of society, companionship, comfort, advice and counsel, and substantial economic loss.

**ATTACK 16: OCTOBER 16, 2006 - SAFWAN, IRAQ**

**S.  The Byers Family**

294.    Senior Airman Brandon Byers was a citizen and national of the United States and a member of the United States Air Force under the 586th ESFS Army Command when he was wounded in Iraq on October 16, 2006. Senior Airman Byers is a resident of Texas.

295.    On that date at approximately 1800 hours, Senior Airman Byers was the gunner in the fourth-in-line HUMVEE, heading for supplies in Kuwait from Camp Bucca, when an EFP detonated through the rear of his vehicle, causing a massive explosion which caused very serious personal injuries to Byers.

296.    The device used to injure Plaintiff Senior Airman Byers was an Iranian-

manufactured and -designed EFP provided to Iranian-funded and -trained Special Groups in Iraq.

297.    Investigation of the blown-up HUMVEE vehicle revealed penetration patterns, circular in nature, which are signature findings of an EFP attack.

298.    As a result of the EFP attack, Senior Airman Byers sustained a severe wound to his right hand, clipping an artery and blowing out the bone and tendons in his right hand, along with multiple other and additional physical and emotional injuries, including foot drop of the left leg leaving clusters of nerve damage; shrapnel lodged into his leg knee causing multiple debridement procedures, treatments for multiple infections, osteomyelitis, and two left total-knee replacements; traumatic brain injury ("TBI"), post-traumatic stress disorder ("PTSD"), anxiety, and depression.

299.    After almost seven years of therapy and failed surgeries to repair his leg, Senior Airman Byers eventually had an above-the-knee amputation of the left leg performed in September of 2013.

300.    Senior Airman Byers now suffers from "phantom pain" in the area where his left leg would otherwise be.

301.    As a result of the EFP attack, and the physical and emotional injuries he suffered as a direct result therefrom, Senior Airman Byers has experienced severe physical and emotional pain and suffering in the past and will experience same into the indeterminable future; has incurred medical bills for medical and rehabilitation services rendered and will incur same into the indeterminable future; has incurred an overwhelming loss of income and earnings capacity and will experience same into the indeterminable future; has experienced permanent injuries to his person and psyche; and has experienced severe mental anguish, anxiety and depression and will experience same into the indeterminable future.

302.    Plaintiff, Megan Byers, was at the time of Brandon Byers' attack and still is a citizen of the United States and a resident of the State of Arizona Texas. She is the Wife of Brandon Byers.

303.    Plaintiff, Cameron Byers, was at the time of Brandon Byers' attack and still is a

citizen of the United States and a resident of the State of Arizona Texas. She is the daughter of Brandon Byers.

304.   As a result of the EFP attack, and the physical and emotional injuries suffered by Brandon Byers as a direct result therefrom, Plaintiffs, Megan Byers and Cameron Byers, have suffered and experienced intentional infliction of severe emotional distress and loss of consortium-related damages.

## ATTACK 17: NOVEMBER 2, 2006 - BAGHDAD, IRAQ

### T.  The Gage Family

305.   Staff Sergeant Joseph Gage was a citizen and national of the United States and a member of the United States Army when he was killed in Iraq on November 2, 2006.

306.   On that date, Staff Sergeant Gage was sitting in the right front passenger seat of an M1114 HUMVEE vehicle, the lead vehicle in a four-vehicle convoy traveling in the Ziyouna neighborhood of eastern Baghdad, when an EFP detonated near his vehicle, sending a six-inch round copper-lined slug penetrating into the passenger side, thus killing all four vehicle occupants, including Gage.  Copper fragments were found throughout the vehicle and were photographed by Army investigators, thus indicating a telltale sign of an EFP detonation.

307.   The device used to kill Staff Sergeant Gage was an Iranian-manufactured and -designed EFP provided to Iranian-funded and -trained Special Groups in Iraq.

308.   Plaintiff, Samantha Gage, was at the time of Joseph Gage's death and still is a citizen of the United States and a resident of the State of Michigan. She is the Widow and Wife of Joseph Gage.

309.   Plaintiff, Michael Gage, was at the time of Joseph Gage's death and still is a citizen of the United States and a resident of the State of Michigan. He is the Son of Joseph Gage.

310.   Plaintiff, Randy Gage, was at the time of Joseph Gage's death and still is a citizen of the United States and a resident of the State of California. He is the Father of Joseph Gage.

311.   Plaintiff, Tamara Gage, was at the time of Joseph Gage's death and still is a citizen

of the United States and a resident of the State of California.  She is the Step-Mother of Joseph

Gage.

312.    Plaintiff, Julia Rosa, was at the time of Joseph Gage's death and still is a citizen of

the United States and a resident of the State of California. She is the Sister of Joseph Gage.

313.    Plaintiff, Samantha Gage, brings an action individually and on behalf of the Estate

of Joseph Gage, as its Personal Representative Commonwealth of Kentucky Court of Justice,

County of Christian, Kentucky, under Case No.: 18-P-237.

314.    As a direct result of the EFP attack, and the resulting wrongful death of Joseph

Gage, the Estate of Joseph Gage is entitled to recover for any pain and suffering experienced by

Joseph Gage between the time of the EFP attack and his death, and for the substantial economic

and earnings capacity loss.

315.    As a direct result of the EFP attack, and the resulting wrongful death of Joseph

Gage, Plaintiffs, Samantha Gage, Michael Gage, Randy Gage, Tamara Gage and Julia Rosa have

experienced various solatium-related damages, including intentional infliction of severe emotional

distress, severe mental anguish, extreme emotional pain and suffering, loss of society,

companionship, comfort, advice and counsel, and substantial economic loss.

**ATTACK 18: NOVEMBER 6, 2006 – BAGHDAD, IRAQ**

**U. The White Family**

316.    Sergeant Lucas T. White was a citizen and national of the United States and a

member of the United States Army when he was killed in Iraq on November 6, 2006.

317.    On that date, Sergeant White was riding as a passenger in a Stryker Fighting

Vehicle traveling near the Ghazaliya neighborhood in the western outskirts of Baghdad, when an

IED detonated near his vehicle, thus causing Sergeant White's death.

318.    The device used to kill Sergeant White was an Iranian-manufactured and -designed

IED provided to Iranian-funded and -trained Special Groups in Iraq.

319.    Plaintiff, Jennifer White, was at the time of Lucas T. White's death and still is a

citizen of the United States and a resident of the State of Idaho. She is the Widow and Wife of Sergeant White.

320.    Plaintiff, Julia Brooks, was at the time of Lucas T. White's death and still is a citizen of the United States and a resident of the State of Montana.  She is the Mother of Sergeant Lucas T. White.

321.    Plaintiff, Lyle Brooks, was at the time of Lucas T. White's death and still is a citizen of the United States and a resident of the State of Montana.  He is the Step-Father of Sergeant Lucas T. White.

322.    Plaintiff, Marcus Ramos, was at the time of Lucas T. White's death and still is a citizen of the United States and a resident of the State of Montana.  He is the Brother of Sergeant Lucas T. White.

323.    Plaintiff, Jennifer White, brings an action individually and on behalf of the Estate of Sergeant Lucas T. White, as its Personal Representative in the Superior Court of Washington, County of Grant, under No.: 18-4-00178-13.

324.    As a direct result of the IED attack, and the resulting wrongful death of Sergeant Lucas T. White, the Estate of Lucas White is entitled to recover for any pain and suffering experienced by Lucas T. White between the time of the IED attack and his death, and for the substantial economic and earnings capacity loss.

325.    As a direct result of the IED attack, and the resulting wrongful death of Sergeant Lucas T. White, Plaintiffs, Jennifer White, Julia Brooks, Lyle Brooks, and Marcus Ramos have experienced various solatium-related damages, including intentional infliction of severe emotional distress, severe mental anguish, extreme emotional pain and suffering, loss of society, companionship, comfort, advice and counsel, and substantial economic loss.

## ATTACK 19: NOVEMBER 13, 2006 - AL-WAHDA, IRAQ

### V.  The Cope Family

326.    Sergeant Joshua Cope was a citizen and national of the United States and a member

of the United States Army when he was seriously injured in Iraq on November 13, 2006. Cope is a resident of the State of Florida.

327.    On that date, Sergeant Cope was the Team Dismount Leader riding in the back passenger seat of an M1151 HUMVEE armored vehicle, which was the lead vehicle in a five-vehicle convoy, in what was thought to be a normal presence patrol near the Al Wahda neighborhood of Baghdad, Iraq, when an array of EFPs detonated alongside the vehicle, causing a massive blast which killed two occupants and seriously injured two others, including Sergeant Cope.

328.    The devices used to injure Sergeant Cope were Iranian-manufactured and -designed EFPs provided to Iranian-funded and -trained Special Groups in Iraq.

329.    As a result of the EFP attack, Sergeant Cope lost both of his legs above the knee, along with multiple other and additional physical and emotional injuries, including a major right-hand injury resulting in permanent paralysis and 80% loss of feeling in his dominant hand, permanent damage to his left thumb, "phantom pain" in the areas where both of his legs should be, extensive nerve damage resulting in nerve pain in his stump areas, chronic low back and neck pain, post-traumatic stress disorder ("PTSD"), flashbacks, nightmares, depression, anxiety, memory loss, and traumatic brain injury ("TBI").

330.    As a result of the EFP attack, and the physical and emotional injuries he suffered as a direct result therefrom, Joshua Cope has experienced severe physical and emotional pain and suffering in the past and will experience same into the indeterminable future; has incurred medical bills for medical and rehabilitation services rendered and will incur same into the indeterminable future; has incurred an overwhelming loss of income and earnings capacity and will experience same into the indeterminable future; has experienced permanent injuries to his person and psyche; and has experienced severe mental anguish, anxiety and depression and will experience same into the indeterminable future.

331.    Plaintiff, Erica Owens (f/k/a Cope), was at the time of Joshua Cope's attack and still

is a citizen of the United States and a resident of the State of Florida. She is the former Wife of

Joshua Cope, but was married to Joshua Cope at the time of the November 13, 2006, EFP attack.

332.   Plaintiff, L.K.C., a Minor, represented by her Mother, Erica Owens (f/k/a Cope),

was at the time of Joshua Cope's attack and still is a citizen of the United States and a resident of

the State of Florida.  She is the Daughter of Joshua Cope.

333.   Plaintiff, Linda Cope, was at the time of Joshua Cope's attack and still is a citizen of

the United States and a resident of the State of Florida. She is the Mother of Joshua Cope.

334.   Plaintiff, Philip Cope, was at the time of Joshua Cope's attack and still is a citizen

of the United States and a resident of the State of Florida. He is Father of Joshua Cope.

335.   Plaintiff, Jacob Cope, was at the time of Joshua Cope's attack and still is a citizen of

the United States and a resident of the State of Florida. He is the Brother of Joshua Cope.

336.   Plaintiff, Jonathan Cope, was at the time of Joshua Cope's attack and still is a

citizen of the United States and a resident of the State of Florida. He is the Brother of Joshua Cope.

337.   As a result of the EFP attack, and the physical and emotional injuries suffered by

Joshua Cope as a direct result therefrom, Plaintiffs, Erica Owens (f/k/a Cope), L.K.C., a Minor,

Linda Cope, Philip Cope, Jacob Cope, and Jonathan Cope have experienced various solatium-

related damages, including intentional infliction of severe emotional distress, severe mental

anguish, extreme emotional pain and suffering, loss of society, companionship, comfort, advice

and counsel, and substantial economic loss.

## ATTACK 20: NOVEMBER 25, 2006 - AL JUDIAH, IRAQ

### W. The Morris Family

338.   Sergeant Daniel Morris was a citizen and national of the United States and a

member of the United States Army when he was killed in Iraq on November 25, 2006.

339.   On that date, Sergeant Morris was riding on a routine patrol on Route Dover near Al

Judiah, Iraq, Diyal Province, near the Khan Bani Sad Air Base, in an armored M1114 HUMVEE

vehicle when an array of three EFPs detonated near the vehicle, thus causing a massive explosion,

thus eventually causing the death of Morris and very serious injuries to two other Soldiers.  Morris died later the same day outside a medical treatment facility while awaiting medical care for his blast injuries.

340.    The Army Weapons Intelligence Team and the Explosive Ordinance Disposal ("WIT/EOD") concluded that because of the copper residue that was evident around the points where the M1114 HUMVEE's armor was penetrated, this was an EFP attack.

341.    The devices used to kill Daniel Morris were Iranian-manufactured and -designed EFPs provided to Iranian-funded and -trained Special Groups in Iraq.

342.    Plaintiff, Glenn Morris, was at the time of Daniel Morris' death and still is a citizen of the United States and a resident of the State of Tennessee.  He is the Father of Daniel Morris.

343.    Plaintiff, Amy Morris, was at the time of Daniel Morris' death and still is a citizen of the United States and a resident of the State of Tennessee.  She is the Mother of Daniel Morris.

344.    Plaintiff, Adam Morris, was at the time of Daniel Morris' death and still is a citizen of the United States and a resident of the State of Tennessee.  He is the Brother of Daniel Morris.

345.    Plaintiff, Cassidy Morris, was at the time of Daniel Morris' death and still is a citizen of the United States and a resident of the State of Tennessee. She is the Sister of Daniel Morris.

346.    Plaintiff, Amy Morris, brings an action individually and on behalf of the Estate of Daniel Morris, as its Personal Representative in Anderson County, Tennessee, under File No.: 18PB307.

347.     As a direct result of the EFP attack, and the resulting wrongful death of Daniel Morris, the Estate of Daniel Morris is entitled to recover for any pain and suffering experienced by Daniel Morris between the time of the EFP attack and his death, and for the substantial economic and earnings capacity loss.

348.    As a direct result of the EFP attack, and the resulting wrongful death of Daniel Morris, Plaintiffs, Glenn Morris, Amy Morris, Adam Morris, and Cassidy Morris have experienced

various solatium-related damages, including intentional infliction of severe emotional distress, severe mental anguish, extreme emotional pain and suffering, loss of society, companionship, comfort, advice and counsel, and substantial economic loss.

## ATTACK 21: DECEMBER 25, 2006 – TOBJI, BAGHDAD, IRAQ

### X. The Nelson Family

349.    Private First Class Andrew Nelson was a citizen and national of the United States and a member of the United States Army when he was killed in Iraq on December 25, 2006.

350.    On that date, Private First Class Nelson was performing a security patrol in the Tobji neighborhood of Baghdad and was riding in an RG-31 Nyala Mine Protected Vehicle when an array of at least four separate EFPs detonated near the vehicle, thus causing a massive explosion, thus causing the death of Nelson and one other Soldier.

351.    The Army's Explosive Ordinance Disposal ("EOD") and Combined Explosive Exploitation Cell ("CEXC") concluded that the copper fragments found in Nelson's brain and in the RG-31 vehicle verified that this was an EFP attack.

352.    The EOD and CEXC concluded that the devices used to kill Andrew Nelson were Iranian-manufactured and -designed EFPs provided to Iranian-funded and -trained Special Groups in Iraq.

353.    Plaintiff, Kristie Pearson, was at the time of Andrew Nelson's death and still is a citizen of the United States and a resident of the State of Minnesota.  She is the Widow and Wife of Andrew Nelson.  She brings an action individually and on behalf of the Estate of Andrew Nelson, as its Personal Representative in Clinton County, Michigan, under File No.: 2018-30173-DE.

354.    As a direct result of the EFP attack, and the resulting wrongful death of Andrew Nelson, the Estate of Andrew Nelson is entitled to recover for any pain and suffering experienced by Andrew Nelson between the time of the EFP attack and his death, and for the substantial economic and earnings capacity loss.

355.     As a direct result of the EFP attack, and the resulting wrongful death of Andrew Nelson, Plaintiff, Kristie Pearson has experienced various solatium-related damages, including intentional infliction of severe emotional distress, severe mental anguish, extreme emotional pain and suffering, loss of society, companionship, comfort, advice and counsel, and substantial economic loss.

**Y.  The Preston Family**

356.     Specialist Aaron Preston was a citizen and national of the United States and a member of the United States Army when he was killed in Iraq on December 25, 2006.

357.     On that date, Specialist Preston was performing a security patrol in the Tobji neighborhood of Baghdad and was riding in an RG-31 Nyala Mine Protected Vehicle when an array of at least four separate EFPs detonated near the vehicle, thus causing a massive explosion, thus causing the death of Preston and one other Soldier.

358.     The Army's Explosive Ordinance Disposal ("EOD") and Combined Explosive Exploitation Cell ("CEXC") concluded that the copper fragments found in one of the occupants' brain and in the RG-31 vehicle verified that this was an EFP attack.

359.     The EOD and CEXC concluded that the devices used to kill Specialist Preston were Iranian-manufactured and -designed EFPs provided to Iranian-funded and -trained Special Groups in Iraq.

360.     Plaintiff, Mariah Coward, was at the time of Aaron Preston's death and still is a citizen of the United States and a resident of the State of Texas.  She is the Sister of Aaron Preston.

361.     As a direct result of the EFP attack, and the resulting wrongful death of Aaron Preston, Plaintiff, Mariah Coward, has experienced various solatium-related damages, including intentional infliction of severe emotional distress, severe mental anguish, extreme emotional pain and suffering, loss of society, companionship, comfort, advice and counsel, and substantial economic loss.

**ATTACK 22: JANUARY 22, 2007 - BAGHDAD, IRAQ**

**Z.  Derek Gagne**

362.    Specialist Derek Gagne was a citizen and national of the United States when he was seriously injured in Iraq on January 22, 2007.  Gagne is a resident of the State of Michigan.

363.    On that date, Specialist Gagne was positioned as the gunner riding in an M1114 HUMVEE armored vehicle traveling from Baghdad Airport on Route Pluto to Forward Operating Base ("FOB") Rustamiyah, which was the third vehicle in a six-vehicle convoy, when a multiple array of EFPs detonated near the right side of the vehicle, killing two Soldiers and causing serious physical and emotional injuries to Gagne and another Soldier.

364.    The Army's Explosive Ordinance Disposal ("EOD") verified that this was a multiple array EFP attack.

365.    The EOD concluded that the devices used to injure Specialist Gagne were Iranian-manufactured and -designed EFPs provided to Iranian-funded and -trained Special Groups in Iraq.

366.    As a result of the EFP attack, Derek Gagne sustained a below-the-knee amputation of his right leg, lost toes on his left leg, lost his left eye, lost his hearing in his left ear, and various severe facial injuries.

367.    As a result of the EFP attack, and the physical and emotional injuries he suffered as a direct result therefrom, Derek Gagne has experienced severe physical and emotional pain and suffering in the past and will experience same into the indeterminable future; has incurred medical bills for medical and rehabilitation services rendered and will incur same into the indeterminable future; has incurred an overwhelming loss of income and earnings capacity and will experience same into the indeterminable future; has experienced permanent injuries to his person and psyche; and has experienced severe mental anguish, anxiety and depression and will experience same into the indeterminable future.

368.    Plaintiff, Faye Mroczkowski, was at the time of Derek Gagne's attack and still is a citizen of the United States and a resident of the State of Michigan.  She is the Mother of Derek Gagne.

369.     As a result of the EFP attack, and the physical and emotional injuries suffered by Derek Gagne as a direct result therefrom, Plaintiff, Faye Mroczkowski, suffered and experienced intentional infliction of severe emotional distress and loss of consortium-related damages.

## AA.     The Stout Family

370.     Specialist Brandon Stout was a citizen and national of the United States and a member of the United States Army when he was killed in Iraq on January 22, 2007.

371.     On that date, Specialist Stout was riding in an M1114 HUMVEE armored vehicle traveling southbound from Baghdad Airport on Route Pluto to Forward Operating Base ("FOB") Rustamiyah, which was the third vehicle in a six-vehicle convoy when a multiple array of EFPs detonated near the right side of the vehicle, thus causing a massive explosion, thus killing Stout and another Soldier, and causing serious physical and emotional injuries to two other Soldiers.

372.     The Army's Explosive Ordinance Disposal ("EOD") verified that this was a multiple array EFP attack and that this particular area and intersection had been a "hotbed" for EFP detonations in the past.

373.     The EOD concluded that the devices used to kill Specialist Stout were Iranian-manufactured and -designed EFPs provided to Iranian-funded and -trained Special Groups in Iraq.

374.     Plaintiff, Audrey Barber, was at the time of Brandon Stout's death and still is a citizen of the United States and a resident of the State of Michigan.  She is the Widow of Brandon Stout.  She brings an action individually and on behalf of the Estate of Brandon Stout, as its Personal Representative in Kent County, Michigan, under File No.: 18-204, 429-DE.

375.     Plaintiff, Callie McGee, was at the time of Brandon Stout's death and still is a citizen of the United States and a resident of the State of Georgia. She is the Sister of Brandon Stout.

376.     Plaintiff, Stephanie Benefield, was at the time of Brandon Stout's death and still is a citizen of the United States and a resident of the State of Georgia. She is the Sister of Brandon Stout.

377.     As a direct result of the EFP attack, and the resulting wrongful death of Brandon Stout, the Estate of Brandon Stout is entitled to recover for any pain and suffering experienced by Brandon Stout between the time of the EFP attack and his death, and for the substantial economic and earnings capacity loss.

378.     As a direct result of the EFP attack, and the resulting wrongful death of Brandon Stout, Plaintiffs, Audrey Barber, William Stout, Callie McGee, and Stephanie Benefield have experienced various solatium-related damages, including intentional infliction of severe emotional distress, severe mental anguish, extreme emotional pain and suffering, loss of society, companionship, comfort, advice and counsel, and substantial economic loss.

**BB.     The Wager Family**

379.     Sergeant Michelle Wager was a citizen and national of the United States and was a member of the United States Army when she was seriously injured in Iraq on January 22, 2007. Wager is a citizen of the State of Michigan.

380.     On that date, Sergeant Wager was riding as the right front-seat passenger in an M1114 HUMVEE armored vehicle traveling from Baghdad Airport on Route Pluto to Forward Operating Base ("FOB") Rustamiyah, which was the third vehicle in a six-vehicle convoy, when a multiple array of EFPs detonated near the right side of the vehicle, killing two Soldiers and causing serious physical and emotional injuries to Wager and another Soldier.

381.     The Army's Explosive Ordinance Disposal ("EOD") verified that this was a multiple array EFP attack.

382.     The EOD concluded that the devices used to injure Sergeant Wager were Iranian-manufactured and -designed EFPs provided to Iranian-funded and -trained Special Groups in Iraq.

383.     As a result of the EFP attack, Sergeant Wager sustained an above-the-knee amputation of her left leg, an open right femur fracture with tissue loss at the right hip, a right ankle injury, severe blood loss, "phantom pain" in the areas where her left leg should be, post-traumatic stress disorder ("PTSD"), traumatic brain injury ("TBI"), and infertility.

384.     As a result of the EFP attack, and the physical and emotional injuries she suffered as a direct result therefrom, Michelle Wager has experienced severe physical and emotional pain and suffering in the past and will experience same into the indeterminable future; has incurred medical bills for medical and rehabilitation services rendered and will incur same into the indeterminable future; has incurred an overwhelming loss of income and earnings capacity and will experience same into the indeterminable future; has experienced permanent injuries to his person and psyche; and has experienced severe mental anguish, anxiety and depression and will experience same into the indeterminable future.

## ATTACK 23: FEBRUARY 7, 2007 - AL DULOIYA, IRAQ

### CC.     The Vendela Family

385.     Staff Sergeant Travis Vendela was a citizen and national of the United States and a member of the United States Army when he was seriously injured in Iraq on February 7, 2007. Vendela is a resident of the State of Utah.

386.     On that date, Staff Sergeant Vendela was acting as a Scout Sniper with his unit tasked with the responsibility of tracking down Special Groups insurgents known to be distributing, planting, and detonating IEDs in the area of his patrol, when an IED detonated near the vehicle, thus causing a massive explosion, thus causing very serious physical and emotional injuries to Staff Sergeant Vendela, and seriously injuring three additional Soldiers riding in the vehicle.

387.     At the time of the IED attack, Vendela was riding in an unarmored M1114 "HUMVEE", the second in a five-vehicle convoy traveling northbound on Route Dover in Al Duloiya, Iraq, due north of Baghdad.

388.     The device used to injure Staff Sergeant Vendela, consisting of two 130mm high-explosive mortar shells and a saw-blade pressure-plate, was an Iranian-manufactured and -designed IED provided to Iranian-funded and -trained Special Groups in Iraq.

389.     As a result of the IED attack, Staff Sergeant Vendela lost both of his legs due to

amputation, broke his neck at the C3-C5 levels and eventually had to undergo a cervical fusion at those levels, separated facets in his lower back, separated his sacroiliac joint and had to undergo an operative procedure to stabilize the area, fractured his right jawbone, fractured his left humerus (upper arm), experienced hemorrhagic shock, suffered a traumatic brain injury ("TBI"), underwent a fasciotomy procedure in his right forearm to save that arm, had multiple shrapnel fragments imbed throughout areas of his body, had a tracheostomy performed, experienced hypertrophic ossification, suffered post-traumatic stress disorder ("PTSD"), anxiety, sleep deprivation, and depression.

390.    As a result of the IED attack, and the physical and emotional injuries he suffered as a direct result therefrom, Travis Vendela has experienced severe physical and emotional pain and suffering in the past and will experience same into the indeterminable future; has incurred medical bills for medical and rehabilitation services rendered and will incur same into the indeterminable future; has incurred an overwhelming loss of income and earnings capacity and will experience same into the indeterminable future; has experienced permanent injuries to his person and psyche; and has experienced severe mental anguish, anxiety and depression and will experience same into the indeterminable future.

391.    Plaintiff, Marianne Vendela, was at the time of Travis Vendela's attack and still is a citizen of the United States and a resident of the State of Arizona. She is the Mother of Travis Vendela.

392.    As a result of the EFP attack, and the physical and emotional injuries suffered by Travis Vendela as a direct result therefrom, Plaintiff, Marianne Vendela, has suffered and experienced intentional infliction of severe emotional distress and loss of consortium-related damages.

## ATTACK 24: FEBRUARY 27, 2007 - BAGHDAD, IRAQ

### DD.    The Cadavero Family

393.    Sergeant Jonathan Cadavero was a citizen and national of the United States and a

member of the United States Army when he was killed in Iraq on February 27, 2007.

394.    On that date, Sergeant Cadavero was acting as a Medic with his unit near Yusufiya, southwest of Baghdad, riding in a vehicle when an EFP detonated nearby, thus causing a massive explosion which caused Sergeant Cadavero's death.

395.    The device used to kill Sergeant Cadavero was an Iranian-manufactured and -designed EFP provided to Iranian-funded and -trained Special Groups in Iraq.

396.    The specific Iranian-funded and -trained group perpetrating this attack was Kata'ib Hezbollah ("KH"), which claimed responsibility for the attack in a video.

397.    KH is an Iranian-sponsored and funded anti-American Special Group founded by the IRGC in 2006 and perpetuated by Iran, the IRGC, QF and Hezbollah thereafter.

398.    Plaintiff, Nadia Cadavero, was at the time of Jonathan Cadavero's death and still is a citizen of the United States and a resident of the State of New York. She is the Mother of Jonathan Cadavero.

399.    Plaintiff, Michelle Dearing, was at the time of Jonathan Cadavero's death and still is a citizen of the United States and a resident of the State of Maryland.  She is the Widow of Jonathan Cadavero.

400.    Plaintiff, David Cadavero, was at the time of Jonathan Cadavero's death and still is a citizen of the United States and a resident of the State of New Jersey.  He is the Father of Jonathan Cadavero.

401.    Plaintiff, Kristia Markarian, was at the time of Jonathan Cadavero's death and still is a citizen of the United States and a resident of the State of New Jersey. She is the Sister of Jonathan Cadavero.

402.    Plaintiff, Nadia Cadavero, brings an action individually and on behalf of the Estate of Jonathan Cadavero, as its Personal Representative in Orange County, New York, under File No.: 2007-309/A.

403.    As a direct result of the EFP attack, and the resulting wrongful death of Jonathan

Cadavero, the Estate of Jonathan Cadavero is entitled to recover for any pain and suffering experienced by Jonathan Cadavero between the time of the EFP attack and his death, and for the substantial economic and earnings capacity loss.

404.    As a direct result of the EFP attack, and the resulting wrongful death of Jonathan Cadavero, Plaintiffs, Nadia Cadavero, Michelle Dearing, David Cadavero, and Kristia Markarian have experienced various solatium-related damages, including intentional infliction of severe emotional distress, severe mental anguish, extreme emotional pain and suffering, loss of society, companionship, comfort, advice and counsel, and substantial economic loss.

## ATTACK 25: MARCH 5, 2007 - BAQUBAH, IRAQ

### EE.      The Harris Family

405.    Sergeant Blake Harris was a citizen and national of the United States and a member of the United States Army when he was killed in Iraq on March 5, 2007.

406.    On that date, Sergeant Harris was riding in an M1114 HUMVEE armored vehicle traveling in the city of Baqubah in the Diyala province when an IED detonated near his vehicle, causing a massive explosion which, in turn, caused Harris' and two other American Soldiers' deaths.

407.    The device used to kill Blake Harris was an Iranian-manufactured and -designed IED provided to Iranian-funded and -trained Special Groups in Iraq.

408.    Plaintiff, Joanna Harris, was at the time of Blake Harris' death and still is a citizen of the United States and a resident of the State of Colorado. She is the Widow of Blake Harris.

409.    Plaintiff, J.H., a Minor, represented by his legal guardian, Joanna Harris, was at the time of Blake Harris' death and still is a citizen of the United States and a resident of the State of Colorado. He is the Son of Blake Harris.

410.    Plaintiff, Deborah Harris, was at the time of Blake Harris' death and still is a citizen of the United States and a resident of the State of Colorado. She is the Mother of Blake Harris.

411.    Plaintiff, Joanna Harris brings an action individually and on behalf of the Estate of

Blake Harris, as its Personal Representative in Case No. 27445 in Bell County, Texas.

412.    As a direct result of the IED attack, and the resulting wrongful death of Blake Harris, the Estate of Blake Harris is entitled to recover for any pain and suffering experienced by Blake Harris between the time of the IED attack and his death, and for the substantial economic and earnings capacity loss.

413.    As a direct result of the IED attack, and the resulting wrongful death of Blake Harris, Plaintiffs, Joanna Harris, J.H., a Minor, and Deborah Harris, have experienced various solatium-related damages, including intentional infliction of severe emotional distress, severe mental anguish, extreme emotional pain and suffering, loss of society, companionship, comfort, advice and counsel, and substantial economic loss.

**FF. The Mayo Family**

414.    Private First Class Barry Mayo was a citizen and national of the United States and a member of the United States Army when he was killed in Iraq on March 5, 2007.

415.    On that date, Private First Class Mayo was riding in an M1114 HUMVEE vehicle, the second vehicle in a four-vehicle convoy traveling in the city of Baqubah in the Diyala province, when an IED, consisting of two 125mm high explosive shells, detonated near his vehicle and caused a massive explosion which eventually killed Private First Class Mayo and another American Soldier.  Mayo later died in Balad, Iraq, due to a right arm amputation and shrapnel wounds in his chest.

416.    The device used to kill Private First Class Mayo was an Iranian-manufactured and designed EFP provided to Iranian-funded and -trained Special Groups in Iraq.

417.    Plaintiff, John Mayo, was at the time of Barry Mayo's death and still is a citizen of the United States and a resident of the State of Texas. He is the Father of Barry Mayo.

418.    Plaintiff, Rebecca Mayo, was at the time of Barry Mayo's death and still is a citizen of the United States and a resident of the State of Texas. She is the Mother of Barry Mayo.

419.    Plaintiff, Andy Mayo, is a citizen of the United States and a resident of the State of

Texas.  He is the Brother of Barry Mayo.

420.   Plaintiff, John Mayo, brings an action individually and on behalf of the Estate of Barry Mayo, as its Personal Representative in Bell County, Texas, under Case No.: 33575.

421.    As a direct result of the IED attack, and the resulting wrongful death of Barry Mayo, the Estate of Barry Mayo is entitled to recover for any pain and suffering experienced by Barry Mayo between the time of the IED attack and his death, and for the substantial economic and earnings capacity loss.

422.   As a direct result of the IED attack, and the resulting wrongful death of Barry Mayo, Plaintiffs, John Mayo, Rebecca Mayo, and Andy Mayo have experienced various solatium-related damages, including intentional infliction of severe emotional distress, severe mental anguish, extreme emotional pain and suffering, loss of society, companionship, comfort, advice and counsel, and substantial economic loss.

**GG.     The Russell Family**

423.   Specialist Ryan Russell was a citizen and national of the United States and a member of the United States Army when he was killed in Iraq on March 5, 2007.

424.   On that date, Specialist Ryan was in an M1114 HUMVEE armored vehicle, the second in a four-vehicle convoy traveling in the city of Baqubah in the Diyala province northeast of Baghdad, when an IED detonated near his vehicle, causing a massive explosion which caused Specialist Ryan's and two other American Soldiers' deaths and injured another.  The traffic circle where the detonation occurred had been the site of several earlier IED attacks on U.S. Soldiers.

425.   The device used to kill Specialist Russell was an Iranian-manufactured and -designed IED provided to Iranian-funded and -trained Special Groups in Iraq.

426.   Plaintiff, Kathy Moore, was at the time of Ryan Russell's death and still is a citizen of the United States and a resident of the State of North Carolina. She is the Mother of Ryan Russell.

427.   Plaintiff, Thomas Moore, Jr., was at the time of Ryan Russell's death and still is a

citizen of the United States and a resident of the State of North Carolina. He is the Step-Father of Ryan Russell.

428.    Plaintiff, Kathy Moore, brings an action individually and on behalf of the Estate of Ryan Russell, as its Personal Representative in Bell County, Texas, under File No.: 27037.

429.    As a direct result of the IED attack, and the resulting wrongful death of Ryan Russell, the Estate of Ryan Russell is entitled to recover for any pain and suffering experienced by Ryan Russell between the time of the IED attack and his death, and for the substantial economic and earnings capacity loss.

430.    As a direct result of the IED attack, and the resulting wrongful death of Ryan Russell, Plaintiffs, Kathy Moore and Thomas Moore, Jr., have experienced various solatium-related damages, including intentional infliction of severe emotional distress, severe mental anguish, extreme emotional pain and suffering, loss of society, companionship, comfort, advice and counsel, and substantial economic loss.

## ATTACK 26: MAY 8, 2007 - PASMAYA, IRAQ

### HH.    The Martinez Family

431.    Private First Class Saul Martinez was a citizen and national of the United States and a member of the United States Army when he was seriously injured in Iraq on May 8, 2007. Martinez is a resident of the State of Montana.

432.    On that date, Private First Class Martinez was acting as a Gunner in a convoy of four M1151 HUMVEE armored vehicles traveling near Pasmaya, Iraq, southeast of Baghdad, escorting Colonel Grigsby to a destination when a multiple array of EFPs detonated adjacent to his vehicle, thus causing a massive explosion and sending it airborne and rolling, thus killing three of the vehicle occupants and seriously injuring Martinez.  The EFP detonation came from the vehicle's right side, blowing two holes in each of the two right-sided doors, and blowing off the right rear door.

433.    The Army's investigative report for this attack concluded that "complex EFP

devices may indicate Iranian assistance, suggesting that the attack was carried out by Shia (Shiite) extremists, possibly linked to JAM ("Jaysh al-Mahdi")."  The fragmentation recovered from the M1151 vehicle was consistent with a copper-lined EFP.

434.    JAM was formed by Muqtada al Sadr in 2003 in response to the United States invasion of Iraq and had as its goal the expulsion of United States and Coalition Forces from Iraq and the establishment of an Iraqi Shiite Government.

435.    JAM was just another one of Iran's Special Groups its QF promoted, sponsored, financed, and trained for anti-American and terroristic activities in Iraq from 2004-2011.

436.    As a result of the EFP attack, Saul Martinez had an above-the-knee amputation of his right leg, a below-the-knee amputation of his left leg, a traumatic brain injury ("TBI") which results in regular fatigue and forgetfulness, a major hole or gap in his right gluteal (buttocks) area from shrapnel, hypertrophic ossification, an IV infiltration on his right forearm, and post-traumatic stress disorder ("PTSD"), depression and anxiety.

437.    As a result of the EFP attack, and the physical and emotional injuries he suffered as a direct result therefrom, Saul Martinez has experienced severe physical and emotional pain and suffering in the past and will experience same into the indeterminable future; has incurred medical bills for medical and rehabilitation services rendered and will incur same into the indeterminable future; has incurred an overwhelming loss of income and earnings capacity and will experience same into the indeterminable future; has experienced permanent injuries to his person and psyche; and has experienced severe mental anguish, anxiety and depression and will experience same into the indeterminable future.

438.    Plaintiff, Sarah Martinez, was at the time of Saul Martinez's attack and still is a citizen of the United States and a resident of the State of Montana. She is the Wife of Saul Martinez.

439.    As a result of the EFP attack, and the physical and emotional injuries suffered by Saul Martinez as a direct result therefrom, Plaintiff, Sarah Martinez, has suffered and experienced

intentional infliction of severe emotional distress and loss of consortium-related damages.

## II.  The Blake Stephens Family

440.    Sergeant Blake Stephens was a citizen and national of the United States and a member of the United States Army when he was killed in Iraq on May 8, 2007.

441.    On that date, Sergeant Stephens was acting as the Commander, in a convoy of four M1151 HUMVEE armored vehicles traveling near Pasmaya, Iraq, southeast of Baghdad, escorting Colonel Grigsby to a destination when a multiple array of EFPs detonated adjacent to his vehicle, thus causing a massive explosion and sending it airborne and rolling, thus killing Stephens and two other Soldiers, and severely injuring another.  The EFP detonation came from the vehicle's right side, blowing two holes in each of the two right-sided doors, and blowing off the right rear door.

442.    The Army's investigative report for this attack concluded that "complex EFP devices may indicate Iranian assistance, suggesting that the attack was carried out by Shia (Shiite) extremists, possibly linked to JAM ("Jaysh al-Mahdi")."  The fragmentation recovered from the M1151 vehicle was consistent with a copper-lined EFP.

443.    JAM was formed by Muqtada al Sadr in 2003 in response to the United States invasion of Iraq and had as its goal the expulsion of United States and Coalition Forces from Iraq and the establishment of an Iraqi Shiite Government.

444.    JAM was just another one of Iran's Special Groups its QF promoted, sponsored, financed, and trained for anti-American and terroristic activities in Iraq from 2004-2011.

445.    Plaintiff, Erin Dructor, was at the time of Blake Stephens' death and still is a citizen of the United States and a resident of the State of California. She is the Widow of Blake Stephens.

446.    Plaintiff, Erin Dructor, brings an action individually and on behalf of the Estate of Blake Stephens, as its Personal Representative in Bannock County, Idaho, under Case No.: CV-2018-967-IE.

447.    As a direct result of the EFP attack, and the resulting wrongful death of Blake Stephens, the Estate of Blake Stephens is entitled to recover for any pain and suffering experienced

by Blake Stephens between the time of the EFP attack and his death, and for the substantial economic and earnings capacity loss.

448.     As a direct result of the EFP attack, and the resulting wrongful death of Blake Stephens, Plaintiff, Erin Dructor has experienced various solatium-related damages, including intentional infliction of severe emotional distress, severe mental anguish, extreme emotional pain and suffering, loss of society, companionship, comfort, advice and counsel, and substantial economic loss.

**ATTACK 27: MAY 14, 2007 – AMIL DISTRICT, BAGHDAD, IRAQ**

**JJ.      The Altman Family**

449.     Specialist Jake Altman was a citizen and national of the United States and a member of the United States Army when he was seriously injured in Iraq on May 14, 2007.  Altman is a resident of the State of North Carolina.

450.     On that date, Specialist Altman was inside of a one-man reconnaissance vehicle, an M1151 armored HUMVEE vehicle, the first in a convoy of four vehicles traveling in the Amil District of Baghdad from Forward Operating Base ("FOB") Falcon to FOB Liberty on Route Vernon, when a four-array EFP detonated from the side of the vehicle, thus causing a massive explosion which, in turn, caused very serious personal injuries to Altman, killed two American Soldiers, and injured yet another.

451.     The Army's investigation into the attack concluded that the device used to injure Specialist Altman was an Iranian-manufactured and -designed EFP provided to Iranian-funded and -trained Special Groups in Iraq.

452.     As a result of the EFP attack, Jake Altman lost his right hand and forearm up to his elbow, had shrapnel fragments explode into various parts and areas of his body, most notably in his entire left leg, had to have operative procedures on both knees to remove shrapnel fragments, had to undergo a fasciotomy procedure in his left leg to save that leg from an amputation, fractured his left pointer finger, fractured the bottom of his left femur bone, fractured his left toe, and was

diagnosed with post-traumatic stress disorder ("PTSD").

453.    As a result of the EFP attack, and the physical and emotional injuries he suffered as a direct result therefrom, Jake Altman has experienced severe physical and emotional pain and suffering in the past and will experience same into the indeterminable future; has incurred medical bills for medical and rehabilitation services rendered and will incur same into the indeterminable future; has incurred an overwhelming loss of income and earnings capacity and will experience same into the indeterminable future; has experienced permanent injuries to his person and psyche; and has experienced severe mental anguish, anxiety and depression and will experience same into the indeterminable future.

454.    Plaintiff, Nadja Altman, was at the time of Jake Altman's attack and still is a citizen of the United States and a resident of the State of North Carolina. She is the Wife of Jake Altman.

455.    Plaintiff, J.A., a Minor, represented by his legal guardian, Nadja Altman, was at the time of Jake Altman's attack and still is a citizen of the United States and a resident of the State of North Carolina. He is the Son of Jake Altman.

456.    Plaintiff, Gloria Prosser, was at the time of Jake Altman's attack and still is a citizen of the United States and a resident of the State of North Carolina. She is the Mother of Jake Altman.

457.    Plaintiff, Charles Altman, was at the time of Jake Altman's attack and still is a citizen of the United States and a resident of the State of North Carolina. He is the Brother of Jake Altman.

458.    Plaintiff, Michael Altman, was at the time of Jake Altman's attack and still is a citizen of the United States and a resident of the State of Colorado. He is the Brother of Jake Altman.

459.    As a result of the EFP attack, and the physical and emotional injuries suffered by Jake Altman as a direct result therefrom, Plaintiffs, Nadja Altman, J.A., a Minor, Gloria Prosser, Charles Altman and Michael Altman have suffered and experienced intentional infliction of severe

emotional distress and loss of consortium-related damages.

## ATTACK 28: MAY 18, 2007--NASIRIYAH, IRAQ

### KK.        The Dahlman Family

460.      Private First Class Louis Dahlman was a citizen and national of the United States and a member of the United States Army when he was seriously injured in Iraq on May 19, 2007. He is a resident of the State of Texas.

461.      On that date, Private First Class Dahlman was serving as the "Gunner" riding in a lead M1114 HUMVEE armored vehicle providing armed escort for a convoy heading northbound on Route Tampa from Tallil Air Force Base to Camp Scania in Southern Iraq.

462.      As the lead HUMVEE approached an overpass, an EFP detonated, creating an overwhelming explosion and causing fire and a huge copper slug to rip through it, thus destroying the vehicle and causing the violent death of two occupants and serious physical and emotional injuries to the other two, including Private First Class Dahlman.

463.      The Army later confirmed the presence of EFPs at the accident site when it picked up the destroyed HUMVEE.  It also referenced the fact that there had been 12 reported EFP events in that vicinity since the beginning of 2007.

464.      The devices used to injure Louis Dahlman were Iranian-manufactured EFPs provided to Iranian-funded and -trained Special Groups in Iraq.

465.      As a result of the EFP attack, Louis Dahlman had most of his jaw, mouth and teeth blown off his person, lost much facial skin, had shrapnel blow into most parts of his face, upper torso and extremities, suffered a traumatic brain injury ("TBI") and concussion, fractured his clavicle ("collarbone") three separate times in securing necessary treatment, underwent operative procedures to correct the clavicle fractures, lost much of his two fibula bones in both of his legs in procedures to graft bone onto his jaw area, and has experienced over 12 surgeries to attempt to fix his jaw area, mouth and teeth.

466.      As a result of the EFP attack, and the physical and emotional injuries he suffered as

a direct result therefrom, Louis Dahlman has experienced severe physical and emotional pain and suffering in the past and will experience same into the indeterminable future; has incurred medical bills for medical and rehabilitation services rendered and will incur same into the indeterminable future; has incurred an overwhelming loss of income and earnings capacity and will experience same into the indeterminable future; has experienced permanent injuries to his person and psyche; and has experienced severe mental anguish, anxiety and depression and will experience same into the indeterminable future.

467.    Plaintiff, Kay Stockdale, was at the time of Louis Dahlman's attack and still is a citizen of the United States and a resident of the State of Iowa. She is the Mother of Louis Dahlman.

**468.    Plaintiff, Larry Stockdale, was at the time of Louis Dahlman's attack and still is a citizen of the United States and a resident of the State of Iowa. He is the Step-Father of Louis Dahlman.**

469.    Plaintiff, Lucas Dahlman, was at the time of Louis Dahlman's attack and still is a citizen of the United States and a resident of the State of Iowa. He is the Brother of Louis Dahlman.

470.    Plaintiff, Amber Ahrens, was at the time of Louis Dahlman's attack and still is a citizen of the United States and a resident of the State of Iowa. She is the Sister of Louis Dahlman.

471.    As a result of the EFP attack, and the physical and emotional injuries suffered by Louis Dahlman as a direct result therefrom, Plaintiffs, Kay Stockdale, **Larry Stockdale**, Lucas Dahlman and Amber Ahrens have suffered and experienced intentional infliction of severe emotional distress and loss of consortium-related damages.

**LL.    The Schumann Family**

472.    Sergeant Jason Schumann was a citizen and national of the United States and a member of the United States Army when he was killed in Iraq on May 18, 2007.

473.    On that date, Sergeant Schumann was riding in a lead M1114 HUMVEE armored

vehicle providing armed escort for a convoy heading northbound on Route Tampa from Tallil Air Force Base to Camp Scania in Southern Iraq.

474.    As the lead HUMVEE approached an overpass, an EFP detonated, creating an overwhelming explosion and causing fire and a huge copper slug to rip through it, thus destroying the vehicle and causing the violent death of Sergeant Schuman and one other American Soldier, and serious physical and emotional injuries to the other two.

475.    The Army later confirmed the presence of EFPs at the accident site when it picked up the destroyed HUMVEE.  It also referenced the fact that there had been 12 reported EFP events in that vicinity since the beginning of 2007.

476.    The devices used to kill Jason Schumann were Iranian-manufactured and -designed EFPs provided to Iranian-funded and -trained Special Groups in Iraq.

477.     Plaintiff, James Schuman, was at the time of Jason Schumann's attack and still is a citizen of the United States and a resident of the State of Minnesota.  He is the Father of Jason Schumann.

478.    Plaintiff, Ben Schumann, was at the time of Jason Schumann's attack and still is a citizen of the United States and a resident of the State of Minnesota.  He is the Brother of Jason Schumann.

479.    Plaintiff, Brent Anderson, was at the time of Jason Schumann's attack and still is a citizen of the United States and a resident of the State of Minnesota.  He is the Step-Brother of Jason Schumann.

480.    Plaintiff, Kristie Nelson, was at the time of Jason Schumann's attack and still is a citizen of the United States and a resident of the State of Minnesota.  She is the Step-Sister of Jason Schumann.

481.    Plaintiff, Kayla Nelson, was at the time of Jason Schumann's attack and still is a citizen of the United States and a resident of the State of Minnesota.  She is the Step-Sister of Jason Schumann.

482.    Plaintiff, James Schumann, brings an action individually and on behalf of the Estate of Jason Schumann, as its Personal Representative in Clay County, Minnesota, under Court File No.: 14-PR-4627.

483.    As a direct result of the EFP attack, and the resulting wrongful death of Jason Schumann, the Estate of Jason Schumann is entitled to recover for any pain and suffering experienced by Jason Schumann between the time of the EFP attack and his death, and for the substantial economic and earnings capacity loss.

484.    As a direct result of the EFP attack, and the resulting wrongful death of Jason Schumann, Plaintiffs, James Schumann, Ben Schumann, Brent Anderson, Kristie Nelson and Kayla Nelson have experienced various solatium-related damages, including intentional infliction of severe emotional distress, severe mental anguish, extreme emotional pain and suffering, loss of society, companionship, comfort, advice and counsel, and substantial economic loss.

## ATTACK 29: MAY 29, 2007 – SADR CITY, IRAQ

**MM.       The Hancock Family**

485.    Specialist Jerral Steele Hancock was a citizen and national of the United States and a member of the United States Army when he was wounded in Iraq on May 29, 2007. He is a resident of the State of California.

486.    On that date, which was also Specialist Hancock's 21st birthday and Memorial Day, he was on a classified mission driving as part of a four-vehicle convoy in Sadr City. Specialist Hancock was driving the lead vehicle, a 70-ton M-1 Abrams Main Battle Tank, through Sadr City, Iraq, when an EFP exploded near his vehicle.

487.    The device used to injure Specialist Hancock was an Iranian-manufactured EFP provided to Iranian-funded and -trained Special Groups in Iraq.

488.    As a result of the attack, Specialist Hancock has lost his left arm and is paralyzed from the chest down.

489.    Plaintiff, J.H., a Minor, represented by his legal guardian, Stacie Tscherny, was at

75

the time of the attack and still is a citizen of the United States and domiciled in the State of California. He is the Son of Jerral Hancock.

490.    Plaintiff, A.H., a Minor, represented by her legal guardian, Stacie Tscherny, was at the time of the attack and still is a citizen of the United States and domiciled in the State of California. She is the Daughter of Jerral Hancock.

491.    Plaintiff, Stacie Tscherny, was at the time of the attack and still is a citizen of the United States and domiciled in California. She is the Mother of Jerral Hancock.

492.    Plaintiff, Dirrick Benjamin, was at the time of the attack and still is a citizen of the United States and domiciled in California. He is the Step-Father of Jerral Hancock.

493.    Plaintiff, Savannah Tscherny, was at the time of the attack and still is a citizen of the United States and domiciled in California. She is the Sister of Jerral Hancock.

494.    Plaintiff, Samantha Hancock, was at the time of the attack and still is a citizen of the United States and domiciled in California. She is the Sister of Jerral Hancock.

495.    As a result of the EFP attack, and the physical and emotional injuries he suffered as a direct result therefrom, Jerral Hancock has experienced severe physical and emotional pain and suffering in the past and will experience same into the indeterminable future; has incurred medical bills for medical and rehabilitation services rendered and will incur same into the indeterminable future; has incurred an overwhelming loss of income and earnings capacity and will experience same into the indeterminable future; has experienced permanent injuries to his person and psyche; and has experienced severe mental anguish, anxiety and depression and will experience same into the indeterminable future.

496.    As a result of the EFP attack, and the physical and emotional injuries suffered by Jerral Hancock as a direct result therefrom, Plaintiffs, J.H., a Minor, A.H., a Minor, Stacie Tscherny, Dirrick Benjamin, Savannah Tscherny, and Samantha Hancock have suffered and experienced intentional infliction of severe emotional distress and loss of consortium-related damages.

**ATTACK 30: JUNE 6, 2007 – BAGHDAD, IRAQ**

**NN.**      **The Gajdos Family**

497.     Specialist Shawn Gajdos was a citizen and national of the United States and a member of the United States Army when he was killed in Iraq on June 6, 2007.

498.     On that date, Specialist Gajdos was riding in a M1151 HUMVEE armored vehicle traveling at or near the intersection of Mohammed Al-Qasim Expressway and Omar Bin Al Khatab Street in the Baghdad Al-Jahida area of Baghdad when a multiple array EFP detonated next to the vehicle, thus destroying it and killing Specialist Gajdos.

499.     The devices used to kill Specialist Gajdos were Iranian-manufactured and -designed EFPs provided to Iranian-funded and -trained Special Groups in Iraq.

500.      Plaintiff, Brenda Richards, is a citizen of the United States and a resident of the State of Michigan.  She is the Mother of Shawn Gajdos.

501.     Plaintiff, Brenda Richards, brings an action individually and on behalf of the Estate of Shawn Gajdos, as its Personal Representative in Clay County, Minnesota, under Court File No.: 14-PR-4627.

502.     As a direct result of the EFP attack, and the resulting wrongful death of Shawn Gajdos, the Estate of Shawn Gajdos is entitled to recover for any pain and suffering experienced by Shawn Gajdos between the time of the EFP attack and his death, and for the substantial economic and earnings capacity loss.

503.     As a direct result of the EFP attack, and the resulting wrongful death of Shawn Gajdos, Plaintiff, Brenda Richards, has experienced various solatium-related damages, including intentional infliction of severe emotional distress, severe mental anguish, extreme emotional pain and suffering, loss of society, companionship, comfort, advice and counsel, and substantial economic loss.

**ATTACK 31: JUNE 11, 2007 – SADR CITY, BAGHDAD, IRAQ**

**OO.**      **The Payne Family**

504.     Private First Class Cameron Payne was a citizen and national of the United States and a member of the United States Army when he was killed in Iraq on June 11, 2007.

505.     On that date, Private First Class Payne was the "gunner" in the second vehicle of a four-vehicle convoy traveling from Forward Operating Base ("FOB") Rustamiyah to the Ranger Joint Security Station ("JSS") near the Sadr City neighborhood of Baghdad when his M1151 vehicle was struck by an EFP, thus causing Private First Class Payne's death.

506.     The device used to kill Private First Class Payne was an Iranian-manufactured and -designed EFP provided to Iranian-funded and -trained Special Groups in Iraq.

507.      Plaintiff, Julie Payne, is a citizen of the United States and a resident of the State of California.  She is the Widow and Wife of Private First Class Cameron Payne.

508.     Plaintiff, A.L.P., a Minor, represented by her Mother, Julie Payne, was at the time of Cameron Payne's attack and still is a citizen of the United States and a resident of the State of California.  She is the Daughter of Cameron Payne.

509.     Plaintiff, K.P., a Minor, represented by her Mother, Julie Payne, was at the time of Cameron Payne's attack and still is a citizen of the United States and a resident of the State of California.  She is the Daughter of Cameron Payne.

510.     Plaintiff, Julie Payne, brings an action individually and on behalf of the Estate of Cameron Payne, as its Personal Representative in Riverside County, California under Case No.: 1803227.

511.     As a direct result of the EFP attack, and the resulting wrongful death of Cameron Payne, the Estate of Cameron Payne is entitled to recover for any pain and suffering experienced by Cameron Payne between the time of the EFP attack and his death, and for the substantial economic and earnings capacity loss.

512.     As a direct result of the EFP attack, and the resulting wrongful death of Cameron Payne, Plaintiffs, Julie Payne, A.L.P., a Minor, and K.P., a Minor, have experienced various solatium-related damages, including intentional infliction of severe emotional distress, severe

mental anguish, extreme emotional pain and suffering, loss of society, companionship, comfort, advice and counsel, and substantial economic loss.

## ATTACK 32: JUNE 19, 2007 – MUHAMMAD SALIH, IRAQ

### PP. The Modgling Family

513.　Private First Class Joshua Modgling was a citizen and national of the United States and a member of the United States Army when he was killed in Iraq on June 19, 2007.

514.　On that date, Private First Class Modgling was acting as a Combat Engineer on a mounted patrol driving an M2 Bradley Fighting Vehicle southbound on Route Corvette near Muhammad Salih, Iraq, when an IED detonated close by, thus causing a massive explosion which, in turn, caused blast injuries to Modgling's head, torso, and extremities, thus causing his death and that of a Soldier riding with him, along with seriously injuring three additional Soldiers.

515.　The device used to kill Joshua Modgling was an Iranian-manufactured and -designed IED provided to Iranian-funded and -trained Special Groups in Iraq.

516.　Plaintiff, Julie Montano, was at the time of the attack and still is a citizen of the United States and a resident of the State of Nevada. She is the Mother of Joshua Modgling.

517.　Plaintiff, Keith Modgling, was at the time of the attack and still is a citizen of the United States and a resident of the State of Nevada. He is the Father of Joshua Modgling.

518.　Plaintiff, Christopher Modgling, was at the time of the attack and still is a citizen of the United States and resident of the State of Nevada. He is the Brother of Joshua Modgling.

519.　Plaintiff, Kellilynn Stuart, was at the time of the attack and still is a citizen of the United States and a resident of the State of Colorado. She is the Step-Sister of Joshua Modgling.

520.　Plaintiff, Michelle Modgling, was at the time of the attack and still is a citizen of the United States and a resident of the State of Nevada. She is the Sister of Joshua Modgling.

521.　Plaintiff, Kenneth Schaffer, was at the time of the attack and still is a citizen of the United States and a resident of the State of Nevada. He is the Step-Brother of Joshua Modgling.

522.　Plaintiff, Julie Montano, brings an action individually and on behalf of the Estate of

Joshua Modgling, as its Personal Representative in Nye County, Nevada under Case No.: PR8367.

523.    As a direct result of the IED attack, and the resulting wrongful death of Joshua Modgling, the Estate of Joshua Modgling is entitled to recover for any pain and suffering experienced by Joshua Modgling between the time of the IED attack and his death, and for the substantial economic and earnings capacity loss.

524.    As a direct result of the IED attack, and the resulting wrongful death of Joshua Modgling, Plaintiffs, Julie Montano, Keith Modgling, Christopher Modgling, Kellilynn Stuart, Michelle Modgling, and Kenneth Schaffer have experienced various solatium-related damages, including intentional infliction of severe emotional distress, severe mental anguish, extreme emotional pain and suffering, loss of society, companionship, comfort, advice and counsel, and substantial economic loss.

**QQ.    The Zapfe Family**

525.    Sergeant First Class William Zapfe was a citizen and national of the United States and a member of the United States Army when he was killed in Iraq on June 19, 2007.

526.    On that date, Sergeant First Class Zapfe was on a mounted patrol riding in  an M2 Bradley Fighting Vehicle southbound on Route Corvette near Muhammad Salih, Iraq, when an IED detonated close by, thus causing a massive explosion which, in turn, caused Zapfe's death and that of a Soldier riding with him, along with seriously injuring three additional Soldiers.

527.    The device used to kill Sergeant First Class Zapfe was an Iranian-manufactured and -designed IED provided to Iranian-funded and -trained Special Groups in Iraq.

528.    Plaintiff, Joseph Zapfe, is a citizen of the United States and resident of the State of Idaho. He is the Brother of William Zapfe.

529.    Plaintiff, Edward Zapfe, is a citizen of the United States and a resident of the State of Idaho. He is the Brother of William Zapfe.

530.    As a direct result of the IED attack, and the resulting wrongful death of William Zapfe, Plaintiffs, Joseph Zapfe and Edward Zapfe have experienced various solatium-related

damages, including intentional infliction of severe emotional distress, severe mental anguish, extreme emotional pain and suffering, loss of society, companionship, comfort, advice and counsel, and substantial economic loss.

## ATTACK 33: JUNE 29, 2007 - BAGHDAD, IRAQ

### RR.        The Adair Family

531.    Specialist James Adair was a citizen and national of the United States and a member of the United States Army when he was killed in Iraq on June 29, 2007.

532.    On that date, Specialist Adair was on a patrol while riding in an armored M1151 HUMVEE vehicle traveling just outside of Baghdad International Airport when an array of four EFPs detonated on the driver's side of the vehicle, thus causing a massive, fiery explosion and four large slugs to penetrate the driver's door and left passenger door, thus killing Adair and seriously injuring the other three occupants.

533.    The Army concluded that the devices used to kill James Adair were Iranian-manufactured and -designed EFPs provided to Iranian-funded and -trained Special Groups in Iraq.

534.    Plaintiff, Chelsea Adair, was at the time of the attack and still is a citizen of the United States and a resident of the State of Texas. She is the Widow and Wife of James Adair.

535.    Plaintiff, Chelsea Adair, brings an action individually and on behalf of the Estate of James Adair, as its Personal Representative in Panola County, Texas under No.: 10711.

536.    As a direct result of the EFP attack, and the resulting wrongful death of James Adair, the Estate of James Adair is entitled to recover for any pain and suffering experienced by James Adair between the time of the EFP attack and his death, and for the substantial economic loss caused by his death.

537.    As a direct result of the EFP attack, and the resulting wrongful death of James Adair, Plaintiff, Chelsea Adair, has experienced various solatium-related damages, including intentional infliction of severe emotional distress, severe mental anguish, extreme emotional pain and suffering, loss of society, companionship, comfort, advice and counsel, consortium, and

substantial economic loss.

**SS. The Takai Family**

538.   Corporal John Takai was a citizen and national of the United States and a member of the United States Army when he was seriously injured in Iraq on June 29, 2007.  Takai is a resident of the State of Texas.

539.   On that date, Corporal Takai was on a patrol while riding in an armored M1151 HUMVEE vehicle just outside of Baghdad International Airport when an array of four EFPs detonated on the driver's side of the vehicle, thus causing a massive, fiery explosion and four large slugs to penetrate the driver's door and left passenger door, thus seriously injuring three occupants, including Takai, and killing the fourth.

540.   The Army concluded that the devices used to injure John Takai were Iranian-manufactured and -designed EFPs provided to Iranian-funded and -trained Special Groups in Iraq.

541.   As a result of the EFP attack, John Takai sustained very serious left arm and shoulder injuries, along with a left arm degloving injury, all of which required several major surgeries, a very serious traumatic brain injury ("TBI"), a major concussion, regular headaches, a fractured left humerus bone, hypertrophic ossification, third degree burns with resulting necessary grafting procedures, a left shoulder dislocation, had shrapnel blown into his left thigh which caused a gaping wound hole to exist and cause major femoral artery damage, tore many left leg muscles up and down the length of the left leg, fractured the outer bone in his left foot, and was diagnosed with post-traumatic stress disorder ("PTSD"), depression, fatigue, and flashbacks and nightmares reliving the incident.

542.   As a result of the EFP attack, and the physical and emotional injuries he suffered as a direct result therefrom, John Takai has experienced severe physical and emotional pain and suffering in the past and will experience same into the indeterminable future; has incurred medical bills for medical and rehabilitation services rendered and will incur same into the indeterminable future; has incurred an overwhelming loss of income and earnings capacity and will experience

same into the indeterminable future; has experienced permanent injuries to his person and psyche; and has experienced severe mental anguish, anxiety and depression and will experience same into the indeterminable future.

543.     Plaintiff, Mae Takai, was at the time of the attack and still is a citizen of the United States and a resident of the State of Texas. She is the Wife of John Takai.

544.     Plaintiff, Jonamae Takai, was at the time of the attack and still is a citizen of the United States and a resident of the State of Texas. She is the Daughter of John Takai.

545.     Plaintiff, Niana Takai, was at the time of the attack and still is a citizen of the United States and a resident of the State of Texas. She is the Daughter of John Takai.

546.     Plaintiff, I.T., a Minor, represented by her legal guardian, Mae Takai, was at the time of the attack and still is a citizen of the United States and domiciled in the State of Texas. She is the Daughter of John Takai.

547.     Plaintiff, K.T., a Minor, represented by her legal guardian, Mae Takai, was at the time of the attack and still is a citizen of the United States and a resident of the State of Texas. She is the Daughter of John Takai.

548.     Plaintiff, Patricia Cruz, was at the time of the attack and still is a citizen of the United States and domiciled in the State of Texas. She is the Mother of John Takai.

549.     Plaintiff, Juan Takai, was at the time of the attack and still is a citizen of the United States and domiciled in the State of Texas. He is the Father of John Takai.

550.     Plaintiff, Jolene Takai, was at the time of the attack and still is a citizen of the United States and a resident of the State of Texas. She is the Sister of John Takai.

551.     Plaintiff, Jermaine Takai, was at the time of the attack and still is a citizen of the United States and a resident of the State of Texas.  He is the Brother of John Takai.

552.     As a result of the EFP attack, and the physical and emotional injuries suffered by John Takai, Plaintiffs, Mae Takai, Jonamae Takai, Niana Takai, I.T., a Minor, K.T., a Minor, Patricia Cruz, Juan Takai, Jolene Takai, and Jermaine Takai have suffered and experienced

intentional infliction of emotional distress and loss of consortium-related damages.

## ATTACK 34: JULY 5, 2007 - BAGHDAD, IRAQ

### TT.        The Ahearn Family

553.    Major James Ahearn was a citizen and national of the United States and a member of the United States Army when he was killed in Iraq on July 5, 2007.

554.    On that date, Major Ahearn was riding with his Civil Affairs Battalion in an armored M1151 HUMVEE lead vehicle of a convoy on Route Jackson just south of the intersection of Baghdad Road and its intersection with the Dora Expressway in southern Baghdad when an array of EFPs struck the driver's side of the vehicle, causing a massive explosion, thus killing Ahearn and another occupant, and also causing very serious personal injuries to three additional occupants.

555.    The Army concluded that the devices used to kill James Ahearn were Iranian-manufactured and -designed EFPs provided to Iranian-funded and -trained Special Group in Iraq.

556.    The Special Group Kata'ib Hezbollah ("KH") claimed responsibility for the attack which killed Ahearn.  KH is an Iraqi paramilitary group founded and sponsored primarily by Iran, the IRGC, and QF, but which also receives funding and materiel support from Hezbollah, which was founded by Iran and which is supported with money and materiel by Iran.

557.    Plaintiff, Constance Ahearn, was at the time of the attack and still is a citizen of the United States and a resident of the State of California. She is the Mother of James Ahearn.

558.    Plaintiff, Kevin Ahearn, was at the time of the attack and still is a citizen of the United States and a resident of the State of Arizona. He is the Brother of James Ahearn.

559.    As a direct result of the EFP attack, and the resulting wrongful death of James Ahearn, Plaintiffs, Constance Ahearn and Kevin Ahearn experienced various solatium-related damages, including intentional infliction of severe emotional distress, severe mental anguish, extreme emotional pain and suffering, loss of society, companionship, comfort, advice and counsel, consortium, and substantial economic loss.

UU.        **The Kline Family**

560.    Sergeant Keith Kline was a citizen and national of the United States and a member of the United States Army when he was killed in Iraq on July 5, 2007.

561.    On that date, Sergeant Kline was riding with his Civil Affairs Battalion in an armored M1151 HUMVEE lead vehicle of a convoy on Route Jackson just south of the intersection of Baghdad Road and its intersection with the Dora Expressway in southern Baghdad when an array of EFPs struck the driver's side of the vehicle, causing a massive explosion, thus killing Sergeant Kline and another occupant, and thus causing very serious personal injuries to three additional occupants.

562.    The Army concluded that the devices used to kill Sergeant Kline were Iranian-manufactured and -designed EFPs provided to Iranian-funded and -trained Special Groups in Iraq.

563.    The Special Group Kata'ib Hezbollah claimed responsibility for the attack which killed Kline.  KH is an Iraqi paramilitary group founded, funded and sponsored primarily by Iran, the IRGC, and the QF, but which also receives funding and materiel support from Hezbollah, which was founded by Iran and which is supported with money and materiel by Iran.

564.    Plaintiff, Betty Jean Kline, was at the time of the attack and still is a citizen of the United States and a resident of the State of Ohio. She is the Mother of Keith Kline.

565.    Plaintiff, John Kline, Jr. was at the time of the attack and still is a citizen of the United States and a resident of the State of Ohio. He is the Brother of Keith Kline.

566.    Plaintiff, Pamela McKean, brings an action on behalf of the Estate of Keith Kline, as its Personal Representative in Ottawa County, Ohio under case # 20071178.

567.    As a direct result of the EFP attack, and the resulting wrongful death of Keith Kline, the Estate of Keith Kline is entitled to recover for any pain and suffering experienced by Keith Kline between the time of the EFP attack and his death, and for the substantial economic and earnings capacity loss.

568.    As a direct result of the EFP attack, and the resulting wrongful death of Keith Kline,

Plaintiffs, Betty Jean Kline and John Kline, Jr. experienced various solatium-related damages, including intentional infliction of severe emotional distress, severe mental anguish, extreme emotional pain and suffering, loss of society, companionship, comfort, advice and counsel, consortium, and substantial economic loss.

## ATTACK 35: JULY 6, 2007 - BAGHDAD, IRAQ

### VV.     The Lill Family

569.     Specialist Eric Lill was a citizen and national of the United States and a member of the United States Army when he was killed in Iraq on July 6, 2007.

570.     On that date, Specialist Lill was riding in an armored M1114 HUMVEE vehicle on a patrol traveling on Muasker Al Rashid Street just south of its intersection with the Dora Expressway in the Zafaraniyah district of southeast Baghdad when an EFP detonated, thus causing a massive explosion which killed Specialist Lill and seriously injured three other occupants.

571.     The Army investigation concluded that this was in fact an EFP attack which was carried out by the JAM Special Group.

572.     The Army concluded that the device used to kill Specialist Lill was an Iranian-manufactured and -designed EFP provided to Iranian-funded and -trained Special Groups in Iraq.

573.     Plaintiff, Skye Otero, was at the time of Eric Lill's attack and still is a citizen of the United States and a resident of the State of Illinois. She is the Widow of Eric Lill.

574.     Plaintiff, M.L., a Minor, represented by her legal guardian, her Mother, Skye Otero, was at the time of Eric Lill's attack and still is a citizen of the United States and resident of the State of Illinois.  She is the Daughter of Eric Lill.

575.     Plaintiff, Cody Lill, was at the time of Eric Lill's attack and still is a citizen of the United States and a resident of the State of Illinois.  He is the Son of Eric Lill.

576.     Plaintiff, Anthony Lill, was at the time of Eric Lill's attack and still is a citizen of the United States and a resident of the State of Tennessee. He is the Father of Eric Lill.

577.     Plaintiff, Charmaine Lill, was at the time of Eric Lill's attack and still is a citizen of

the United States and resident of the State of Tennessee. She is the Mother of Eric Lill.

578.    Plaintiff, Kortne Lill Jones, was at the time of Eric Lill's attack and still is a citizen of the United States and resident of the State of Tennessee. She is the Sister of Eric Lill.

579.    Plaintiff, Anthony Lill, brings an action individually and on behalf of the Estate of Eric Lill, as its Personal Representative in Cook County, Illinois, under Case Number 2007P006563.

580.    As a direct result of the EFP attack, and the resulting wrongful death of Eric Lill, the Estate of Eric Lill is entitled to recover for any pain and suffering experienced by Eric Lill between the time of the EFP attack and his death, and for the substantial economic and earnings capacity loss.

581.    As a direct result of the EFP attack, and the resulting wrongful death of Eric Lill, Plaintiffs, Skye Otero, M.L., a Minor, Cody Lill, Anthony Lill, Charmaine Lill, and Kortne Lill Jones, experienced various solatium-related damages, including intentional infliction of severe emotional distress, severe mental anguish, extreme emotional pain and suffering, loss of society, companionship, comfort, advice and counsel, consortium, and substantial economic loss.

## ATTACK 36: JULY 6, 2007 – BAGHDAD, IRAQ

### WW.    The Wilson Family

582.    Private First Class LeRon A. Wilson was a citizen and national of the United States and a member of the United States Army when he was killed in Iraq on July 6, 2007.

583.    On that date, Private First Class Wilson was riding in an armored M1151 HUMVEE vehicle on a routine patrol just east of the Mohammed Al-Qasim Expressway near the Sadr City neighborhood of Baghdad when an IED detonated right adjacent to or underneath the vehicle, thus causing a massive explosion which killed Private First Class Wilson.

584.    The Army concluded that the device used to kill Private First Class Wilson was an Iranian-manufactured and -designed IED provided to Iranian-funded and -trained Special Groups in Iraq.

585.     Plaintiff, Simona Francis, was at the time of the attack and still is a citizen of the United States and a resident of the State of New York. She is the Mother of Le Ron A. Wilson.

586.     Plaintiff, Simona Francis, brings an action individually and on behalf of the Estate of Le Ron A. Wilson, as its Personal Representative in Cook County, Illinois, under Case Number 2007P006563.

587.     As a direct result of the IED attack, and the resulting wrongful death of LeRon Wilson, the Estate of LeRon Wilson is entitled to recover for any pain and suffering experienced by LeRon Wilson between the time of the IED attack and his death, and for the substantial economic and earnings capacity loss.

588.     As a direct result of the IED attack, and the resulting wrongful death of LeRon Wilson, Plaintiff, Simona Francis experienced various solatium-related damages, including intentional infliction of severe emotional distress, severe mental anguish, extreme emotional pain and suffering, loss of society, companionship, comfort, advice and counsel, consortium, and substantial economic loss.

## ATTACK 37: JULY 14, 2007 - BAGHDAD, IRAQ

### XX.      The Kube Family

589.     Private Christopher Kube was a citizen and national of the United States and a member of the United States Army when he was killed in Iraq on July 14, 2007.

590.     On that date, Private Kube was riding in an armored M1114 "HUMVEE") in a convoy of vehicles traveling on Airport Road just north of its intersection with the Dora Expressway in the Rusafa district of southeastern Baghdad when an EFP detonated near his vehicle, thus causing a massive explosion which caused Private Kube's death and injured another Soldier.

591.     The Army investigation concluded that the JAM Special Group likely perpetrated this EFP attack and that the damage pattern was consistent with a seven-array copper-lined EFP. Copper residue was found in all of the strike points on the HUMVEE.

592.    The device used to kill Private Kube was an Iranian-manufactured and -designed EFP provided to Iranian-funded and -trained Special Groups in Iraq.

593.    Plaintiff, Debbie Otte, was at the time of the attack and still is a citizen of the United States and resident of the State of Michigan. She is the Mother of Christopher Kube.

594.    Plaintiff, David Kube, was at the time of the attack and still is a citizen of the United States and a resident of the State of Michigan. He is the Father of David Kube.

595.    Plaintiff, Jonathan Kube, was at the time of the attack and still is a citizen of the United States and resident of the State of Michigan. He is the Brother of Christopher Kube.

596.    Plaintiff, Jessica Kube, was at the time of the attack and still is a citizen of the United States and resident of the State of Michigan.  She is the Sister of Christopher Kube.

597.    Plaintiff, Jason Kube, was at the time of the attack and still is a citizen of the United States and resident of the State of Michigan. He is the Brother of Christopher Kube.

598.    Plaintiff, Jennifer Kube, was at the time of the attack and still is a citizen of the United States and a resident of the State of Michigan.  She is the Sister of Christopher Kube.

599.    Plaintiff, David Kube, brings an action individually and on behalf of the Estate of Christopher Kube, as its Personal Representative in Macomb County, Michigan, under File No.: 2018-227149-DE.

600.    As a direct result of the EFP attack, and the resulting wrongful death of Christopher Kube, the Estate of Christopher Kube is entitled to recover for any pain and suffering experienced by Christopher Kube between the time of the EFP attack and his death, and for the substantial economic and earnings capacity loss.

601.    As a direct result of the EFP attack, and the resulting wrongful death of Christopher Kube, Plaintiffs, David Kube, Debbie Otte, Jonathan Kube, Jessica Kube, Jason Kube, and Jennifer Kube have experienced various solatium-related damages, including intentional infliction of severe emotional distress, severe mental anguish, extreme emotional pain and suffering, loss of society, companionship, comfort, advice and counsel, consortium, and substantial economic loss.

**ATTACK 38: JULY 31, 2007 - SADR CITY, BAGHDAD, IRAQ**

**YY.** **The Gonzalez Family**

602.    Specialist Zachariah Gonzalez was a citizen and national of the United States and a member of the United States Army when he was killed in Iraq on July 31, 2007.

603.    On that date, Specialist Gonzalez was riding in a Stryker vehicle as the lead vehicle of four Stryker vehicles returning from a Sadr City counter-mortar patrol when an array of three EFPs detonated near the Stryker vehicle, thus causing a massive explosion which struck directly in the main troop compartment of the vehicle, killing Gonzalez and seriously injuring six other Soldiers.

604.    The Army's "Explosive Ordinance Disposal" ("EOD") found copper fragments in the walls of the main compartment of the Stryker vehicle and concluded that the devices used to kill Specialist Gonzalez were Iranian-manufactured and -designed EFPs provided to Iranian-funded Special Groups in Iraq.

605.    Plaintiff, Laura Gonzalez, was at the time of the attack and still is a citizen of the United States and a resident of the State of Indiana.  She is the Mother of Zachariah Gonzalez.

606.    Plaintiff, Benedict Gonzalez, is a citizen of the United States and a resident of the State of Indiana.  He is the Father of Zachariah Gonzalez.

**607.    Plaintiff, Jake Gonzalez, is a citizen of the United States and a resident of the State of Indiana.  He is the Brother of Zachariah Gonzalez.**

608.    Plaintiff, Laura Gonzalez, brings an action individually and on behalf of the Estate of Zachariah Gonzalez, as its Personal Representative in Marion County, Indiana, under Case No.: 49D08-1812-EU-048352.

609.    As a direct result of the EFP attack, and the resulting wrongful death of Zachariah Gonzalez, the Estate of Zachariah Gonzalez is entitled to recover for any pain and suffering experienced by Zachariah Gonzalez between the time of the EFP attack and his death, and for the substantial economic and earnings capacity loss.

610.    As a direct result of the EFP attack, and the resulting wrongful death of Zachariah Gonzalez, Plaintiffs, Laura Gonzalez, Benedict Gonzalez, and **Jake Gonzalez** have experienced various solatium-related damages, including intentional infliction of severe emotional distress, severe mental anguish, extreme emotional pain and suffering, loss of society, companionship, comfort, advice and counsel, consortium, and substantial economic loss.

## ATTACK 39: AUGUST 4, 2007   HAWR RAJAB, IRAQ

### ZZ.        The Wakeman Family

611.    Sergeant Dustin Wakeman was a citizen and national of the United States and was a member of the United States Army when he was killed in Iraq on August 4, 2007.

612.    On that date, Sergeant Wakeman was riding in an M1151 HUMVEE vehicle traveling in Hawr Rajab, Baghdad, Iraq, when an IED detonated near the vehicle in which he was then riding, thus causing a massive explosion, thus causing his death.

613.    The device used to kill Sergeant Wakeman was an Iranian-manufactured and -designed IED provided to Iranian-funded and -trained Special Groups in Iraq.

614.    Plaintiff, Margaret Wakeman, was at the time of the attack and still is a citizen of the United States and a resident of the State of Texas. She is the Mother of Dustin Wakeman.

615.    Plaintiff, David Wakeman, was at the time of the attack and still is a citizen of the United States and a resident of the State of Texas. He is the Father of Dustin Wakeman.

616.    Plaintiff, William "Zack" Wakeman, was at the time of the attack and still is a citizen of the United States and a resident the State of Texas. He is the Brother of Dustin Wakeman.

617.    Plaintiff, David Wakeman, brings an action individually and on behalf of the Estate of Dustin Wakeman, as its Personal Representative in Tarrant County, Texas, under Case No.: 2018-PR00686-2.

618.    As a direct result of the IED attack, and the resulting wrongful death of Dustin Wakeman, the Estate of Dustin Wakeman is entitled to recover for any pain and suffering

experienced by Dustin Wakeman between the time of the IED attack and his death, and for the substantial economic and earnings capacity loss.

619.    As a direct result of the IED attack, and the resulting wrongful death of Dustin Wakeman, Plaintiffs, Margaret Wakeman, David Wakeman, and William "Zack" Wakeman have experienced various solatium-related damages, including intentional infliction of severe emotional distress, severe mental anguish, extreme emotional pain and suffering, loss of society, companionship, comfort, advice and counsel, consortium, and substantial economic loss.

## ATTACK 40: AUGUST 13, 2007—QAYYARAH, NINEVEH PROVINCE, IRAQ

### AAA.    The Cottrell Family

620.    Staff Sergeant Eric Cottrell was a citizen and national of the United States and a member of the United States Army when he was killed in Iraq on August 13, 2007

621.    On that date, Staff Sergeant Cottrell was riding in an M1114 HUMVEE vehicle northbound on Alternate Supply Route ("ASR") Atlanta near Qayyarah, Nineveh Province, Iraq, when an IED detonated, thus causing a massive explosion which killed Staff Sergeant Cottrell.

622.    The device used to kill Staff Sergeant Cottrell was an Iranian-manufactured and -designed IED provided to Iranian-funded and -trained Special Groups in Iraq.

623.    Plaintiff, Sherri Cottrell, was at the time of Eric Cottrell's attack and still is a citizen of the United States and a resident of the State of Maryland. She is the Widow and Wife of Eric Cottrell.

624.    Plaintiff, E.C., a Minor, being represented by his legal guardian, Sherri Cottrell, was at the time of Eric Cottrell's attack and still is a citizen of the United States and a resident of the State of Maryland. He is the Son of Eric Cottrell.

625.    Plaintiff, James Cottrell, was at the time of Eric Cottrell's attack and still is a citizen of the United States and a resident of the State of Maryland. He is the Son of Eric Cottrell.

626.    Plaintiff, Brandy Cottrell, was at the time of Eric Cottrell's attack and still is a citizen of the United States and a resident of the State of Maryland. She is the Daughter of Eric

Cottrell.

627.    Plaintiff, Megan Cottrell, was at the time of Eric Cottrell's attack and still is a citizen of the United States and a resident of the State of Maryland. She is the Daughter of Eric Cottrell.

628.    Plaintiff, Doeshie Waters, was at the time of Eric Cottrell's attack and still is a citizen of the United States and a resident of the State of California. She is the Mother of Eric Cottrell.

629.    Plaintiff, Norris Waters, was at the time of Eric Cottrell's attack and still is a citizen of the United States and a resident of the State of California. He is the Step-Father of Eric Cottrell.

630.    As a direct result of the IED attack, and the resulting death of Eric Cottrell, Plaintiffs, Sherri Cottrell, E.C., a Minor, James Cottrell, Brandy Cottrell, Megan Cottrell, Doeshie Waters, and Norris Waters have experienced various solatium-related damages, including intentional infliction of severe emotional distress, severe mental anguish, extreme emotional pain and suffering, a loss of society, companionship, comfort, advice and counsel, and substantial economic loss.

## ATTACK 41: AUGUST  17, 2007 - BAGHDAD AL JADEEDA, IRAQ

### BBB.    The Edds Family

631.    First Lieutenant Jonathan Edds was a citizen and national of the United States and a member of the United States Army when he was killed in Iraq on August 17, 2007.

632.    On that date, First Lieutenant Edds was riding in an M1151 HUMVEE vehicle as part of a six-vehicle convoy in the Baghdad Al Jadeeda district of Baghdad, Iraq, when an IED detonated, thus causing a massive explosion which killed First Lieutenant Edds.

633.    The device used to kill First Lieutenant Edds was an Iranian-manufactured and -designed IED provided to Iranian-funded and -trained Special Groups in Iraq.

634.    Plaintiff, Barry Edds, was at the time of Jonathan Edds' death and still is a citizen of the United States and a resident of the State of Michigan. He is the Father of Jonathan Edds.

635.    Plaintiff, Julia Edds, was at the time of Jonathan Edds' death and still is a citizen of the United States and a resident of the State of Michigan. She is the Mother of Jonathan Edds.

636.    Plaintiff, Joel Edds, was at the time of Jonathan Edds' death and still is a citizen of the United States and a resident of the State of Michigan. He is the Brother of Jonathan Edds.

637.    As a direct result of the IED attack, and the resulting death of Jonathan Edds, Plaintiffs, Barry Edds, Julia Edds, and Joel Edds have experienced various solatium-related damages, including intentional infliction of severe emotional distress, severe mental anguish, extreme emotional pain and suffering, a loss of society, companionship, comfort, advice and counsel, and substantial economic loss.

## ATTACK 42: AUGUST 18, 2007—RAHMANIYA, BAGHDAD, IRAQ

### CCC.    Andrew Tong

638.    Captain Andrew Tong was a citizen and national of the United States and a member of the United States Army when he was wounded in Iraq on August 18, 2007.

639.    On that date, Captain Tong was riding as the right front passenger in an M1083 Medium Tactical Vehicle ("MTV") standard cargo truck, the third vehicle in a convoy of eight vehicles in the Rahmaniya district of Baghdad, Iraq, when an EFP detonated, thus causing a massive explosion which seriously injured Captain Tong.

640.    The device used to injure Captain Tong was an Iranian-manufactured and -designed EFP provided to Iranian-funded and -trained Special Groups in Iraq.

641.    As a result of the EFP attack, Captain Tong sustained a traumatic amputation of his right leg below the knee; experienced multiple and various complications associated with the "stump" on the end of his right lower leg, including infections, wounds and neuromas; had shrapnel blow into his left ankle area which has caused the need for over 100 injections; sustained a traumatic brain injury ("TBI") and concussion from the EFP detonation; developed migraine headaches; experienced Post-Traumatic Stress Disorder ("PTSD"); developed permanent double vision; experienced a permanent hearing loss and tinnitus condition; and had to have surgery on his

94

right arm where shrapnel had blown into it.

642.    As a result of the EFP attack, and the physical and emotional injuries he suffered as a direct result therefrom, Captain Tong has experienced severe physical and emotional pain and suffering in the past and will experience same into the indeterminable future; has incurred medical bills for medical and rehabilitation services rendered and will incur same into the indeterminable future; has incurred an overwhelming loss of income and earnings capacity and will experience same into the indeterminable future; has experienced permanent injuries to his person and psyche; and has experienced severe mental anguish, anxiety and depression and will experience same into the indeterminable future.

## ATTACK 43: SEPTEMBER 4, 2007 - BAGHDAD AL JADEEDA, IRAQ

### DDD.    The Crookston Family

643.    Specialist Duncan Crookston was a citizen and national of the United States and a member of the United States Army when he died on January 25, 2008. Crookston died months later after and as a direct result of his September 4, 2007, attack in Baghdad, Iraq.

644.    On that date, Specialist Crookston was riding in an M1151 HUMVEE vehicle as part of a five vehicle patrol on Route Predator in the Baghdad Al Jadeeda district of Baghdad, Iraq, when an EFP detonated, thus causing a massive explosion which caused serious personal injuries to Specialist Class Crookston, injuries which later caused his death on January 25, 2008.

645.    The device used to kill Specialist Crookston was an Iranian-manufactured and -designed EFP provided to Iranian-funded and -trained Special Groups in Iraq.

646.    Plaintiff, Leesha Crookston, was at the time of Specialist Duncan Crookston's death and still is a citizen of the United States and a resident of the State of Colorado. She is the Widow of Specialist Duncan Crookston.

647.    Plaintiff, Leesha Crookston, brings an action individually and on behalf of the Estate of Specialist Duncan Crookston, as its Personal Representative in Shawnee County, Kansas, under Case No.: 2018-PR-568.

648.     As a direct result of the EFP attack, and the resulting wrongful death of Specialist Duncan Crookston, the Estate of Specialist Duncan Crookston is entitled to recover for any pain and suffering experienced by Duncan Crookston between the time of the EFP attack and his death, and for the substantial economic and earnings capacity loss.

649.     As a direct result of the EFP attack, and the resulting death of Specialist Duncan Crookston, Plaintiff, Leesha Crookston, has experienced various solatium-related damages, including intentional infliction of severe emotional distress, severe mental anguish, extreme emotional pain and suffering, a loss of society, companionship, comfort, advice and counsel, and substantial economic loss.

## ATTACK 44: SEPTEMBER 20, 2007—MUQDADIYAH, IRAQ

### EEE.     The Marciante Family

650.     Corporal Luigi Marciante, Jr. was a citizen and national of the United States and a member of the United States Army when he was killed in Iraq on September 20, 2007.

651.     On that date, Corporal Marciante, Jr. was riding in a Stryker Fighting Vehicle as part of a Combat Logistics Patrol ("CLP") near Miqdadiyah, Diyala province, northeast of Baghdad, Iraq, when an IED detonated, thus causing a massive explosion which killed Corporal Marciante.

652.     The device used to kill Corporal Marciante, Jr. was an Iranian-manufactured and -designed IED provided to Iranian-funded and -trained Special Groups in Iraq.

653.     Plaintiff, Stephanie Marciante, was at the time of Corporal Luigi Marciante, Jr.'s death and still is a citizen of the United States and a resident of the State of New Jersey. She is the Widow of Corporal Luigi Marciante, Jr.

654.     Plaintiff, L.M., a Minor, being represented by his legal guardian, Stephanie Marciante, was at the time of Corporal Luigi Marciante, Jr.'s death and still is a citizen of the United States and a resident of the State of New Jersey.  He is the Son of Corporal Luigi Marciante, Jr.

655.     Plaintiff, Maria Marciante, was at the time of Corporal Luigi Marciante, Jr.'s death and still is a citizen of the United States and a resident of the State of New Jersey. She is the Mother of Corporal Luigi Marciante, Jr.

656.     Plaintiff, Luigi Marciante, was at the time of Corporal Luigi Marciante, Jr.'s death and still is a citizen of the United States and a resident of the State of New Jersey. He is the Father of Corporal Luigi Marciante, Jr.

657.     Plaintiff, Enza Marciante Balestrieri, was at the time of Corporal Luigi Marciante, Jr.'s death and still is a citizen of the United States and a resident of the State of New Jersey. She is the Sister of Corporal Luigi Marciante, Jr.

658.     Plaintiff, Stephanie Marciante, brings an action individually and on behalf of the Estate of Corporal Luigi Marciante, Jr., as its Personal Representative in Ocean County, New Jersey, under Case No.: 227045.

659.     As a direct result of the IED attack, and the resulting wrongful death of Luigi Marciante, Jr., the Estate of Luigi Marciante, Jr. is entitled to recover for any pain and suffering experienced by Luigi Marciante, Jr. between the time of the IED attack and his death, and for the substantial economic and earnings capacity loss.

660.     As a direct result of the IED attack, and the resulting death of Corporal Luigi Marciante, Jr., Plaintiffs, Stephanie Marciante, L.M., a Minor, Maria Marciante, Luigi Marciante, and Enza Marciante Balestrieri, have experienced various solatium-related damages, including intentional infliction of severe emotional distress, severe mental anguish, extreme emotional pain and suffering, a loss of society, companionship, comfort, advice and counsel, and substantial economic loss.

## ATTACK 45: NOVEMBER 2, 2007 – HURRIYA, BAGHDAD, IRAQ

### FFF.     The Wells Family

661.     Specialist Joshua Wells was a citizen and national of the United States and a member of the United States Army when he was seriously injured in Iraq on November 2, 2007.

Wells is a resident of the State of Mississippi.

662.    On that date, Specialist Wells was driving a Stryker vehicle on a routine refueling mission through an Iraqi checkpoint along Mosul Road in the vicinity of Hurriya, northern Baghdad, when an array of four EFPs detonated next to the Stryker vehicle, thus causing a massive explosion which caused serious physical and emotional injuries to Wells and two other occupants.

663.    The devices used to injure Joshua Wells were Iranian-manufactured and -designed EFPs provided to Iranian-funded and -trained Special Groups in Iraq.

664.    As a result of the EFP attack, Joshua Wells sustained bilateral below-the-knee amputations, a very serious left shoulder injury with permanent nerve damage resulting in loss of lifting and grip strength in his left arm and hand, serious lumbar disc issues and problems which result in constant low back pain due to long term use of bilateral prosthetic devices to ambulate, ringing in his ears, hearing loss, shrapnel fragments blown into various portions of his body, post-traumatic stress disorder ("PTSD"), depression, anxiety disorder, and panic attacks.

665.    As a result of the EFP attack, and the physical and emotional injuries he suffered as a direct result therefrom, Joshua Wells has experienced severe physical and emotional pain and suffering in the past and will experience same into the indeterminable future; has incurred medical bills for medical and rehabilitation services rendered and will incur same into the indeterminable future; has incurred an overwhelming loss of income and earnings capacity and will experience same into the indeterminable future; has experienced permanent injuries to his person and psyche; and has experienced severe mental anguish, anxiety and depression and will experience same into the indeterminable future.

666.    Plaintiff, Lydia Lantrip, was at the time of the attack and still is a citizen of the United States and a resident of the State of Mississippi. She is the Mother of Joshua Wells.

667.    Plaintiff, Billie Wells, Jr., was at the time of the attack and still is a citizen of the United States and a resident of the State of Mississippi. He is the Father of Joshua Wells.

668.    Plaintiff, David "Blake" Lantrip, was at the time of the attack and still is a citizen of

the United States and a resident of the State of Mississippi. He is the Brother of Joshua Wells.

669.     Plaintiff, J.W., a Minor represented by his legal guardian, Billie Wells, Jr., was at the time of the attack and still is a citizen of the United States and a resident of the State of Mississippi. He is the Brother of Joshua Wells.

670.     As a result of the EFP attack, and the physical and emotional injuries suffered by Joshua Wells as a direct result therefrom, Plaintiffs, Lydia Lantrip, Billie Wells, Jr., David "Blake" Lantrip, and J.W., a Minor, have suffered and experienced intentional infliction of severe emotional distress and loss of consortium-related damages.

## ATTACK 46: DECEMBER 17, 2007 – BAGHDAD AL JADEEDA, IRAQ

### GGG.     The Wagner Family

671.     Specialist Bryan Wagner was a citizen and national of the United States and a member of the United States Army when he was wounded in Iraq on December 17, 2007. Wagner is a resident of the State of Florida.

672.     On that date, Specialist Wagner was on a Military Police "Protective Service Detail" ("PSD") in an up-armored M1114 HUMVEE vehicle in the Al Jadeeda district of Baghdad, Iraq, when a series of EFPs detonated, thus causing his right leg to be blown off and other very serious physical and emotional injuries.

673.     Investigation of the blown-up HUMVEE vehicle revealed that its armor had been penetrated by copper slugs, a signature finding of EFP devices.

674.     The devices used to injure Specialist Wagner were Iranian-manufactured and -designed EFPs provided to Iranian-funded and -trained Special Groups in Iraq.

675.     As a result of the EFP attack, Specialist Wagner lost his right leg above the knee, along with multiple other and additional physical and emotional injuries, including multiple debridement procedures, treatments for multiple infections, a mangled left thigh and right forearm from shrapnel, permanent radial nerve damage in the right forearm resulting in lost grip strength, traumatic brain injury ("TBI"), post-concussive syndrome, cognitive disorder, and sleep apnea.

676.     As a result of the EFP attack, and the physical and emotional injuries he suffered as a direct result therefrom, Specialist Wagner has experienced severe physical and emotional pain and suffering in the past and will experience same into the indeterminable future; has incurred medical bills for medical and rehabilitation services rendered and will incur same into the indeterminable future; has incurred an overwhelming loss of income and earnings capacity and will experience same into the indeterminable future; has experienced permanent injuries to his person and psyche; and has experienced severe mental anguish, anxiety and depression and will experience same into the indeterminable future.

## ATTACK 47: MARCH 14, 2008 –EAST OF MUSAYIB, IRAQ

### HHH.     The Knapp Family

677.     Specialist David A. Knapp was a citizen and national of the United States and a member of the United States Army when he was wounded in Iraq on March 14, 2008.

678.     On October 2, 2010, Specialist Knapp died from causes unrelated to his personal injuries suffered in Iraq.

679.     On March 14, 2008, Specialist Knapp was on a patrol riding in an M1151 HUMVEE just east of Musayib, Iraq, when an array of four to six EFPs detonated, thus causing a massive explosion which caused Specialist Knapp to sustain very serious personal injuries.

680.     The devices used to injure Specialist Knapp were Iranian-manufactured and -designed EFPs provided to Iranian-funded and -trained Special Groups in Iraq.

681.     As a result of the EFP attack, Specialist Knapp suffered two traumatic above-the-knee amputations of his legs and other serious physical and emotional injuries.

682.     As a result of the EFP attack, and the physical and emotional injuries he suffered as a direct result therefrom, Specialist Knapp experienced severe physical and emotional pain through the date of his death; incurred medical bills for medical and rehabilitation services rendered through the date of his death; incurred an overwhelming loss of income and earnings capacity through the date of his death; experienced injuries to his person and psyche through the date of his

death; and experienced severe mental anguish, anxiety and depression through the date of his death.

683.    Plaintiff, Jeanette Knapp, was at the time of David A. Knapp's attack and still is a citizen of the United States and is a resident of the State of Florida. She is the Mother of David A. Knapp.

684.    Plaintiff, Jeanette Knapp, was named as the Personal Representative of the Estate of David A. Knapp in Dodge County, Arizona, under File No.: 2018PR000224.  The Estate of David A. Knapp is pursuing survival claims for the personal injuries sustained by David A. Knapp between the date of the EFP attack and his death.

685.    As a result of the EFP attack, and the physical and emotional injuries suffered by David Alex Knapp as a direct result therefrom, Plaintiff, Jeanette Knapp, has experienced various solatium-related damages, including intentional infliction of severe emotional distress, severe mental anguish, extreme emotional pain and suffering, and substantial economic loss.

## ATTACK 48: MARCH 17, 2008 - SADR CITY, BAGHDAD, IRAQ

### III.    Norman Forbes, IV

686.    Sergeant Norman Forbes, IV was a citizen and national of the United States and a member of the United States Army when he was seriously wounded in Iraq on March 17, 2008.

687.    On that date, Sergeant Forbes was driving an M1114 HUMVEE vehicle in a five-vehicle convoy on Route Predator in Sadr City, Baghdad, Iraq, when at least two EFPs in an array of four EFPS detonated, thus causing a tremendous explosion which seriously injured Specialist Forbes.

688.    The devices used to injure Sergeant Forbes were Iranian-manufactured and -designed EFPs provided to Iranian-funded and -trained Special Groups in Iraq.

689.    As a result of the EFP attack, Sergeant Forbes sustained an open and comminuted fracture of his left femur (thigh) bone which has necessitated multiple surgeries and has left him with permanent deformities to the leg and musculature around it; a mangled and disfigured left

hand which included multiple fractures and a missing left pinky finger; a fractured left forearm bone with permanent nerve damage; a major missing portion of his left quadriceps muscle area; significant shrapnel injuries to his right forearm which resulted in a loss of sensation and feeling in his right (dominant) hand; and severe lacerations and shrapnel wounds to all of his extremities.

690. As a result of the EFP attack, and the physical and emotional injuries he suffered as a direct result therefrom, Sergeant Forbes has experienced severe physical and emotional pain and suffering in the past and will experience same into the indeterminable future; has incurred medical bills for medical and rehabilitation services rendered and will incur same into the indeterminable future; has incurred an overwhelming loss of income and earnings capacity and will experience same into the indeterminable future; has experienced permanent injuries to his person and psyche; and has experienced severe mental anguish, anxiety and depression and will experience same into the indeterminable future.

## ATTACK 49: MARCH 23, 2008 - MALEF, BAGHDAD, IRAQ

### JJJ. The Rubio-Hernandez Family

691. Corporal Jose Rubio-Hernandez was a national of the United States and a member of the United States Army when he was killed in Iraq on March 24, 2008.

692. On that date, Corporal Rubio-Hernandez was on a patrol riding in a Bradley A2M2 Fighting Vehicle in the Malef neighborhood of Baghdad area when an EFP detonated near his vehicle, thus causing a massive explosion, thus causing the death of Hernandez and three other vehicle occupants.

693. The device used to kill Corporal Rubio-Hernandez was an Iranian-manufactured EFP provided to Iranian-funded and -trained Special Groups in Iraq.

694. Plaintiff, Jennifer Rubio, was at the time of the attack and still is a citizen of the United States and a resident of the State of Texas. She is the Widow of Jose Rubio-Hernandez.

695. Plaintiff, N.H., a Minor, represented by his legal guardian, Jennifer Rubio, was at the time of the attack and still is a citizen of the United States and a resident of the State of Texas.

He is the Son of Jose Rubio-Hernandez.

696.     As a direct result of the EFP attack, and the resulting wrongful death of Jose Rubio Hernandez, Plaintiffs, Jennifer Rubio and N.H., a Minor, have experienced various solatium-related damages, including intentional infliction of severe emotional distress, severe mental anguish, extreme emotional pain and suffering, loss of society, companionship, comfort, advice and counsel, consortium, and substantial economic loss.

## ATTACK 50: MARCH 29, 2008 - SADR CITY, BAGHDAD, IRAQ

### KKK.     The Bennett Family

697.     Specialist Durrell Bennett was a citizen and national of the United States and a member of the United States Army when he was killed in Iraq on March 29, 2008.

698.     On that date, Specialist Bennett was on a patrol riding in an armored M1151 HUMVEE vehicle in Sadr City, Baghdad, Iraq, when an EFP detonated near his vehicle, thus causing a massive explosion that killed Bennett and one other occupant, and seriously injured three other occupants of the vehicle.

699.     The Army concluded that Special Groups in the Rusafa area of Baghdad had been responsible for the majority of the [then] recent EFP attacks on Coalition Forces.

700.     The device used to kill Specialist Bennett was an Iranian-manufactured and -designed EFP provided to Iranian-funded and -trained Special Groups in Iraq.

701.     Plaintiff, Doris Bennett, was at the time of the attack and still is a citizen of the United States and a resident of the State of Washington. She is the Mother of Durrell Bennett.

702.     Plaintiff, Dempsey Bennett, was at the time of the attack and still is a citizen of the United States and resident of the State of Washington. He is the Father of Durrell Bennett.

703.     Plaintiff, Darnell Bennett, was at the time of the attack and still is a citizen of the United States and resident of the State of Washington. He is the Brother of Durrell Bennett.

704.     Plaintiff, Dempsey Bennett, brings an action individually and on behalf of the Estate of Durrell Bennett, as its Personal Representative in Pierce County, Washington under File No.:

18-4-01725-7.

705.     As a direct result of the EFP attack, and the resulting wrongful death of Durrell

Bennett, the Estate of Durrell Bennett is entitled to recover for any pain and suffering experienced

by Durrell Bennett between the time of the EFP attack and his death, and for the substantial

economic and earnings capacity loss.

706.     As a direct result of the EFP attack, and the resulting wrongful death of Durrell

Bennett, Plaintiffs, Dempsey Bennett, Doris Bennett, and Darnell Bennett have experienced

various solatium-related damages, including intentional infliction of severe emotional distress,

severe mental anguish, extreme emotional pain and suffering, loss of society, companionship,

comfort, advice and counsel, consortium, and substantial economic loss.

## ATTACK 51: APRIL 8, 2008 – BAGHDAD, IRAQ

### LLL.     The Rosenberg Family

707.     Major Mark Rosenberg was a citizen and national of the United States and a

member of the United States Army when he was killed in Iraq on April 8, 2008.

708.     On that date, Major Rosenberg was riding on a patrol in an M1114 HUMVEE

vehicle along Route Pluto just adjacent to Sadr City, Baghdad, Iraq, when a two array EFP

detonation consisting of multiple copper slugs, detonated, thus killing Major Rosenberg.

709.     The Army concluded that Special Groups in the Sadr City area of Baghdad were

responsible for the EFP attack which killed Major Rosenberg and that the Special Groups would

continue to target Coalition Forces with similar EFP attacks in the same area.

710.     The device used to kill Major Rosenberg was an Iranian-manufactured and -

designed EFP provided to Iranian-funded and -trained Special Groups in Iraq.

711.     Plaintiff, Julie Rosenberg, was at the time of Major Rosenberg's death and still is a

citizen of the United States and a resident of the State of New Mexico. She is the Widow of Major

Rosenberg.

712.     Plaintiff, J.R., a Minor, being represented by his legal guardian, Julie Rosenberg,

was at the time of Major Mark Rosenberg's death and still is a citizen of the United States and a resident of the State of New Mexico.  He is the Son of Major Mark Rosenberg.

713.    Plaintiff, M.R., a Minor, being represented by his legal guardian, Julie Rosenberg, was at the time of Major Mark Rosenberg's death and still is a citizen of the United States and a resident of the State of New Mexico.  He is the Son of Major Mark Rosenberg.

714.    Plaintiff, Julie Rosenberg, is the Personal Representative of Major Mark Rosenberg, in El Paso County, Colorado under Case Number: 2008PR665.

715.    As a direct result of the EFP attack, and the resulting wrongful death of Major Mark Rosenberg, the Estate of Major Mark Rosenberg is entitled to recover for any pain and suffering experienced by Mark Rosenberg between the time of the EFP attack and his death, and for the substantial economic and earnings capacity loss.

716.    As a direct result of the EFP attack, and the resulting death of Major Mark Rosenberg, Plaintiffs, Julie Rosenberg, J.R., a Minor, M.R., a Minor, have experienced various solatium-related damages, including intentional infliction of severe emotional distress, severe mental anguish, extreme emotional pain and suffering, a loss of society, companionship, comfort, advice and counsel, and substantial economic loss.

## ATTACK 52: APRIL 14, 2008 – BAGHDAD, IRAQ

### MMM.    The Joseph Richard, III Family

717.    Sergeant Joseph Richard, III was a citizen and national of the United States and a member of the United States Army when he was killed in Iraq on April 14, 2008.

718.    On that date, Sergeant Richard was riding in an RG-31 vehicle which was the third vehicle in a seven-vehicle convoy on a patrol in the "New Baghdad" area of Baghdad just south of Sadr City when a four-array copper-lined EFP detonation occurred, causing four major penetration points around one of the doors to the vehicle, thus killing Sergeant Richard and seriously injuring two additional Soldiers. The Army investigation concluded that one of the Special Groups likely perpetrated this attack in order to facilitate easier movement into Sadr City.

719. The device used to kill Sergeant Richard was an Iranian-manufactured and -designed EFP provided to Iranian-funded and -trained Special Groups in Iraq.

720. The Army concluded that the devices used to kill Sergeant Richard, III were Iranian-manufactured and -designed EFPs provided to Iranian-funded and -trained Special Groups in Iraq.

721. Plaintiff, Elaine (Lois) Richard, was at the time of Sergeant Joseph Richard, III's death and still is a citizen of the United States and a resident of the State of Louisiana. She is the Mother of Sergeant Joseph Richard, III.

722. Plaintiff, Joseph Richard, Jr., was at the time of Sergeant Joseph Richard, III's death and still is a citizen of the United States and a resident of the State of Louisiana. He is the Father of Sergeant Joseph Richard, III.

723. Plaintiff, Carmen Richard Billedeaux, was at the time of Sergeant Joseph Richard, III's death and still is a citizen of the United States and a resident of the State of Louisiana. She is the Sister of Sergeant Joseph Richard, III.

724. As a direct result of the EFP attack, and the resulting death of Sergeant Joseph Richard, III, Plaintiffs, Elaine (Lois) Richard, Joseph Richard, Jr., and Carmen Richard Billedeaux, have experienced various solatium-related damages, including intentional infliction of severe emotional distress, severe mental anguish, extreme emotional pain and suffering, a loss of society, companionship, comfort, advice and counsel, and substantial economic loss.

## ATTACK 53: APRIL 30, 2008 – BAGHDAD, IRAQ

### NNN. The Pearson Family

725. Captain Andrew R. Pearson was a citizen and national of the United States and a member of the United States Army when he was killed in Iraq on April 30, 2008.

726. On that date, Captain Pearson was riding in a vehicle on a patrol in the Baiyaa, Al Rashid District of Baghdad just adjacent to Sadr City when an EFP detonation occurred, thus killing Captain Pearson.

727.     The device used to kill Captain Pearson was an Iranian-manufactured and -designed EFP provided to Iranian-funded and -trained Special Groups in Iraq.

728.     The Army concluded that the devices used to kill Captain Pearson were Iranian-manufactured and -designed EFPs provided to Iranian-funded and -trained Special Groups in Iraq.

729.     Plaintiff, Jon Marie Pearson, was at the time of Captain Pearson's death and still is a citizen of the United States and a resident of the State of New York. She is the Widow of Captain Andrew R. Pearson.

730.     Plaintiff, Jon Marie Pearson, is the Personal Representative of Captain Andrew R. Pearson in Parish of Beauregard, Louisiana, under Number: P-20058-0131A.

731.     As a direct result of the EFP attack, and the resulting wrongful death of Captain Andrew R. Pearson, the Estate of Captain Andrew R. Pearson is entitled to recover for any pain and suffering experienced by Andrew Pearson between the time of the EFP attack and his death, and for the substantial economic and earnings capacity loss.

732.     As a direct result of the EFP attack, and the resulting death of Captain Andrew R. Pearson, Plaintiff, Jon Marie Pearson has experienced various solatium-related damages, including intentional infliction of severe emotional distress, severe mental anguish, extreme emotional pain and suffering, a loss of society, companionship, comfort, advice and counsel, and substantial economic loss.

## ATTACK 54: JUNE 1, 2008 – BAGHDAD, IRAQ

### OOO.     The Mixon Family

733.     Specialist Justin Mixon was a citizen and national of the United States and a member of the United States Army when he was killed in Iraq on June 1, 2008.

734.     On that date, Specialist Mixon was on a patrol riding in a Stryker Armored Combat Vehicle, which was the second vehicle in a 12-vehicle convoy traveling southbound on Route Pluto near the Al Jaza'Ir Police Station in the Adhamiyah district of Baghdad, when a dual array of between six to eight EFPs detonated from the left (driver's side) of the vehicle, thus causing a

massive explosion, thus causing the death of Mixon and very serious injuries to the other occupant of the vehicle.  Copper fragments were found by investigators all around the detonation scene and from the Stryker vehicle, another telltale indication of an EFP detonation.

735.    The devices used to kill Justin Mixon were Iranian-manufactured and -designed EFPs provided to Iranian-funded and -trained Special Groups in Iraq.

736.    Plaintiff, Tia Mixon, was at the time of Specialist Mixon's death and still is a citizen of the United States and a resident of the State of Mississippi. She is the Widow of Specialist Mixon.

737.    Plaintiff, T.R.M., a Minor represented by his legal guardian, Tia Mixon, is a citizen of the United States and a resident of the State of Mississippi. He is the son of Specialist Mixon.

738.    Plaintiff, Melinda Mixon, was at the time of Specialist Mixon's death and still is a citizen of the United States and a resident of the State of Mississippi.  She is the Mother of Justin Mixon.

739.    Plaintiff, Walter Mixon, was at the time of Specialist Mixon's death and still is a citizen of the United States and a resident of the State of Mississippi. He is the Father of Justin Mixon.

740.    Plaintiff, Kenneth Mixon, was at the time of Specialist Mixon's death and still is a citizen of the United States and a resident of the State of Louisiana. He is the Brother of Justin Mixon.

741.    Plaintiff, Kimberly Spillyards, was at the time of Specialist Mixon's death and still is a citizen of the United States and a resident of the State of Louisiana. She is the Sister of Justin Mixon.

742.    Plaintiff, Walter Mixon, brings an action individually and on behalf of the Estate of Justin Mixon, as its Personal Representative in Parish of Washington, Louisiana, under Probate Number: 16230-A.

743.    As a direct result of the EFP attack, and the resulting wrongful death of Justin

Mixon, the Estate of Justin Mixon is entitled to recover for any pain and suffering experienced by Justin Mixon between the time of the EFP attack and his death, and for the substantial economic loss caused by his death.

744.    As a direct result of the EFP attack, and the resulting wrongful death of Justin Mixon, Plaintiffs, Tia Mixon, T.R.M., a Minor, Walter Mixon, Melinda Mixon, Kenneth Mixon, and Kimberly Spillyards, have experienced various solatium-related damages, including intentional infliction of severe emotional distress, severe mental anguish, extreme emotional pain and suffering, loss of society, companionship, comfort, advice and counsel, consortium, and substantial economic loss.

## ATTACK 55: JUNE 25, 2008 - BAGHDAD, IRAQ

### PPP.    The Plocica Family

745.    Specialist Joshua Plocica was a citizen and national of the United States and a member of the United States Army when he was killed in Iraq on June 25, 2008.

746.    At that time, Specialist Plocica was in an armored M1151 HUMVEE in a convoy of vehicles consisting of two Mine Resistant Ambush Protected vehicles ("MRAPs"), four armored M1151 HUMVEE vehicles, and five "Rhino Runner" armored buses, when a dual array of six EFPs each detonated near his vehicle, causing a massive explosion that killed Plocica and seriously injured the three other occupants of the vehicle.

747.    The Army's investigative report for this attack concluded that it was most likely carried out by JAM and involved an array of EFPs which were Iranian-manufactured and -designed and which were provided to Iranian-funded and -trained Special Groups in Iraq.

748.    JAM was formed by Muqtada al Sadr in 2003 in response to the United States invasion of Iraq and had as its goal the expulsion of United States and Coalition Forces from Iraq and the establishment of an Iraqi Shiite Government.

749.    JAM was just another one of Iran's QF promoted, sponsored, financed, and trained for anti-American and terroristic activities in Iraq from 2004-2011.

750.    Plaintiff, Lisa Thompson, is a citizen of the United States and resident of the State of Tennessee. She is the Mother of Joshua Plocica.

751.    Plaintiff, Lowell "Keith" Thompson, is a citizen of the United States and resident of the State of Tennessee. He is the Step-Father of Joshua Plocica.

752.    Plaintiff, Brenna Corbin, is a citizen of the United States and resident of the State of Tennessee. She is the Sister of Joshua Plocica.

753.    Plaintiff, Lisa Thompson, brings an action individually and on behalf of the Estate of Joshua Plocica, as its Personal Representative in Montgomery County, Tennessee, at Clarksville Probate Division, under Case No. MC CM CV PB 18-0000079.

754.    As a direct result of the EFP attack, and the resulting wrongful death of Joshua Plocica, the Estate of Joshua Plocica is entitled to recover for any pain and suffering experienced by Joshua Plocica between the time of the EFP attack and his death, and for the substantial economic loss caused by his death.

755.    As a direct result of the EFP attack, and the resulting wrongful death of Joshua Plocica, Plaintiffs, Lisa Thompson, Lowell "Keith" Thompson, and Brenna Corbin have experienced various solatium-related damages, including intentional infliction of severe emotional distress, severe mental anguish, extreme emotional pain and suffering, loss of society, companionship, comfort, advice and counsel, consortium, and substantial economic loss.

## ATTACK 56: AUGUST 4, 2008 - BAGHDAD, IRAQ

### QQQ.    The Blickenstaff Family

756.    Specialist John Blickenstaff was a citizen and national of the United States and a member of the United States Army when he was seriously injured in Iraq on August 4, 2008. Blickenstaff is resident of the State of Indiana.

757.    On August 4, 2008, Specialist Blickenstaff was operating as a Gunner and a Military Policeman and was riding in an M1151 HUMVEE vehicle as the lead vehicle of a four HUMVEE convoy when a dual array of eight EFPs  detonated next to his HUMVEE, thus causing

a massive explosion, thus causing very serious physical and emotional injuries to Blickenstaff and the death of two other occupants of the vehicle.

758. The Army concluded that the devices used to injure John Blickenstaff were Iranian-manufactured and -designed EFPs provided to Iranian-funded and -trained Special Groups in Iraq.

759. The Army further concluded that this attack was most likely perpetrated by the Baghdad al-Jadida JAM cell, part of The Mahdi Army.

760. JAM was formed by Muqtada al Sadr in 2003 in response to the United States invasion of Iraq and had as its goal the expulsion of United States and Coalition Forces from Iraq and the establishment of an Iraqi Shiite Government.

761. JAM was just another one of Iran's Special Groups its QF promoted, sponsored, financed, and trained for anti-American and terroristic activities in Iraq from 2004-2011.

762. As a result of the EFP attack, John Blickenstaff sustained massive injuries to both of his legs, including fractures of his tibia and fibula bones in his right leg, a transection of his peroneal artery in his right leg, extensive soft tissue injuries to his right leg, extensive wounds in and to the right leg, a fractured left tibia bone, a major injury to his right calf area which required significant surgery, shrapnel blown into and embedded inside various portions of his body, a major injury to his testicles which required an orchiotomy procedure, which is in essence a removal of the testicles, an amputated right second toe, developed traumatically-caused "hammer toes", a migraine headache syndrome, a brachial-plexus nerve injury, post-traumatic stress disorder ("PTSD"), panic attacks, anxiety disorder, cognitive difficulties, sleeping disorder, and depression.

763. As a result of the EFP attack, and the physical and emotional injuries he suffered as a direct result therefrom, John Blickenstaff has experienced severe physical and emotional pain and suffering in the past and will experience same into the indeterminable future; has incurred medical bills for medical and rehabilitation services rendered and will incur same into the indeterminable future; has incurred an overwhelming loss of income and earnings capacity and will experience same into the indeterminable future; has experienced permanent injuries to his person and psyche;

and has experienced severe mental anguish, anxiety and depression and will experience same into the indeterminable future.

764.    Plaintiff, Misty Blickenstaff, was at the time of John Blickenstaff's attack and still is a citizen of the United States and a resident of the State of Indiana. She is the Wife of John Blickenstaff.

765.    Plaintiff, M.B., a Minor, represented by her legal guardian, Misty Blickenstaff, was at the time of John Blickenstaff's attack and still is a citizen of the United States and a resident of the State of Indiana. She is the Daughter of John Blickenstaff.

766.    Plaintiff, C.B., a Minor, represented by her legal guardian, Misty Blickenstaff, was at the time of John Blickenstaff's attack and still is a citizen of the United States and a resident of the State of Indiana. She is the Daughter of John Blickenstaff.

767.    Plaintiff, Pam Jones, was at the time of John Blickenstaff's attack and still is a citizen of the United States and a resident of the State of Indiana. She is the Mother of John Blickenstaff.

768.    Plaintiff, Jared Blickenstaff, was at the time of John Blickenstaff's attack and still is a citizen of the United States and a resident of the State of Indiana. He is the Brother of John Blickenstaff.

769.    Plaintiff, Adrianne Blickenstaff, was at the time of John Blickenstaff's attack and still is a citizen of the United States and a resident of the State of Indiana. She is the Sister of John Blickenstaff.

770.    Plaintiff, Trista Carter, was at the time of John Blickenstaff's attack and still is a citizen of the United States and a resident of the State of Indiana. She is the Sister of John Blickenstaff.

771.    As a result of the EFP attack, and the physical and emotional injuries suffered by John Blickenstaff as a direct result therefrom, Plaintiffs, Misty Blickenstaff, M.B., a Minor, C.B., a Minor, Pam Jones, Jared Blickenstaff, Adrianne Blickenstaff and Trista Carter have suffered and

experienced intentional infliction of severe emotional distress and loss of consortium-related damages.

**RRR.    The Henry Family**

772.    Sergeant Gary Henry was a citizen and national of the United States and a member of the United States Army when he was killed in Iraq on August 4, 2008.

773.    On that date, Sergeant Henry was acting as a Military Policeman and was riding in an M1151 HUMVEE vehicle as the lead vehicle of a four HUMVEE convoy when a dual array of eight EFPs detonated next to his HUMVEE, thus causing a massive explosion that killed Henry and another vehicle occupant, and seriously injured another occupant.

774.    The Army concluded that the devices used to kill Gary Henry were Iranian-manufactured and -designed EFPs provided to Iranian-funded and -trained Special Groups in Iraq.

775.    The Army further concluded that this attack was most likely perpetrated by the Baghdad al-Jadida JAM cell, part of The Mahdi Army.

776.     JAM was formed by Muqtada al Sadr in 2003 in response to the United States invasion of Iraq and had as its goal the expulsion of United States and Coalition Forces from Iraq and the establishment of an Iraqi Shiite Government.

777.    JAM was just another one of Iran's Special Groups its QF promoted, sponsored, financed, and trained for anti-American and terroristic activities in Iraq from 2004-2011.

778.    Plaintiff, Gary L. Henry, was at the time of Gary Henry's death and still is a citizen of the United States and a resident of the State of Indiana. He is the Father of Gary Henry.

779.    As a direct result of the EFP attack, and the resulting wrongful death of Gary Henry, Plaintiff, Gary L. Henry, has experienced various solatium-related damages, including intentional infliction of severe emotional distress, severe mental anguish, extreme emotional pain and suffering, loss of society, companionship, comfort, advice and counsel, consortium, and substantial economic loss.

**ATTACK 57: AUGUST 9, 2008 – SADR CITY, IRAQ**

**SSS.** **The Ulloa Family**

780.    Sergeant Jose E. Ulloa was a citizen and national of the United States and a member of the United States Army when he was killed in Iraq on August 9, 2008.

781.    On that date, Sergeant Ulloa was on a patrol riding in a Stryker Armored Combat Vehicle in a convoy of two Stryker vehicles and six low-boy trailers near the Al Jazair Police Station in Baghdad when an array of between six to eight EFPs detonated near his vehicle, causing a massive explosion that killed Sergeant Ulloa and seriously injured the other occupant of the vehicle.

782.    The devices used to kill Sergeant Ulloa were Iranian-manufactured and -designed EFPs provided to Iranian-funded and -trained Special Groups in Iraq.

783.    Plaintiff, Melanie Atzmann, was at the time of Sergeant Ulloa's death and still is a citizen of the United States and a resident of the State of New York. She is the Widow of Sergeant Jose E. Ulloa.

784.    Plaintiff, S.U., a Minor represented by his legal guardian, Melanie Atzmann, is a citizen of the United States and a resident of the State of New York. He is the Son of Sergeant Jose E. Ulloa.

785.    Plaintiff, Francisca Marmol, was at the time of Sergeant Ulloa's death and still is a citizen of the United States and a resident of the State of New York.  She is the Sister who was also the legal guardian of Sergeant Jose E. Ulloa.

786.    Plaintiff, Jose Ulloa, was at the time of Sergeant Ulloa's death and still is a citizen of the United States and a resident of the State of New York. He is the Father of Sergeant Jose E. Ulloa.

787.    Plaintiff, Ruberterna Ulloa, was at the time of Sergeant Ulloa's death and still is a citizen of the United States and a resident of the State of New York. She is the Sister of Sergeant Jose E. Ulloa.

788.    Plaintiff, Stephanie Marmol, was at the time of Sergeant Ulloa's death and still is a

citizen of the United States and a resident of the State of New York. She is the Sister of Sergeant Jose E. Ulloa.

789.    Plaintiff, the Public Administrator for the County of New York, brings an action on behalf of the Estate of Sergeant Jose E. Ulloa, as its Public Administrator in Matter No. 2009-06131A in the County of New York, New York.

790.    As a direct result of the EFP attack, and the resulting wrongful death of Jose E. Ulloa, the Estate of Jose Ulloa is entitled to recover for any pain and suffering experienced by Jose Ulloa between the time of the EFP attack and his death, and for the substantial economic loss caused by his death.

791.    As a direct result of the EFP attack, and the resulting wrongful death of Sergeant Jose E. Ulloa, Plaintiffs, Melanie Atzmann, S.U., a Minor, Francisca Marmol, Jose Ulloa, Ruberterna Ulloa, and Stephanie Marmol have experienced various solatium-related damages, including intentional infliction of severe emotional distress, severe mental anguish, extreme emotional pain and suffering, loss of society, companionship, comfort, advice and counsel, consortium, and substantial economic loss.

## ATTACK 58: FEBRUARY 15, 2009 - AS SALAM, IRAQ

### TTT.    The Diamond Family

792.    Staff Sergeant Sean Diamond was a citizen and national of the United States and a member of the United States Army when he was killed in Iraq on February 15, 2009.

793.    On that date, Staff Sergeant Diamond was on a patrol riding northbound on Route Quebec in a RG-31 Nyala Mine Protected Vehicle with another such vehicle southwest of Amarah, Iraq, when an array of three EFPs detonated nearby his vehicle, causing a massive explosion, thereby causing his death and very serious personal injuries to two other occupants.

794.    The Army concluded that the devices used to kill Sean Diamond were Iranian-manufactured and designed EFPs provided to Iranian-funded and -trained Special Groups in Iraq.

795.    Plaintiff, Loramay "Lora" Diamond, was at the time of Staff Sergeant Diamond's

death and still is a citizen of the United States and a resident of the State of Washington. She is the Widow of Sean Diamond.

796.    Plaintiff, Taylor Diamond, was at the time of Staff Sergeant Diamond's death and still is a citizen of the United States and a resident of the State of Washington. She is the Daughter of Sean Diamond.

797.    Plaintiff, Madison Diamond, was at the time of Staff Sergeant Diamond's death and still is a citizen of the United States and a resident of the State of Washington. She is the Daughter of Sean Diamond.

798.    Plaintiff, Sean Diamond, was at the time of Staff Sergeant Diamond's death and still is a citizen of the United States and a resident of the State of Washington. He is the son of Sean Diamond.

799.    Plaintiff, A.N.D., a Minor, represented by her legal guardian, Loramay "Lora" Diamond, was at the time of Staff Sergeant Diamond's death and still is a citizen of the United States and a resident of the State of Washington. She is the Daughter of Sean Diamond.

800.    Plaintiff, Sally Diamond Wiley, was at the time of Staff Sergeant Diamond's death and still is a citizen of the United States and a resident of the State of Nevada. She is the Mother of Sean Diamond.

801.    Plaintiff, James "Michael" Wiley, was at the time of Staff Sergeant Diamond's death and still is a citizen of the United States and a resident of the State of Nevada. He is the Step-Father of Sean Diamond.

802.    Plaintiff, Jason Diamond, was at the time of Staff Sergeant Diamond's death and still is a citizen of the United States and a resident of the State of California. He is the Brother of Sean Diamond.

803.    Plaintiff, Michael Diamond, was at the time of Staff Sergeant Diamond's death and still is a citizen of the United States and a resident of the State of California. He is the Brother of Sean Diamond.

804.    Plaintiff, Loramay "Lora" Diamond, brings an action individually and on behalf of the Estate of Sean Diamond, as its Personal Representative in Pierce County, Washington, under Case Number: 18-4-01345-6.

805.    As a direct result of the EFP attack, and the resulting wrongful death of Sean Diamond, the Estate of Sean Diamond is entitled to recover for any pain and suffering experienced by Sean Diamond between the time of the EFP attack and his death, and for the substantial economic loss caused by his death.

806.    As a direct result of the EFP attack, and the resulting wrongful death of Sean Diamond, Plaintiff, Loramay "Lora" Diamond, Taylor Diamond, Madison Diamond, A.N.D., a Minor, Sean Diamond, Sally Diamond Wiley, James "Michael" Wiley, Jason Diamond, and Michael Diamond experienced various solatium-related damages, including intentional infliction of severe emotional distress, severe mental anguish, extreme emotional pain and suffering, loss of society, companionship, comfort, advice and counsel, consortium, and substantial economic loss.

## ATTACK 59: APRIL 12, 2009 - BAYLA, IRAQ

### UUU.    The Anaya Family

807.    Corporal Michael Anaya was a citizen and national of the United States and a member of the United States Army when he was killed in Iraq on April 12, 2009.

808.    On that date, Corporal Anaya was riding in a Mine Resistant Ambush Protected ("MRAP") RG-31 vehicle as the fourth vehicle in a 16-vehicle logistics convoy near Forward Operating Base ("FOB") Summerall in Sharqat, Iraq, when an EFP detonation occurred, thus causing a massive explosion, thus causing Corporal Anaya's death.

809.    The Combined Explosive Exploitation Cell ("CEXC") discovered copper remnants at the detonation scene and noted "copper-shaped charged, steel-lined IED 12 APR09."  The CEXC concluded that "this IED was an EFP…"

810.    The device used to kill Michael Anaya was an Iranian-manufactured and -designed EFP provided to Iranian-funded and -trained Special Groups in Iraq.

117

811.     Plaintiff, Cheryl Anaya, was at the time of Corporal Anaya's death and still is a citizen of the United States and a resident of the State of Florida. She is the Mother of Michael Anaya.

812.     Plaintiff, Trista Moffett, was at the time of Corporal Anaya's death and still is a citizen of the United States and a resident of the State of Florida. She is the Sister of Michael Anaya.

813.     Plaintiff, Carmelo Anaya, Jr. was at the time of Corporal Anaya's death and still is a citizen of the United States and a resident of the State of Florida. He is the Brother of Michael Anaya.

814.     Plaintiff, Trista Moffett, brings an action individually and on behalf of the Estate of Michael Anaya, as its Personal Representative in Okaloosa County, Florida, under Probate Case No.: 2018 CP 000460.

815.     As a direct result of the EFP attack, and the resulting wrongful death of Michael Anaya, the Estate of Michael Anaya is entitled to recover for any pain and suffering experienced by Michael Anaya between the time of the EFP attack and his death, and for the substantial economic loss caused by his death.

816.     As a direct result of the EFP attack, and the resulting wrongful death of Michael Anaya, Plaintiffs, Cheryl Anaya, Trista Moffett, and Carmelo Anaya, Jr. have experienced various solatium-related damages, including intentional infliction of severe emotional distress, severe mental anguish, extreme emotional pain and suffering, loss of society, companionship, comfort, advice and counsel, consortium, and substantial economic loss.

## ATTACK 60: JULY 16, 2009 – BASRA, IRAQ

### VVV.     The Wilcox Family

817.     Specialist Carlos Wilcox was a citizen and national of the United States and a member of the United States Army when he was killed in Iraq on July 16, 2009.

818.     On that date, Specialist Wilcox was operating on a military base near Basrah, Iraq,

when the vehicle in which he was then riding came under rocket fire that caused a massive explosion, which killed him.

819.    The devices used to kill Carlos Wilcox were Iranian-sponsored rockets provided to Iranian-funded and -trained Special Groups in Iraq.

820.    Plaintiff, Charlene Wilcox, was at the time of Specialist Wilcox's death and still is a citizen of the United States and a resident of the State of Minnesota. She is the Mother of Carlos Wilcox.

821.    Plaintiff, Bianca Wilcox, was at the time of Specialist Wilcox's death and still is a citizen of the United States and a resident of the State of Minnesota. She is the Sister of Carlos Wilcox.

822.    Plaintiff, Ona Wilcox, was at the time of Specialist Wilcox's death and still is a citizen of the United States and a resident of the State of Minnesota. She is the Sister of Carlos Wilcox.

823.    Plaintiff, Charles Wilcox III, was at the time of Specialist Wilcox's death and still is a citizen of the United States and a resident of the State of Minnesota. He is the Brother of Carlos Wilcox.

824.    Plaintiff, Charlene Wilcox, brings an action individually and on behalf of the Estate of Carlos Wilcox, as its Personal Representative in Washington County, Minnesota, under Court File No: 82-PR-18-999.

825.    As a direct result of the rocket attack, and the resulting wrongful death of Carlos Wilcox, the Estate of Carolos Wilcox is entitled to recover for any pain and suffering experienced by Carlos Wilcox between the time of the EFP attack and his death, and for the substantial economic loss caused by his death.

826.    As a direct result of the rocket attack, and the resulting wrongful death of Carlos Wilcox, Plaintiffs, Charlene Wilcox, Bianca Wilcox, Ona Wilcox, and Charles Wilcox III have experienced various solatium-related damages, including intentional infliction of severe emotional

distress, severe mental anguish, extreme emotional pain and suffering, loss of society, companionship, comfort, advice and counsel, consortium, and substantial economic loss.

## ATTACK 61: AUGUST 1, 2010 – NAJAF, IRAQ

### WWW.    The Craven Family

827.    Specialist Joshua Craven was a citizen and national of the United States and a member of the United States Army when he was wounded in Iraq on August 1, 2010. Craven is a resident of the State of North Carolina.

828.    On that date, Specialist Craven was on a patrol riding in an M1114 HUMVEE vehicle near Najaf, Iraq, when a series of EFPs detonated near the vehicle in which he was riding, causing his right leg to be blown off and other very serious physical and emotional injuries.

829.    Medical procedures have removed several pieces of copper from wounds on Craven's body subsequent to the attack, a telltale sign of an EFP detonation.

830.    The devices used to injure Specialist Craven were Iranian-manufactured and -designed EFPs provided to Iranian-funded and -trained Special Groups in Iraq.

831.    As a result of the EFP attack, Specialist Craven lost his left leg above the knee, suffered an open fracture of the right femur and a mild traumatic brain injury ("TBI"); he further suffered injury of the sciatic nerve, injury of the femoral nerve, and chronic pain due to trauma.

832.    As a result of the EFP attack, and the physical and emotional injuries he suffered as a direct result therefrom, Specialist Craven has experienced severe physical and emotional pain and suffering in the past and will experience same into the indeterminable future; has incurred medical bills for medical and rehabilitation services rendered and will incur same into the indeterminable future; has incurred an overwhelming loss of income and earnings capacity and will experience same into the indeterminable future; has experienced permanent injuries to his person and psyche; and has experienced severe mental anguish, anxiety and depression and will experience same into the indeterminable future.

833.    Plaintiff, Holly Craven, was at the time of Specialist Craven's attack and still is a

citizen of the United States and is a resident of the State of North Carolina. She is the Wife of Joshua Craven.

834.    As a result of the EFP attack, and the physical and emotional injuries suffered by Specialist Craven as a direct result therefrom, Plaintiff Holly Craven has experienced various solatium-related damages, including intentional infliction of severe emotional distress, severe mental anguish, extreme emotional pain and suffering, and substantial economic loss.

## ATTACK 62: APRIL 22, 2011 – NUMANIYAH, IRAQ

### XXX.    The Vazquez Family

835.    First Lieutenant Omar Vazquez was a citizen and national of the United States and a member of the United States Army when he was killed in Iraq on April 22, 2011.

836.    On that date, First Lieutenant Vazquez was riding in a military patrol on Route Bismarck west of Kut, Iraq, which is approximately 100 miles southeast of Baghdad, when an array of at least five EFPs detonated near his vehicle, thus causing a massive explosion that killed him and another occupant of the vehicle.

837.    The Army Explosive Ordinance Disposal ("EOD") team investigation concluded that the attack was a multiple copper-lined EFP detonation.

838.    The Army concluded that the devices used to kill Omar Vazquez were Iranian-manufactured and -designed EFPs provided to Iranian-funded and -trained Special Groups in Iraq.

839.    The Special Group Kata'ib Hezbollah ("KH") claimed responsibility for the attack which killed Vazquez by posting a video of it online and identifying the two killed victims.  KH is an Iraqi paramilitary group founded, funded and sponsored primarily by Iran, the IRGC, and the QF, but which also receives funding and materiel support from Hezbollah, which was founded by Iran and which is supported with money and materiel by Iran.

840.    Plaintiff, Maria Vazquez, was at the time of First Lieutenant Vazquez's death and still is a citizen of the United States and is a resident of the State of New Jersey. She is the Mother of Omar Vazquez.

841.     Plaintiff, Pablo Vazquez, was at the time of First Lieutenant Vazquez's death and still is a citizen of Puerto Rico and domiciled in Sabana Hoyos. He is the Father of Omar Vazquez.

842.     Plaintiff, Pablo Vazquez, Jr., was at the time of First Lieutenant Vazquez's death and still is a citizen of Puerto Rico and domiciled in Orocovis. He is the Step-Brother of Omar Vazquez.

843.     Plaintiff, Marisel Vazquez, was at the time of First Lieutenant Vazquez's death and still is a resident of the State of New Jersey. She is the Step-Sister of Omar Vazquez.

844.     Plaintiff, Javier Vazquez, was at the time of First Lieutenant Vazquez's death and still is a citizen of Puerto Rico and domiciled in Orocovis. He is the Brother of Omar Vazquez.

845.     Plaintiff, Maria Vazquez, brings an action individually and on behalf of the Estate of Omar Vazquez, as its Personal Representative in Mercer County, New Jersey, under Docket number: 11-01029.

846.     As a direct result of the EFP attack, and the resulting wrongful death of Omar Vazquez, the Estate of Omar Vazquez is entitled to recover for any pain and suffering experienced by Omar Vazquez between the time of the EFP attack and his death, and for the substantial economic loss caused by his death.

847.     As a direct result of the EFP attack, and the resulting wrongful death of Omar Vazquez, Plaintiffs, Maria Vazquez, Pablo Vazquez, Pablo Vazquez, Jr., Marisel Vazquez, and Javier Vazquez have experienced various solatium-related damages, including intentional infliction of severe emotional distress, severe mental anguish, extreme emotional pain and suffering, loss of society, companionship, comfort, advice and counsel, consortium, and substantial economic loss.

## ATTACK 63: JULY 7, 2011 - BAGHDAD, IRAQ

### YYY.     The Rzepa Family

848.     Staff Sergeant Jason Rzepa was a citizen and national of the United States and a member of the United States Army when he was seriously injured in Iraq on July 7, 2011.  Rzepa is a resident of the State of Idaho.

849.    On that date, Staff Sergeant Rzepa, was serving on a "PSD" ("Personal Security Detail") acting as a Gunner and riding in a HUMVEE vehicle in a three-vehicle convoy approaching the entrance to Camp Victory, when an array of EFPs detonated near the HUMVEE in which he was riding, causing a massive explosion that caused very serious physical and emotional injuries to Rzepa, and the death of two other vehicle occupants.

850.    The devices used to injure Jason Rzepa were Iranian-manufactured and -designed EFPs provided to Iranian-funded and -trained Special Groups in Iraq.

851.    As a result of the EFP attack, Jason Rzepa had both of his legs amputated below the knees, experienced multiple surgeries to debride his wounds and to take out shrapnel fragments lodged throughout his body, sustained a traumatic brain injury ("TBI"), experienced "phantom pain" where his legs should have been, and was diagnosed with post-traumatic stress disorder ("PTSD"), anxiety disorder, and depression.

852.    As a result of the EFP attack, and the physical and emotional injuries he suffered as a direct result therefrom, Jason Rzepa has experienced severe physical and emotional pain and suffering in the past and will experience same into the indeterminable future; has incurred medical bills for medical and rehabilitation services rendered and will incur same into the indeterminable future; has incurred an overwhelming loss of income and earnings capacity and will experience same into the indeterminable future; has experienced permanent injuries to his person and psyche; and has experienced severe mental anguish, anxiety and depression and will experience same into the indeterminable future.

853.    Plaintiff, Cassandra Rzepa, was at the time of Staff Sergeant Jason Rzepa's attack and still is a citizen of the United States and a resident of the State of Idaho. She is the ex-Wife of Jason Rzepa.

854.    Plaintiff, C.R., a Minor, represented by his legal guardian, Cassandra Rzepa, was at the time of Staff Sergeant Jason Rzepa's attack and still is a citizen of the United States and a resident of the State of Idaho. He is the Son of Jason Rzepa.

855.    Plaintiff, K.R., a Minor, represented by his legal guardian, Adrian Davis, was at the time of Staff Sergeant Jason Rzepa's attack and still is a citizen of the United States and a resident of the State of Idaho.  He is the Son of Jason Rzepa.

856.    Plaintiff, Ann Rzepa, was at the time of Staff Sergeant Jason Rzepa's attack and still is a citizen of the United States and a resident of the State of Idaho. She is the Mother of Jason Rzepa.

857.    Plaintiff, David "Mick" Shaidell, was at the time of Staff Sergeant Jason Rzepa's attack and still is a citizen of the United States and a resident of the State of Idaho. He is the Brother of Jason Rzepa.

858.     As a result of the EFP attack, and the physical and emotional injuries suffered by Jason Rzepa as a direct result therefrom, Plaintiffs, Cassandra Rzepa, C.R., a Minor, K.R., a Minor, Ann Rzepa and David "Mick" Shaidell have experienced various solatium-related damages, including intentional infliction of severe emotional distress, severe mental anguish, extreme emotional pain and suffering, loss of society, companionship, comfort, advice and counsel, consortium, and substantial economic loss.

**ZZZ.      The Beyers Family**

859.    Sergeant Nathan Beyers was a citizen and national of the United States and a member of the United States Army when he was killed in Iraq on July 7, 2011.

860.    On that date, Sergeant Beyers was serving on a "PSD" ("Personal Security Detail") and riding in a HUMVEE vehicle in a three-vehicle convoy approaching the entrance to Camp Victory, when an array of EFPs detonated near the HUMVEE in which he was riding, thus causing a massive explosion, thus causing his death, the death of another occupant, and very serious physical injuries to a third occupant.

861.    The devices used to kill Nathan Beyers were Iranian-manufactured EFPs provided to Iranian-funded and -trained Special Groups in Iraq.

862.    Plaintiff, Vanessa Beyers, was at the time of Sergeant Nathan Beyers' death and

still is a citizen of the United States and a resident of the State of Washington. She is the Widow of Nathan Beyers.

863.    Plaintiff, E.B., a Minor, represented by her legal guardian, Vanessa Beyers, was at the time of Sergeant Nathan Beyers' death and still is a citizen of the United States and a resident of the State of Washington. She is the Daughter of Nathan Beyers.

864.    Plaintiff, Tim Beyers, was at the time of Sergeant Nathan Beyers' death and still is a citizen of the United States and a resident of the State of Colorado. He is the Father of Nathan Beyers.

865.    Plaintiff, Sonja Beyers, was at the time of Sergeant Nathan Beyers' death and still is a citizen of the United States and a resident of the State of Colorado. She is the Step-Mother of Nathan Beyers.

866.    Plaintiff, Tyler Beyers, was at the time of Sergeant Nathan Beyers' death and still is a citizen of the United States and a resident of the State of Colorado. He is the Brother of Nathan Beyers.

867.    Plaintiff, Vanessa Beyers, brings an action individually and on behalf of the Estate of Nathan Beyers, as its Personal Representative in Spokane County, Washington, under Case No.: 18400508-8.

868.    As a direct result of the EFP attack, and the resulting wrongful death of Nathan Beyers, the Estate of Nathan Beyers is entitled to recover for any pain and suffering experienced by Nathan Beyers between the time of the EFP attack and his death, and for the substantial economic loss caused by his death.

869.    As a direct result of the EFP attack, and the resulting wrongful death of Nathan Beyers, Plaintiffs, Vanessa Beyers, E.B., a Minor, Tim Beyers, Sonja Beyers, and Tyler Beyers have experienced various solatium-related damages, including intentional infliction of severe emotional distress, severe mental anguish, extreme emotional pain and suffering, loss of society, companionship, comfort, advice and counsel, consortium, and substantial economic loss.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**AGAINST DEFENDANT ON BEHALF OF EACH PLAINTIFF IDENTIFIED HEREIN WHO SURVIVED AN ACT OF INTERNATIONAL TERRORISM FOR DEFENDANT'S MATERIAL SUPPORT TO AND PARTICIPATION IN ACTS OF EXTRAJUDICIAL KILLING, TORTURE AND HOSTAGE TAKING THAT RESULTED IN PERSONAL INJURY UNDER 28 U.S.C. §1605A(c)**

870.    Plaintiffs repeat and re-allege each and every allegation of the foregoing paragraphs as if fully set forth herein.

871.    Plaintiffs identified in the foregoing paragraphs were grievously injured by Defendant's provision of material support (within the meaning of §1605A(h)(3)) to terror operatives ("Special Groups") in Iraq who engaged in extrajudicial killing and who injured Plaintiffs.

872.    As a direct and proximate result of the willful, wrongful, and intentional acts of Defendant and its agents, Plaintiffs identified in the foregoing paragraphs were injured and endured severe physical injuries, extreme mental anguish, pain and suffering, loss of solatium, and economic losses.

873.    Defendant is therefore liable for the full amount of Plaintiffs' compensatory damages, including, but not limited to, severe physical injuries, extreme mental anguish, pain and suffering, loss of solatium, and any economic losses determined by the trier of fact.

874.    The conduct of Defendant was criminal, outrageous, extreme, wanton, willful, malicious, and a threat to the public warranting an award of punitive damages against Defendant pursuant to 28 U.S.C. §1605A(c).

### SECOND CLAIM FOR RELIEF
**AGAINST DEFENDANT ON BEHALF OF THE ESTATES OF PLAINTIFFS IDENTIFIED HEREIN FOR DEFENDANT'S MATERIAL SUPPORT TO AND PARTICIPATION IN ACTS OF EXTRAJUDICIAL KILLING, TORTURE AND HOSTAGE-TAKING THAT RESULTED IN WRONGFUL DEATH UNDER 28 U.S.C. §1605A(c)**

875.    Plaintiffs repeat and re-allege each and every allegation of the foregoing

paragraphs as if fully set forth herein.

876.    The Estates of Decedents listed in the foregoing paragraphs assert claims on behalf of the Decedents who were killed by Defendant's provision of material support (within the meaning of §1605A(h)(3)), to terror operatives ("Special Groups") in Iraq who engaged in the acts of extrajudicial killing that caused the decedents' deaths.

877.    As a direct and proximate result of the willful, wrongful, and intentional acts of Defendant and its agents, the Decedents listed in the foregoing paragraphs endured physical injury, extreme mental anguish, and pain and suffering preceding their deaths.

878.    Defendant is therefore liable for the full amount of the Decedent's Estates' compensatory damages, including, but not limited to, physical injuries, extreme mental anguish, pain and suffering and any pecuniary loss (or loss of income to the Estates).

879.    Defendant's conduct was criminal, outrageous, extreme, wanton, willful, malicious, and constitutes a threat to the public warranting an award of punitive damages against Defendant pursuant to 28 U.S.C. §1605A(c).

## THIRD CLAIM FOR RELIEF
**AGAINST DEFENDANT ON BEHALF OF THE FAMILY MEMBERS OF PLAINTIFFS AND ESTATES IDENTIFIED HEREIN INJURED OR KILLED AS A RESULT OF DEFENDANT'S MATERIAL SUPPORT TO AND PARTICIPATION IN ACTS OF EXTRAJUDICIAL KILLING, TORTURE AND HOSTAGE TAKING FOR LOSS OF SOLATIUM AND INTENTIONAL INFLICTION OF SEVERE EMOTIONAL DISTRESS UNDER 28 U.S.C. § 1605A(c)**

880.    Plaintiffs repeat and re-allege each and every allegation of the foregoing paragraphs as if fully set forth herein.

881.    Defendant's acts in providing material support for acts of extrajudicial killing, torture, and hostage-taking were intended to inflict severe emotional distress on Plaintiffs.

882.    As a result of Defendant's acts, the families of individuals identified in the foregoing paragraphs as injured or killed as a result of Defendant's acts in providing material support for acts of extrajudicial killing, torture, and hostage-taking have suffered severe emotional distress, extreme mental anguish, loss of sleep, loss of appetite, and other severe

physical manifestations, as well as loss of solatium and other harms to be set forth to the trier of fact.

883.    Defendant's conduct was criminal, outrageous, extreme, wanton, willful, malicious, and constitutes a threat to the public warranting an award of punitive damages against Defendant pursuant to 28 U.S.C. §1605A(c).

## FOURTH CLAIM FOR RELIEF

## PREJUDGMENT INTEREST (ALL PLAINTIFFS)

884.    Plaintiffs repeat and re-allege each and every allegation of the foregoing paragraphs as if fully set forth herein.

885.    As described above, the Government of Iran's support for Hezbollah and the Special Groups in Iraq, which directly injured and/or killed Plaintiffs, warrant an award of prejudgment interest from the date of the various Attacks to the date of entry of Judgment.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs demand:

(a)    Judgment for all Plaintiffs against Defendant, the Islamic Republic of Iran, for compensatory damages, including, but not limited to, physical injury, extreme mental anguish, pain and suffering, economic losses, and loss of solatium, in amounts to be determined at trial;

(b)    Judgment for Decedents' Estates against Defendant, the Islamic Republic of Iran, for compensatory damages for wrongful death, including, but not limited to, physical injury, extreme mental anguish, pain and suffering before death, economic losses, and any pecuniary loss (or loss of income to the Estates) in amounts to be determined at trial;

(c)    Judgment for all Plaintiffs against Defendant, the Islamic Republic of Iran, for punitive damages in an amount to be determined at trial which is consistent with District Court for the District of Columbia practice;

(d)     Plaintiffs' costs and expenses;

(e)     Plaintiffs' attorney's fees; and

(f)     Such other and further relief as the Court finds just and equitable.


Dated: November 20, 2019

> Respectfully submitted,
>
> THE DRISCOLL FIRM, P.C.
>
> By:   /s/ John J. Driscoll
> JOHN J. DRISCOLL, #MO0003
> PAUL W. JOHNSON, #34554 (MO)
> CHRISTOPHER J. QUINN #41883 (MO)
> THE DRISCOLL FIRM P.C.
> 211 N. Broadway, 40th Floor
> St. Louis, Missouri 63102
> 314-932-3232 telephone
> 314-932-3233 facsimile
> john@thedriscollfirm.com
> paul@thedriscollfirm.com
> chris@thedriscollfirm.com
>
> *Attorneys for Plaintiffs*