UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ALL PLAINTIFFS REPRESENTED BY JOHN DRISCOLL,<br><br>Plaintiffs,<br><br>v.<br><br>ISLAMIC REPUBLIC OF IRAN,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>) No. 1:20-cv-00622-EGS-ZMF<br>)<br>)<br>)<br>) |

**PLAINTIFFS' SUPPLEMENTAL BRIEFING IN RESPONSE TO THE COURT'S ORDER OF MARCH 28, 2023**

All Plaintiffs Represented by John Driscoll, by and through their undersigned attorneys, respectfully submit the following in response to the Court's Order of March 28, 2023:

**I.    "EXTRAJUDICIAL KILLING"**

Plaintiffs allege in this lawsuit that the deaths and serious personal injuries sustained by these U.S. Soldiers were caused by "extrajudicial killing…or the provision of material support or resources for such an act." 28 U.S.C. § 1605A(a)(1).

An "extrajudicial killing" is defined by cross-reference to Section 3 of the Torture Victim Protection Act ("TVPA") as a "deliberated killing not authorized by a previous judgment pronounced by a regularly constituted court." *Neiberger v. Islamic Republic of Iran,* 16-cv-2193-EGS-ZMF, 2022 WL 17370239, at *2-4 (Sept. 8, 2022), citing *Fraenkel v. Islamic Republic of Iran*, 892 F.3d 348, 352 (D.C. Cir. 2018); 28 U.S.C. § 1605A(h)(7), (citing Pub. L. No. 102-256, § 3(a), 106 Stat. 73, 73 (1992)). "A 'deliberated' killing is simply one undertaken with careful consideration, not on a sudden impulse." *Force v. Islamic Republic of Iran,* 464 F. Supp. 3d 323, 363 (D.D.C. 2020), (quoting *Owens v. Republic of Sudan*, 174 F. Supp. 3d 242, 263 (D.D.C. 2016)

(citations omitted)). The sophistication of the attack and the prior planning required to carry it out—i.e., "with intelligence gathering, by selecting the site; with logistics, by purchasing the [weapon]; [or] operationally by training to commit the attack"—are indicative of deliberation. *Schwartz v. Islamic Republic of Iran*, 2020 WL 7042842, at *12 (D.D.C. Nov. 30, 2020). Put succinctly, there are three elements for "extrajudicial killing": (1) a killing; (2) that is deliberated; and (3) is not authorized by a previous judgment pronounced by a regularly constituted court." *Owens v. Islamic Republic of Iran*, 864 F.3d 751, 770 (D.C. Cir. 2017).

Moreover, courts within this district have found that injuries resulting from "deliberated" *attempts* to kill fall within the scope of the terrorism exception to foreign sovereign immunity, § 1605(a)(1). *Neiberger v. Islamic Republic of Iran,* 16-cv-02193, 2022 WL 17370239, at *4-5 (D.D.C. Sept. 8, 2022); *Lee v. Islamic Republic of Iran*, 518 F.Supp.3d 475, 491 (D.D.C. 2021); *Schertzman Cohen v. Islamic Republic of Iran,* 17-cv-1214, 2019 WL 3037868, at *3 (D.D.C. July 11, 2019). Material support or resources to facilitate attacks qualify as material support for attempted extrajudicial killings. *Karcher v. Islamic Republic of Iran,* F.Supp.3d 12, 58 (D.D.C. 2019); *Lee,* 518 F.Supp.3d at 491.

## II.   IMPROVISED EXPLOSIVE DEVICES ("IEDS") AND DELIBERATION

Courts within this district have held that deploying an EFP represents a "deliberated" attempt to kill someone. Those attempts bring Iran within the terrorist exception to sovereign immunity. *Karcher,* 396 F.3d at 30 and 58 ("[I]dentification of the weapon as an EFP all but necessitates the inference that Iran was responsible"); *Lee,* 518 F.Supp.3d at 492; *See also Roberts v. Islamic Republic of Iran,* 581 F.Supp.3d 152, 170 (D.D.C. 2022). But neither 28 U.S.C. §

1605A(a)(1) nor the TVPA limit "extrajudicial killing" to EFPs or, for that matter, any means of causing or attempting such a killing.

Indeed, Plaintiffs' counter-insurgency expert, Michael Pregent, has testified in another FSIA case within this district that IEDs are themselves highly sophisticated weapons systems that a rogue terrorist could not deploy on his own without training. *Roth*, 2023 WL 196577, at *18. To "successfully" deploy an IED, proxy groups needed to be trained on how to emplace and trigger them, either through command or passive detonation. In addition, those groups needed to amass intelligence about U.S. Armed Forces vehicle routes to place IEDs where they were likely to inflict casualties on American troops, rather than on the terrorists or their sympathizers. *Id.* at *18.

### III. CLARIFY WHETHER THESE ATTACKS WERE CARRIED OUT BY AN EFP OR IED

#### 1. Attack 2: July 27, 2005---Adrian Butler and John Tollefson

Specialists Adrian Butler and John Tollefson were killed in the same attack on July 27, 2005, near Ashraf (Baghdad), Iraq.

The SIGACT report for this attack states: "…411 MP CO ("Military Police Company") struck an **IED** on ASR ("Alternate Supply Route") Dover…" [Exhibit 257]. Plaintiffs' counterinsurgency expert, Michael Pregent, opined that the attack was perpetrated by al-Qaeda with material support or resources from Iran, its IRGC-QF, and/or Hezbollah. [Doc 30-2, p. 21].

However, in another FSIA case within the district, *Karcher v. Islamic Republic of Iran*, 16-cv-232, 2021 WL 133507, at *14 (D.D.C. Jan. 14, 2021), Judge Kollar-Kotelly found that the July 27, 2005, attack which killed Sergeant Tony Wood involved a campaign orchestrated by the IRGC

("Islamic Revolutionary Guard Corps") and Hezbollah and conducted by one of the IRGC's Special Group Proxies.

Completely consistent with the CIDNE and SIGACT reports for Specialists Butler and Tollefson noted above, the *Karcher* opinion referred to Sgt. Wood riding in the front passenger seat of an "up-armored" M1114 HMMWV as part of a military police convoy on July 27, 2005. The vehicle was suddenly struck on its left side by an explosive, instantly killing the driver and gunner and severely injuring Wood. *Karcher,* 2021 WL 133507 at *14. Wood sustained severe shrapnel wounds which kept him in a coma for 45 days and necessitated multiple surgeries to repair damaged internal organs. The M1114 HMMWV was destroyed and on fire. *Id.* at *14.

The *Karcher* opinion went on to reference photographic evidence depicting a complete penetration of the vehicle's driver's door from an explosively propelled copper slug. Moreover, the declaration of an Executive Officer affirmed that local Shi'a Special Groups had been active in the company's area of operations and had used **EFPs**. *Id.* at *14.

The Plaintiffs alternatively and respectfully request that the Court judicially notice the findings of Judge Kollar-Kotelly in *Karcher* and find that the attack which killed Specialists Butler and Tollefson was traceable to Iran and its Proxies. *Karcher,* 2011 WL 133507 at *14.

Should the Court decide this was an IED attack, the fact that an explosive device powerful enough to destroy a HMMWV, kill two Soldiers instantly, and severely injure another was purposefully hidden in a roadway where U.S. Coalition vehicular traffic was known to travel demonstrates its deliberate, planned nature. This clearly was not a "sudden impulse."

### 2. Attack 12: August 24, 2006---William Thorne

In *Pennington v. Islamic Republic of Iran*, 19-cv-796, 2021 WL 2592910, Private First Class Thorne's widow, Corey Schlenker, was a named solatium plaintiff individually and as personal representative of the Estate of William Thorne, deceased. Judge Boasberg concluded that "all the deaths and injuries in question were caused by EFPs," citing paragraph 14 of the underlying complaint,[1] and that "plaintiffs have sufficiently proven that Iran was responsible for providing the relevant EFPs." *Pennington,* 2021 WL at *4. The *Pennington* court, relying in large part on the same expert declarations as are proffered in this matter, and then comparing those declarations with other FSIA EFP litigation in this district, concluded that the connection between Iran and EFPs was so strong that absent any indication that any of the EFPs was not backed by Iran, a court should find that Iran was indeed the provider of the EFPs in each attack. *Id.* at *4.

The SIGACT report for this attack referenced an "IED strike" which flipped over Thorne's M1114 HMMWV and destroyed it. [Exhibit 283]. Blue and white command wire leading to and across a canal was found and traced 25 meters to the west from the roadway where the detonation occurred. [Exhibit 283]. The CEXC report similarly referred to and had a photograph of the command wire found at the detonation scene, however, it did not specifically refer to this being an EFP attack. It also referred to the destroyed M1114 HMMWV vehicle. [Exhibit 511].

---

[1] The *Pennington* Plaintiffs alleged that "Explosively Formed Penetrators were used to injure and kill Plaintiffs. Such bombs are sometimes called "Improvised Explosive Devices" ("IEDs"); in reality, the EFPs were not "improvised" but professionally manufactured and specifically designed by Iran, as well as its agents and proxies to target U.S. Coalition Forces' armor." *Pennington, et a. v. Islamic Republic of Iran,* 1:19-cv-00796, Doc. 1, Par. 14 (Mar. 21, 2019).

The Plaintiffs alternatively and respectfully request that the Court judicially notice the findings of Judge Boasberg in *Pennington* and find that the attack which killed Private First Class Thorne was traceable to Iran and its Proxies. *Pennington,* 2021 WL 2592910 at *4.

Plaintiffs submit that whether this Court decides this attack was an EFP or an IED, the planting of the device underneath the roadway and the command wire laid to remotely detonate it demonstrated clear deliberation and not an impulse and thus constituted an extrajudicial killing. Plaintiff's counter-insurgency expert, Michael Pregent, who was given the statutory definition of the term, concluded that this attack was in fact an "extrajudicial killing." [Doc. 30-2, p. 12].

### 3. Attack 13: November 6, 2006---John Botts

Sergeant John Botts was severely injured on November 6, 2006, when the M1114 HUMMWV vehicle in which he was riding was "struck on the passenger side by an EFP." [Exhibit 287]. The grid coordinates for the attack location and Botts's declaration that the attack took place near Sadr City are entirely consistent. So too is the SIGACT report statement that the M1114 HMMWV was "struck in the passenger side by an EFP" and Botts's declaration with attached Exhibit 1, a photograph depicting a circular side entry hole in the passenger side of the HMMWV. [Exhibits 287 and 31].

Plaintiff's counter-insurgency expert, Michael Pregent, concluded that the "attack that injured John Botts was committed and perpetrated by IRGC-QF Proxies receiving direct material and resources from Iran and Hezbollah," and that "the attack occurred in an aera controlled by a Hezbollah and IRGC-QF trained, equipped, and directed Shia Group." [Doc. 30-2, p. 24]. Pregent also concluded that this attack constituted an "extrajudicial killing." [Doc. 30-2, p. 12]. The Plaintiffs respectfully suggest that the attack which severely injured Sergeant John Botts involved

an EFP provided to the perpetrator with the material support or resources of Iran, its IRGC-QF and Hezbollah.

### 4. Attack 18: November 6, 2006---Lucas T. White

In *Pennington, supra,* Sergeant Lucas White's stepfather, Lyle Brooks, was a named solatium plaintiff. Judge Boasberg concluded that "all the deaths and injuries in question were caused by EFPs," citing paragraph 14 of the underlying complaint,[2] and that "plaintiffs have sufficiently proven that Iran was responsible for providing the relevant EFPs." *Pennington,* 2021 WL at *4. The *Pennington* court, relying in large part on the same expert declarations as are proffered in this matter, and then comparing those declarations with other FSIA EFP litigation in this district, concluded that the connection between Iran and EFPs was so strong that absent any indication that any of the EFPs was not backed by Iran, a court should find that Iran was indeed the provider of the EFPs in each attack. *Id.* at *4.

The SIGACT report for this attack referenced a "manhole covered IED" on a Stryker Fighting Vehicle with "SAF ("small arms fire") in [the] vicinity of the attack…" [Exhibit 307]. Plaintiffs' counter-insurgency expert, Michael Pregent, opined that the attack was perpetrated by al-Qaeda with material support or resources from Iran, its IRGC-QF, and/or Hezbollah, and that the attack occurred in an area where Hezbollah and the IRGC-QF provided funds, training, and equipment. [Doc. 30-2, p. 25].

---

[2] The *Pennington* Plaintiffs alleged that "Explosively Formed Penetrators were used to injure and kill Plaintiffs. Such bombs are sometimes called "Improvised Explosive Devices" ("IEDs"); in reality, the EFPs were not "improvised" but professionally manufactured and specifically designed by Iran, as well as its agents and proxies to target U.S. Coalition Forces' armor." *Pennington, et a. v. Islamic Republic of Iran,* 1:19-cv-00796, Doc. 1, Par. 14 (Mar. 21, 2019).

The Plaintiffs alternatively and respectfully request that the Court judicially notice the findings of Judge Boasberg in *Pennington* and find that the attack which killed Sergeant Lucas White was traceable to Iran and its Proxies. *Pennington,* 2021 WL 2592910 at *4.

In the event the Court decides this was an IED attack, Plaintiffs submit that the planting of an IED under a manhole cover which was powerful enough to kill Sergeant White and severely damage the Stryker Fighting Vehicle in which he was riding, along with the coordinated small arms fire immediately after the attack, demonstrated an attempted deliberated extrajudicial killing under the FSIA.

### 5. Attack 23: February 7, 2007---Travis Vendela

The SIGACT and CIDNE reports for this attack referenced a multiple IED attack on the five-vehicle convoy in which Vendela was riding. Post-blast analysis on the second IED found that it consisted of two 130mm HE ("high explosive") rounds with a saw blade pressure plate. [Exhibits 324; 572]. This IED was buried in the middle of the roadway. A third IED was found buried just off of the roadway in question, consisting of two 122 mm projectiles with fuel bottle with a pressure wire, the latter of which was concealed using foliage and bark. This third IED was intended to target first responders for the damage ostensibly caused by the first two IEDs. This area had recently seen an increase in such IEDs and the targeting of first responders. [Exhibits 324; 572].

Plaintiffs respectfully submit that the manufacturing of the IEDs; their secretive and strategic placement along roadways known to be frequented by U.S. Armed Services personnel; and the intentional placement of a third IED ostensibly to harm first responders reacting to the expected carnage caused by the detonation of the first two IEDs demonstrate a calculated, deliberated attempt to cause extrajudicial killings under the FSIA.

### 6. Attack 25: March 5, 2007---Blake Harris; Barry Mayo; and Ryan Russell

The SIGACT and AR-15-6 reports for this multiple IED attack reference a buried in the center of the road IED exploding underneath and destroying the M1114 HMMWV vehicle in which the three Soldiers were riding. [Exhibits 324 and 572]. There were cement barriers in place on each side of the roadway to cause vehicular traffic to funnel right over the IED. Black insulated dual strand command wire was found running from a rooftop across the street to a building near the blast. Wire was found taped to a pipe running down the side of the nearby building, embedded in the cracks in the sidewalk, and buried in the road leading into the crater. Other evidence found in the post-blast analysis included a Sony video camera with tripod; audio cassettes; blasting cap; and hand grenades. [Exhibits 324 and 572].

Plaintiffs respectfully submit that the various signs and indications of careful, deliberated planning set forth above demonstrate deliberate extrajudicial killings of these three U.S. Soldiers.

### 7. Attack 32: June 19, 2007---Joshua Modgling and William Zapfe

The AR-15-6 and CIDNE reports for this attack stated that same day Coalition intelligence indicated that "the type of attacks against CFs ("Coalition forces") have been large-buried IEDs with HME ("homemade explosives")…assess more attacks to follow as CFs expand their footprint…and to expect attacks along the main road." In fact, there had been an IED detonation at this same location the day prior to this attack. [Exhibits 630 and 631]. Tragically, it was in fact a "deep buried IED" along the roadway in question which killed Sergeant First Class Zapfe and Private First Class Modgling and destroyed their Bradley Fighting Vehicle on June 19, 2007. The

investigators determined that the blast crater (24 feet wide by 18 feet long by 8 feet deep) was consistent with approximately 400 pounds of homemade explosives. [Exhibits 630 and 631].

Plaintiffs respectfully submit that the careful planning described above in manufacturing, emplacing, and detonating the IED in question demonstrated deliberated extrajudicial killings under the FSIA.

### 8. Attack 36: July 6, 2007---LeRon Wilson

In *Karcher*, 16-cv-232, 2021 WL 133507, at *47 (D.D.C. Jan. 14, 2021), Judge Kollar-Kotelly found that the July 6, 2007, attack which killed Sergeant Gene Lamie involved an Explosively Formed Penetrator ("EFP") which was part of a well-planned and coordinated EFP campaign orchestrated by the IRGC ("Islamic Revolutionary Guard Corps") and Hezbollah and conducted by one of the IRGC's Special Group Proxies. Lamie was killed while on a combat patrol.

Completely consistent with the SIGACT report for Private First Class Wilson's attack discussed below, the *Karcher* opinion referred to Sergeant Gene Lamie being a part of the 3rd Battalion, 7th Cavalry Regiment, 2nd Brigade Combat Team, 3rd Infantry Division. Like Wilson's SIGACT report, the vehicle destroyed was listed to be an up-armored M1151 HMMWV. The vehicle was suddenly struck by an "multi-array explosive," instantly killing Lamie "and one other soldier." *Id.* at *47. Judge Kollar-Kotelly concluded that this attack involved "a 4-7 EFP array"

which was part of a well-planned and coordinated EFP campaign orchestrated by the IRGC and Hezbollah and conducted by one of the IRGC's Special Group Proxies.[3] *Id.*

The SIGACT report for this attack identified the very same battle unit for Wilson as the *Karcher* court identified for Sergeant Lamie. It referred to an M1151 HMMWV being destroyed in the "IED strike while conducting combat patrol…" It also referred to a possible photographer being detained at the scene. [Exhibit 362].

The Plaintiffs alternatively and respectfully request that the Court judicially notice the findings of Judge Kollar-Kotelly in *Karcher* and find that the attack which killed Specialist Wilson was orchestrated by the Iranian IRGC and Hezbollah and perpetrated by one of their proxies in Iraq. *Karcher,* 2011 WL 133507 at *14.

Whether the Court decides that this attack was an EFP or an IED, the obvious planned and secretive nature of the device's manufacture and placement, the detaining of a photographer apparently present at the scene, and the absence of enemy combatants at the attack site when it occurred, leads to an inference that this was a deliberated extrajudicial killing under the FSIA.

### 9. Attack 39: August 4, 2007---Dustin Wakeman

The SIGACT report for this attack indicated that the device used to kill Sergeant Wakeman and destroy the M1151 HMMWV in which he was riding was an IED. [Exhibit 369].

---

[3] Although the Court referenced *Stearns v. Islamic Republic of Iran,* 17-cv-131-RCL, 20222 WL 4764905, at *21-22 (D.D.C. Oct. 3, 2022), as possibly listing an Iranian proxy attack which killed Private First Class LeRon Wilson on July 7, 2006 [sic], Plaintiffs have determined that the attack which killed Petty Officer Robert McGill was not the same attack which killed Wilson.

Plaintiffs' counter-insurgency expert, Michael Pregent, opined that the attack was perpetrated by al-Qaeda with material support and resources from Iran, its IRGC-QF, and Lebanese Hezbollah. Moreover, the attack occurred in a geographical area where Hezbollah and the IRGC-QF provided funds, training and equipment for such attacks. According to Pregent, given the statutory definition provided to him for the term, this was an "extrajudicial killing." [Doc. 30-2, p. 29].

Plaintiffs respectfully submit that the apparent hidden nature of the IED device on the roadway on which the HMMWV was traveling creates an inference of deliberation and calculation, as opposed to a sudden impulsive move by a group of people. So too does the sheer power of the IED device, which had enough explosive force to kill Sergeant Wakeman and destroy the M1151 HMMWV in which he was riding. Plaintiffs respectfully suggest that this attack constituted an extrajudicial killing under the FSIA.

### 10. Attack 40: August 13, 2007---Eric Cottrell

The SIGACT report for this attack indicated that the device used was an IED which, according to the Explosive Ordnance Disposal Team, likely "consisted of 3 to 4 propane tanks filled with a total of 150-200 pounds of UBE ("unknown bulk explosive"). The device was triggered by a command wire that lead [sic] off to the east. The crater left by the blast was 10 feet in diameter and 4 feet deep." The command wire ran into a hole in the center of the road. The M1114 HMMWV in which Cottrell was riding at the time of the attack was destroyed [Exhibit 369].

Plaintiffs' counter-insurgency expert, Michael Pregent, opined that the attack was perpetrated by al-Qaeda with material support and resources from Iran, its IRGC-QF, and Lebanese Hezbollah. Moreover, the attack occurred in a geographical area where Hezbollah and

the IRGC-QF provided funds, training, and equipment for such attacks. According to Pregent, given the statutory definition provided to him for the term, this was an "extrajudicial killing." [Doc. 30-2, pp. 12; 30].

The Plaintiffs respectfully submit that the manufacturing, hidden placement, and command wiring to and from the IED clearly points to a calculated, deliberated extrajudicial killing of Cottrell. The construction and placement of such a powerful explosive device clearly does not point to a sudden impulse-type of event. Plaintiffs respectfully suggest that this attack constituted an extrajudicial killing under the FSIA.

### 11. Attack 44: September 20, 2007---Luigi Marciante

According to the AR-15-6 and SIGACT reports for this attack, while attempting to maneuver around the right side of an already IED-damaged vehicle situated in the roadway in question, the Stryker vehicle in which Specialist Marciante was riding struck a deep-buried IED, killing him. [Exhibits 379 and 664].

Plaintiffs' counter-insurgency expert, Michael Pregent, opined that the attack was committed and perpetrated by IRGC-QF Proxies receiving direct material and resources from Iran and Hezbollah. The attack occurred in an area controlled by a Hezbollah and IRGC-QF trained, equipped, and directed Shia Group. According to Pregent, given the statutory definition provided to him for the term, this was an "extrajudicial killing." [Doc. 30-2, pp. 12; 30].

Here, the uncontroverted evidence, including the manufacturing and hidden placement of this device, proves that this attack was a calculated, deliberated extrajudicial killing of Specialist Marciante by a group trained, funded, and directed by Iran and its proxies. The construction and placement of such a powerful explosive device clearly does not point to a sudden impulse-type of

event. The duplicity in burying a deadly IED device just adjacent to another deep buried IED which had already disabled a U.S. Armed Forces vehicle leads to the inescapable conclusion that this was a deliberated, calculated attack, i.e., an extrajudicial killing under the FSIA.

### 12. Attack 46: December 17, 2007---Bryan Wagner

Plaintiffs incorporate by reference as if fully set forth herein Section III of their Response to the Court's Order of February 8, 2023. [Doc. 33, pp. 2-4]. In addition to arguments already asserted therein, the SIGACT report also referred to suspicious persons being spotted 100 and 500 meters away from the attack site, watching the goings-on through binoculars and not lending assistance after the detonation. It also referred to the "damaged M1114 was still hot from the rounds blasted inside," a finding consistent with an EFP detonation. [Exhibit 252].

The Plaintiffs respectfully submit that the declaration of Specialist Wagner alone to the effect of right rear passenger door damage (with photographs attached to his declaration) and copper being taken out of his body after the attack compel an EFP finding as being the device used in this attack. [Exhibit 461, p. 2]. Wagner's vehicle did not "run over" a deep buried IED, but rather was hit in the right passenger side with a device having all the hallmarks---and copper constituents---of an EFP.

Plaintiffs further submit that whether this Court decides this attack was carried out with an EFP or an IED, Plaintiffs' counter-insurgency expert, Michael Pregent, opined that the attack was perpetrated by al-Qaeda with material support and resources from Iran, its IRGC-QF, and Lebanese Hezbollah. Moreover, the attack occurred in a geographical area where Hezbollah and the IRGC-QF provided funds, training, and equipment for such attacks. According to Pregent, given the statutory definition provided to him for the term, this was an "extrajudicial killing."

[Doc. 30-2, pp. 12; 32]. Plaintiffs respectfully urge this Court to conclude that this attack constituted an extrajudicial killing under the FSIA.

### 13. Attack 60: July 16, 2009---Carlos Wilcox

Specialist Carlos Wilcox is the only one of the Plaintiffs in this case who was killed by 107 mm rocket fire. The attack occurred near his Quick Reaction Force ("QRF") base located near Basrah, Iraq. Wilcox and several U.S. Army personnel were smoking the Hookah pipe in the designated smoking area of the base when the rocket attack occurred. [Exhibit 724, pp. 8-10]. The AR-15-6 investigative report stated that Wilcox sustained devastating penetrating injuries of the chest, abdomen, and extremities consistent with a rocket blast. The 107 mm rocket exploded approximately 15 feet from Wilcox. [Exhibit 724, p. 18].

Courts in this district, including this one, have concluded that rocket fire provided to proxy groups operating under the influence of Iran, the IRGC, QF, and Hezbollah in Iraq can constitute an extrajudicial killing under the FSIA. *Neiberger,* 2022 WL 17370239, at *8; *Stearns v. Islamic Republic of Iran*, 17-cv-131, 2022 WL 4764905, at *44 (D.D.C. Oct. 3, 2022).

Plaintiff's counter-insurgency expert, Michael Pregent, concluded that the attack that killed Carlos Wilcox was committed by al-Qaeda or an al-Qaeda affiliate with material support and resources from the Islamic Republic of Iran, its IRGC-QF, and Lebanese Hezbollah. The attack occurred in an area where Hezbollah and the IRGC-QF provided funds, training, and equipment. According to Pregent, given the statutory definition provided to him for the term, this was an "extrajudicial killing." [Doc. 30-2, pp. 12; 32]. Plaintiffs respectfully suggest that this Court conclude likewise that the attack which killed Specialist Wilcox constituted an extrajudicial killing under the FSIA.

**CONCLUSION**

All Plaintiffs Represented by John Driscoll respectfully submit their Supplemental Briefing in Response to the Court's March 28, 2023, Order. They respectfully request a status hearing in the event the Court needs further clarification or briefing on these issues.

Dated this 10th day of April, 2023.

Respectfully Submitted,
THE DRISCOLL FIRM, LLC

*/s/ John J. Driscoll*
John J. Driscoll, DC# MO0003
1311 Ave Juan Ponce de Leon
6th Floor
San Juan, PR 00907
(618) 444-6049 telephone
(314) 932-3233 facsimile
john@jjlegal.com

THE DRISCOLL FIRM, P.C.
Paul W. Johnson
Christopher J. Quinn
211 N. Broadway, 40th Floor
St. Louis, MO 63102
(314) 932-3232 telephone
(314) 932-3233 facsimile
paul@thedriscollfirm.com
chris@thedriscollfirm.com

*Attorney for Plaintiffs*