## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **ALL PLAINTIFFS REPRESENTED BY JOHN DRISCOLL,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**ISLAMIC REPUBLIC OF IRAN,**<br><br>**Defendant.** | **No. 20-cv-622-ZMF** |

## MEMORANDUM OPINION

From 2006 to 2011, sixty-three terrorist attacks on United States military servicemembers in Iraq killed forty-six and severely injured twenty-three servicemembers. The attack victims, their estates, and their family members (collectively, "Plaintiffs") seek compensation for their injuries from Defendant, the Islamic Republic of Iran, under the terrorism exception to the Foreign Sovereign Immunities Act ("FSIA"). *See* 28 U.S.C. § 1605A. The Court previously granted default judgment with respect to Iran's liability. *See* Order 2, ECF No. 42. Plaintiffs now seek damages, requesting over $5 billion. The Court must deny a subset of these requests, where counsel for Plaintiffs failed to follow precedent or simply provide the requisite evidence; however, the Court agrees that certain Plaintiffs have made the necessary showing and awards them compensatory damages totaling $1,019,872,428.

## I.      BACKGROUND

On November 2, 2016, Plaintiffs filed their original complaint against Iran together with a larger group of litigants. *See* Compl., *Neiberger v. Islamic Republic of Iran*, No. 16-cv-2193 (D.D.C. Nov. 2, 2016), ECF No. 1. On February 27, 2020, Judge Sullivan severed the claims of

plaintiffs represented by The Driscoll Firm, P.C. from the claims of plaintiffs represented by Willkie Farr & Gallagher LLP, *see* Order 1, *Neiberger*, No. 16-cv-2193 (D.D.C. Feb. 27, 2020), ECF No. 52, and directed the Clerk of Court to open a new case, *see* Min. Order, *Neiberger*, No. 16-cv-2193 (D.D.C. Mar. 2, 2020).

On March 2, 2020, the newly-severed Driscoll Plaintiffs filed their amended complaint in the above-captioned matter seeking judgment against Iran pursuant to 28 U.S.C. § 1605A(c) and relief in the form of compensatory damages, including for economic losses, pain and suffering, solatium damages, and punitive damages. *See* Second Am. Compl. ¶¶ 870–85, ECF No. 2. Plaintiffs sought default judgment after Iran failed to appear. *See* Mot. Default J., ECF No. 19.

On October 5, 2021, Judge Sullivan referred the matter to the undersigned for full case management pursuant to Local Civil Rule 72.3. *See* Min. Order (Oct. 5, 2021). On June 27, 2023, the undersigned recommended granting default judgment as to liability. *See All Plaintiffs Represented by John Driscoll v. Islamic Republic of Iran* ("*Driscoll I*"), No. 20-cv-622, 2023 WL 4892710, at *14 (D.D.C. June 27, 2023). On July 13, 2023, Judge Sullivan adopted the report and recommendation and granted default judgment. *See All Plaintiffs Represented by John Driscoll v. Islamic Republic of Iran*, No. 20-cv-622, 2023 WL 5932974, at *1 (D.D.C. July 13, 2023).

Plaintiffs then moved for $5,356,489,472 in damages, comprised of compensatory damages of $1,339,122,368 and punitive damages of three times that amount. *See* Pls.' Mot. Default J. Damages ("Mot."), Ex. G ("Damages Table") 14, ECF No. 45-8. Iran has still not appeared in the action.

On June 21, 2024, Plaintiffs consented to appear before the undersigned for all purposes pursuant to Local Civil Rule 73.1. *See* Min. Order (June 21, 2024).

## II.    LEGAL STANDARD

The terrorism exception of the FSIA authorizes recovery for "economic damages, solatium, pain and suffering, and punitive damages." 28 U.S.C. § 1605A(c). "To obtain damages against [Defendant] under the FSIA, the plaintiffs must prove that the consequences of [Defendant's] conduct were 'reasonably certain' (i.e., more likely than not) to occur, and must prove the amount of damages by a 'reasonable estimate' consistent with this [Circuit's] application of the American rule on damages." *Est. of Heiser v. Islamic Republic of Iran*, 406 F. Supp. 2d 229, 268 (D.D.C. 2006) (quoting *Salazar v. Islamic Republic of Iran*, 370 F. Supp. 2d 105, 115–16 (D.D.C. 2005)). "While these requirements create 'some protection against an unfounded default judgment,' plaintiffs need not produce 'more or different evidence than [a court] would ordinarily receive; indeed, the quantum and quality of evidence that might satisfy a court can be less than that normally required.'" *Pennington v. Islamic Republic of Iran*, No. 19-cv-796, 2022 WL 168261, at *1 (D.D.C. Jan. 19, 2022) (quoting *Fraenkel v. Islamic Republic of Iran*, 892 F.3d 348, 353 (D.C. Cir. 2018)).

Different types of recovery are available to different types of Plaintiffs. "First, damages for pain and suffering are limited to injured U.S. servicemembers and, if death was not instantaneous, to the estates of deceased U.S. servicemembers." *Neiberger v. Islamic Republic of Iran*, No. 16-cv-2193, 2022 WL 17370239, at *12 (D.D.C. Sept. 8, 2022) (citing *Gates v. Syrian Arab Republic*, 580 F. Supp. 2d 53, 73–74 (D.D.C. 2008)). "Second, economic damages are limited to U.S. servicemembers and their estates for their economic losses." *Id.* (citing *Valore v. Islamic Republic of Iran*, 700 F. Supp. 2d 52, 83 (D.D.C. 2010)). Finally, courts may award solatium damages to the immediate family members of victims. *Id.* (citing *Valore*, 700 F. Supp. 2d at 85).

### III.    DISCUSSION

Plaintiffs seek damages on behalf of 23 injured servicemembers, 46 estates of deceased servicemembers, and 263 family members of injured or deceased servicemembers.[1] *See* Damages Table.

#### A.    Injured Servicemembers

Each of the 23 surviving servicemembers seeks to recover economic losses as well as pain and suffering damages. *See id.*

##### 1.    *Economic Damages*

Recoverable economic damages under the FSIA include "past and future lost wages, benefits and retirement pay, and other out-of-pocket expenses." *Neiberger*, 2022 WL 17370239, at *14 (citing *Owens v. Republic of Sudan*, 71 F. Supp. 3d 252, 258 (D.D.C. 2014)). Plaintiffs may prove such damages by a forensic economist's expert report. *See Roth v. Islamic Republic of Iran*, 78 F. Supp. 3d 379, 402 (D.D.C. 2015); *Fritz v. Islamic Republic of Iran*, 324 F. Supp. 3d 54, 59–60 (D.D.C. 2018). When evaluating an expert's report, the Court considers the "reasonableness and foundation of the assumptions relied upon by the expert." *Roth*, 78 F. Supp. 3d at 402 (citing *Reed v. Islamic Republic of Iran*, 845 F. Supp. 2d 204, 214 (D.D.C. 2012)).

Plaintiffs have provided reports by forensic economist Donald Frankenfeld calculating each injured servicemember's economic damages. *See* Mot. at 5; Ex. F, Expert Report of Donald Frankenfeld ("Frankenfeld Report"), ECF No. 45-7. Frankenfeld is an experienced forensic economist who calculated damages using earnings information from Plaintiffs' declarations,

---

[1] The U.S. Victims of State Sponsored Terrorism Fund provides compensation to individuals or representatives of deceased individuals who hold a final judgment issued by a United States District Court awarding the individual compensatory damages. See https://usvsst.com/.

standard U.S. Army pay grade classifications, "[a]uthoritative statistical sources" to determine work life expectancy and life expectancy, and individual servicemember characteristics. Frankenfeld Report at 1, 3. Frankenfeld performed standard economic analyses to estimate each Plaintiff's economic damages. *See* Frankenfeld Report at 3–4. These reports reasonably estimate those damages. *See Pennington v. Islamic Republic of Iran*, No. 19-cv-796, 2022 WL 18814284, at *1 (D.D.C. May 3, 2022) (generally accepting the reasonability of similar economic reports authored by Frankenfeld to establish economic damages for other FSIA plaintiffs). Thus, the Court awards each injured servicemember the damages so calculated.

### 2.   *Pain and Suffering*

"In awarding pain and suffering damages, the Court must take pains to ensure that individuals with similar injuries receive similar awards." *Neiberger*, 2022 WL 17370239, at *12 (quoting *Peterson v. Islamic Republic of Iran*, 515 F. Supp. 2d 25, 54 (D.D.C. 2007)). "Assessing appropriate damages for physical injury or mental disability can depend upon a myriad of factors, such as 'the severity of the pain immediately following the injury, the length of hospitalization, and the extent of the impairment that will remain with the victim for the rest of his or her life.'" *Wultz v. Islamic Republic of Iran*, 864 F. Supp. 2d 24, 37 (D.D.C. 2012) (quoting *Peterson,* 515 F. Supp. 2d at 25 n.26 (internal citation omitted)). This Court's "general procedure for the calculation of damages . . . begins with the baseline assumption that persons suffering substantial injuries in terrorist attacks are entitled to $5 million in compensatory damages." *Wultz*, 864 F. Supp. 2d at 37–38 (internal citation omitted). "In applying this general approach, this Court has explained that it will 'depart upward from this baseline to $7–$12 million in more severe instances of physical and psychological pain, such as where victims suffered relatively more numerous and severe

injuries, were rendered quadriplegic, partially lost vision and hearing, or were mistaken for dead.'" *Id.* (quoting *Valore,* 700 F. Supp. 2d at 84).

Eight Plaintiffs—Jake Altman, Brian Beem, John A. Botts, Brandon Byers, Josh Craven, Norman Forbes, IV, Derek Gagne, and Jason Rzepa—of the 23 injured seek pain and suffering awards of $5 million, and fifteen Plaintiffs—Bryan Anderson, John Blickenstaff, Joshua Cope, Louis Dahlman, James Donaldson, Jerral Hancock, Saul Martinez, Nicholas Paupore, Brian Saaristo, John Takai, Andrew Tong, Travis Vendela, Michelle Wager, Bryan Wagner, and Joshua Wells—seek increased awards ranging from $6 million to $18 million. *See* Mot., Pls.' Mem. Law Supp. FSIA Damages Award ("Pls.' Mem.") 12–53, ECF No. 45-1.

a.      Plaintiffs Seeking the Baseline Amount

Each of the eight Plaintiffs seeking the baseline award amount suffered substantial injuries and so are entitled to at least the $5 million requested in pain and suffering damages. *See* Damages Table; Mot., Ex. H ("Exhibit List"), Exs. 58, 438, 31, 443, 463, 462, 446, 135.[2] Upon review of their injuries, the Court finds that five of these Plaintiffs—Bryan Beem, John A. Botts, Brandon Byers, Derek Gagne, and Jason Rzepa—are entitled to damages *greater* than the $5 million they seek. While the Court will not go out of its way to award more in damages than what Plaintiffs request—particularly at default judgment—it has a duty to "take pains to ensure that individuals with similar injuries receive similar awards." *Neiberger*, 2022 WL 17370239, at *12.

Brian Beem sustained a below-the-knee ("BTK") amputation, multiple fractures, and several shrapnel wounds in an EFP attack on October 11, 2006. *See* Ex. 438 at 2–4. He then

---

[2] Plaintiffs have provided over 900 numbered exhibits in support of their motion, which they summarize in Exhibit H. *See* Exhibit List. These exhibits will be referred to herein simply by number, for example, "Ex. 500."

developed neuromas in the injured areas and was diagnosed with post-traumatic stress disorder ("PTSD"). *See id.*; Ex. 524 at 3. The severity of Beem's injuries are comparable to those meriting an award of $7 million, which the Court awards him. *See Est. of Doe v. Islamic Republic of Iran*, 943 F. Supp. 2d 180, 187 (D.D.C. 2013) (awarding $7 million for an amputated leg, permanently damaged arm, several surgeries, and being trapped for 11 hours after attack).

Similarly, John Botts sustained an ATK amputation, severe injuries to his right leg that required skin grafts, and a fractured tibia in an EFP attack on September 7, 2006. *See* Ex. 31 at 3. During treatment, Botts required multiple blood transfusions which caused him to contract Hepatitis C. *See id.* Finally, Botts was diagnosed with PTSD and suffers associated secondary impairments. *See id.* at 4. The Court finds the severity of Botts' injuries is comparable to those meriting an award of $7 million, *see Doe*, 943 F. Supp. 2d at 187, which it awards Botts.

Brandon Byers sustained an ATK amputation and severe damage to his median and ulnar nerves, drastically limiting his right hand's functionality, in an EFP attack on October 16, 2006. *See* Ex. 443 at 3–6. Prior to his amputation, Byers underwent extensive medical treatment attempting to save the leg, including two total knee replacements. *See* Ex. 533 at 6. Byers was also diagnosed with PTSD. *See* Ex. 534 at 2. The Court finds the severity of Byer's injuries to be comparable to those meriting an award of $7.5 million, which it therefore awards him. *See Neiberger*, 2022 WL 17370239, at *13 (awarding $7.5 million for an amputated left arm, brain injury necessitating removal of part of the skull, and substantial permanent vision impairment).

Derek Gagne suffered a BTK amputation, a partial foot amputation, and lost several fingers on his hand in an EFP attack on January 22, 2007. *See* Ex. 446 at 4–5. His left eyeball was also ruptured, leading to total blindness on his left side, and he sustained damage to his right eye, leading to limited vision on his right side. *See id.* at 3. Gagne's nose was destroyed and he

underwent extensive surgeries to attempt reconstruction, with limited success. *See id.* He also was diagnosed with a traumatic brain injury ("TBI") and suffers from symptoms consistent with PTSD. *See* Ex. 563 at 4; Ex. 564 at 3. Gagne's injuries are more severe than those courts have found to merit awards of $9 million, *see Mark v. Islamic Republic of Iran*, 626 F. Supp. 3d 16, 36 (D.D.C. 2022) (granting $9 million for a brain contusion, massive injuries to orbital bones requiring extensive reconstruction surgery and removal of right eye, loss of smell, and cognitive impairments), and comparable to situations meriting an award of $10 million, *see Weinstein v. Islamic Republic of Iran*, 184 F. Supp. 2d 13, 22–23 (D.D.C. 2002) (awarding $10 million for a double leg amputation, several surgeries, and immense pain from burn and blast injuries). The Court therefore awards Gagne $10 million.

Jason Rzepa's legs were badly damaged in an EFP attack on July 11, 2011, necessitating two BTK amputations. *See* Ex. 135 at 2–3. Rzepa was also diagnosed with a TBI and suffers from PTSD. *See* Ex. 736 at 4. Like Gagne, the Court finds the severity of Rzepa's injuries to be comparable to those meriting an award of $10 million. *See Weinstein*, 184 F. Supp. 2d at 22–23. The Court therefore awards Jason Rzepa $10 million.

b.     Plaintiffs Seeking Augmented Amounts

Next, the Court turns to the fifteen Plaintiffs seeking augmented awards. These Plaintiffs argue that increases are merited given "the extreme and grievous nature of [Plaintiffs'] physical and psychological injuries." Pls.' Mem. Each of these Plaintiffs was indeed horrifically injured. *See id.* The Court acknowledges Plaintiffs' extraordinary pain and suffering and emphasizes that where it awards less than Plaintiffs' request, it does so because of its duty to "view the situation holistically, both as to the plaintiff's total injuries and across cases . . . . judges in this district strive to ensure that their awards correspond to the events at issue and to similar cases before other

judges." *Mark*, 626 F. Supp. 3d at 37. In addition, although some Plaintiffs seek awards over $12 million, an "award of [over $12 million] falls well outside the heartland of what courts today typically award for pain and suffering. Substantial injuries under the prevailing *Heiser* figures merit [only] up to $12 million in damages." *Id.* at 36. The awards granted reflect that limitation.

### i.    Bryan Anderson

Bryan Anderson requests $15 million for pain and suffering caused by an EFP attack on October 23, 2005. *See* Pls.' Mem. at 13. Anderson suffered two ATK leg amputations, a left below-the-elbow ("BTE") amputation, a collapsed right lung, shrapnel fragments lodged throughout his abdominal muscles and in his liver, and a month-long hospital stay during which he developed an ulcer and heterotopic ossification (painful abnormal growth of bone). *See id.* at 12.

Anderson's injuries are more severe than those where a court awarded $10 million, *see Weinstein*, 184 F. Supp. 2d at 22–23 (double leg amputation, several surgeries, and immense pain from burn and blast injuries), but less severe than where a court awarded $12 million, *see Peterson*, 515 F. Supp. 2d at 55 (permanent quadriplegia). The Court therefore awards Anderson $11 million.

### ii.    John Blickenstaff

John Blickenstaff requests $10 million for pain and suffering caused by an EFP attack on August 4, 2008. *See* Pls.' Mem. at 15. Blickenstaff underwent sixteen surgeries and was hospitalized for sixty-five days and has permanent "foot drop" and nerve damage. *See id.* at 13. He also lost his right shin bone, creating swelling which prohibits ambulation, and has twice suffered from cellulitis (a serious skin infection). *See id.* at 13–14. Blickenstaff has also undergone an orchiotomy (removal of testicles); has strabismus from a fourth cranial nerve injury; and suffers from PTSD, anxiety, and depression. *See id.* at 14–15.

Blickenstaff's injuries are more severe than those meriting awards of $7.5 million. *See Peterson*, 515 F. Supp. 2d at 56 (awarding $7.5 million for broken femur, hand, and pelvis bones, cuts and bruises, and a completely rotated left foot); *Murphy v. Islamic Republic of Iran*, 740 F. Supp. 2d 51, 78 (D.D.C. 2010) (awarding $7.5 million for an impaled rectum and split stomach, leading to 11 months with a colostomy bag, a crushed kidney, fractured pelvis, detached ear, and damage to legs and feet confining victim to a wheelchair for many months). Blickenstaff's injuries are comparable to those where a court awarded $8 million. *See Peterson*, 515 F. Supp. 2d at 56 (broken clavicles, broken ribs, broken middle ear, a punctured lung, bruised kidney, and a coma). The Court awards Blickenstaff $8 million.

iii.    Joshua Cope

Joshua Cope requests $12 million for pain and suffering caused by an EFP attack on November 13, 2006. *See* Pls.' Mem. at 19. Cope sustained an ATK amputation and a through-the-knee amputation due to the blast. *See id.* at 16. He also suffered severe damage to both hands, which resulted in a permanent paralysis of his right hand. *See id.* at 16. He is wheelchair-bound and requires an around-the-clock caretaker for daily activities. *See id.* at 18. He also was diagnosed with a TBI and suffers from severe PTSD. *See id.*

Cope's injuries fall between injuries meriting $10 million and $12 million. *See Weinstein*, 184 F. Supp. 2d at 22–23; *Peterson*, 515 F. Supp. 2d at 55. Thus, the Court awards Cope $11 million for pain and suffering.

iv.    Louis Dahlman

Louis Dahlman requests $8 million for pain and suffering caused by an EFP attack on May 18, 2007. *See* Pls.' Mem. at 23. Dahlman's jawbone was nearly blown off, causing him to lose all but one of his bottom teeth and suffer a TBI. *See id.* at 22–23. He had to be connected to a

percutaneous endoscopic gastrostomy tube for feeding. *See id.* Dahlman underwent several surgeries to reconstruct his face, including several grafting attempts, many of which caused further complications. *See id.* Dahlman has been hospitalized for a total of at least ninety-three days. *See id.* He suffers ongoing mental deficits and requires a machine to sleep. *See id.*

Dahlman's injuries are more severe than those where a court awarded $7 million, *see Doe*, 943 F. Supp. 2d at 187 (split open head, cracked roof of the mouth, all teeth broken, and damaged vision and hearing, leading to facial reconstruction surgery and continuing pain), but less severe than situations where a court awarded $9 million, see *Mark*, 626 F. Supp. 3d at 36 (brain contusion, massive injuries to orbital bones requiring extensive reconstruction surgery and removal of right eye, loss of smell, and cognitive impairments). Dahlman's injuries are comparable to situations where a court awarded $8 million. *See Peterson*, 515 F. Supp. 2d at 55 (skull fractures, brain bruising, various broken bones, and exposed Achilles tendon). The Court therefore awards Dahlman $8 million.

v.   James Donaldson

James Donaldson requests $12 million for pain and suffering caused by an EFP attack on July 14, 2005. *See* Pls.' Mem. at 26. Both of Donaldson's legs were blown off, necessitating two BTK amputations, one of which required an ATK amputation eighteen months later. *See id.* at 24. Donaldson can ambulate with a prosthetic but cannot do so without pain. *See id.* He uses a wheelchair for his eight-hour work shift. *See id.* He also has blood-clotting issues, headaches, sleep issues, a TBI, cognitive issues, severe depression, and PTSD. *See id.* at 25.

Donaldson's injuries are more severe than situations meriting a $9 million award, *see Cabrera v. Islamic Republic of Iran*, Nos. 19-cv-3835, 18-cv-2065, 2022 WL 2817730, at *44–45 (D.D.C. July 19, 2022) (painful limb-salvage operations which ultimately led to amputation, four

and a half years at the hospital, and a TBI). Rather, Donaldson's situation is comparable to those meriting a $10 million award. *See Weinstein*, 184 F. Supp. 2d at 22–23. The Court therefore awards Donaldson $10 million.

vi.    Jerral Hancock

Jerral Hancock requests $18 million for pain and suffering resulting from an EFP attack on May 29, 2007. *See* Pls.' Mem. at 29. Hancock was trapped in a burning vehicle for 40 minutes and lost his left arm during the extraction effort. *See id.* at 26. Shrapnel fragments became embedded at the base of his neck, paralyzing him from the C-6 vertebrae down. *See id.* Approximately twenty-eight percent of his body was severely burned. *See id.* at 27. Hancock developed pressure ulcers on multiple areas of his body and developed osteomyelitis (swelling that occurs in the bone). *See id.* at 28. Hancock can still slightly move his right arm, allowing him to ambulate via motorized wheelchair, but requires assistance for all aspects of daily living. *See id.* at 27. Hancock was diagnosed with a TBI and PTSD and has been battling substance abuse related to his physical and emotional pain. *See id.* at 28–29.

The severity of Hancock's injuries falls between injuries meriting $10 million and $12 million. *See Weinstein*, 184 F. Supp. 2d at 22–23; *Peterson*, 515 F. Supp. 2d at 55. Because Hancock's injuries were more severe than Anderson's and Cope's injuries, the Court awards Hancock $11.5 million.

vii.    Saul Martinez

Saul Martinez requests $10 million for pain and suffering resulting from an EFP attack on May 8, 2007. *See* Pls.' Mem. at 33. Martinez lost both of his legs, necessitating one ATK amputation and one BTK amputation. *See id.* at 31–32. Martinez was placed in a medically induced

coma for nine days after the attack. *See id.* He sustained a serious TBI and injuries to his lower body. *See id.* He also suffers daily pain and PTSD. *See id.* at 33.

Martinez's injuries were more severe than those meriting a $9 million award, *see Cabrera*, 2022 WL 2817730, at *44–45, and comparable to situations meriting a $10 million award, *see Weinstein*, 184 F. Supp. 2d at 22–23. The Court therefore awards Martinez $10 million.

viii.    Nicholas Paupore

Nicholas Paupore requests $6 million for pain and suffering caused by an EFP attack on July 2, 2006. *See* Pls.' Mem. at 35. Paupore sustained an ATK amputation and nerve damage to his right hand. *See id.* at 34. He has undergone eight surgeries and was hospitalized for 25 days. *See id*. Paupore has since developed osteoporosis in his right hip and osteopenia in his left. *See id.* Finally, he was diagnosed with a TBI and sleep apnea. *See id.* at 35.

Paupore's injuries are comparable to those meriting a $7 million award, *see Doe*, 943 F. Supp. 2d at 187. The Court therefore awards Paupore the requested $6 million.

ix.    Brian Saaristo

Brian Saaristo requests $10 million for pain and suffering resulting from an EFP attack on July 2, 2006. *See* Pls.' Mem. at 38. Saaristo suffered two BTK amputations and a TBI. *See id.* at 36–37. He was later diagnosed with a cognitive disorder secondary to a TBI, as well as PTSD. *See id.* at 37–38.

Saaristo's injuries were more severe than those meriting a $9 million award and comparable to those meriting a $10 million award. *See Cabrera*, 2022 WL 2817730, at *44–45; *Weinstein*, 184 F. Supp. 2d at 22–23. The Court therefore awards Saaristo $10 million.

x.    John Takai

13

John Takai requests $8 million for pain and suffering as a result of an EFP attack on June 6, 2007. *See* Pls.' Mem. at 41. The blast ripped Takai's skin from his underlying muscles on his left arm and hand and fractured his humerus, radial, and ulnar bones, leaving him with no range of motion in his left arm. *See id.* at 38. Takai's right arm was severely burned and his left quadricep suffered a deep shrapnel injury. *See id.* at 39–40. Takai was also diagnosed with a TBI and PTSD. *See id.* at 41.

 Takai's injuries are comparable to those meriting a $7.5 million award. *See Valore*, 700 F. Supp. 2d at 84 ("split open" leg, severe "hole-like wounds" passing through the body, embedded pieces of debris, and burns covering 90% of the body). The Court therefore awards Takai $7.5 million.

xi.     Andrew Tong

Andrew Tong requests $7.5 million for pain and suffering caused by an EFP attack on August 18, 2007. *See* Pls.' Mem. at 44. Tong experienced a BTK amputation and suffered multiple shrapnel wounds that required persistent treatment. *See id.* at 41–42. Tong also sustained a TBI and has developed PTSD. *See id*. at 42. He has double vision due to TBI complications, which requires continuous treatment. *See id.* at 43.

Tong's injuries are comparable to those meriting a $7.5 million award. *See Neiberger*, 2022 WL 17370239, at *13. The Court therefore awards Tong $7.5 million.

xii.     Travis Vendela

Travis Vendela requests $10 million for pain and suffering caused by an EFP attack on February 7, 2007. *See* Pls.' Mem. at 46. Vendela sustained both an ATK amputation and a through the knee amputation. *See id.* at 44. Additionally, he sustained fractures in his arm and spine

requiring surgery. *See id.* He now uses a wheelchair 95% of the time due to pain while ambulating. *See id.* at 46. He also has PTSD and experienced a TBI. *See id.*

Vendela's injuries were more severe than those meriting a $9 million award and comparable to those meriting a $10 million award. *See Cabrera*, 2022 WL 2817730, at *44–45; *Weinstein*, 184 F. Supp. 2d at 22–23. The Court therefore awards Vendela $10 million.

xiii.    Michelle Wager

Michelle Wager requests $12 million for pain and suffering resulting from an EFP attack on January 22, 2007. *See* Pls.' Mem. at 49. Wager underwent an ATK amputation of her left leg, which caused her to go into hemorrhagic shock. *See id.* at 46–47. Additionally, she experienced serious trauma to her right leg, requiring intensive surgery and resulting in partial paralysis of the limb. *See id.* at 47–48. Wager uses a wheelchair about half the time. *See id.* at 48. She has struggled with infertility and was diagnosed with a TBI and PTSD. *See id.* at 49.

Wager's injuries are comparable to those meriting a $9 million award. *See Cabrera*, 2022 WL 2817730, at *44–45. The Court therefore awards Wager $9 million.

xiv.    Bryan Wagner

Bryan Wagner requests $7.5 million for pain and suffering caused by an EFP attack on December 17, 2007. *See* Pls.' Mem. at 51. Wagner experienced a BTK amputation and several bone fractures because of the detonation. *See id.* at 50. He had complications from the explosion including a TBI, burns, shrapnel wounds, and other injuries. *See id.*

Wagner's injuries are comparable to those meriting a $7.5 million award, *see Neiberger*, 2022 WL 17370239, at *13. The Court therefore awards him $7.5 million.

xv.    Joshua Wells

Joshua Wells requests $12 million for pain and suffering resulting from an EFP attack on November 2, 2007. *See* Pls.' Mem. at 53. Wells underwent a bilateral ATK amputation and is able to ambulate with prosthetics. *See id.* at 51–52. He has been diagnosed with PTSD. *See id.* at 52.

Wells' injuries were more severe than those meriting a $9 million award and comparable to those meriting a $10 million award. *See Cabrera*, 2022 WL 2817730, at *44–45; *Weinstein*, 184 F. Supp. 2d at 22–23. The Court therefore awards Wells $10 million.

B.   Deceased Servicemembers' Estates

Next, forty-six estates of servicemembers killed in terrorist attacks seek economic damages and damages for conscious pain and suffering. *See* Pls.' Mem. at 6–8; Damages Table.

1.   *Economic Damages*

Estates of deceased servicemembers, like injured servicemembers, may recover economic damages. *See* 28 U.S.C. § 1605A(c); *Neiberger*, 2022 WL 17370239, at *12. The estates of servicemembers killed in terrorist attacks have also provided reports authored by Frankenfeld in support of their requests for economic damages. These reports reasonably estimate Plaintiffs' economic damages. *See supra*; *Pennington*, 2022 WL 18814284, at *1. Thus, the Court awards each estate the damages so calculated.

2.   *Pain and Suffering*

Deceased servicemembers' estates may recover damages for pain and suffering experienced after an attack but before death if they can "prove that the decedent consciously experienced the time between an attack and his or her death." *Roth*, 78 F. Supp. 3d at 402 (citing *Est. of Botvin v. Islamic Republic of Iran*, 873 F. Supp. 2d 232, 244 (D.D.C. 2012)). The amount of damages awarded depends on the length of time the decedent experiences before dying. *See Selig v. Islamic Republic of Iran*, 573 F. Supp. 3d 40, 64 (D.D.C. 2021); *Fritz*, 324 F. Supp. 3d at

60. "[A] $1 million pain-and-suffering award is typically given to the estates of victims who quickly succumb to their injuries," *Selig*, 573 F. Supp. 3d at 64, and "[s]ubstantially more damages may be warranted in circumstances where the victim survives for days to months after the attack and continues to suffer throughout." *Force v. Islamic Republic of Iran*, 617 F. Supp. 3d 20, 34 (D.D.C. 2022). Yet even "[i]f a fatal injury was not instantaneous, a court must refuse to award damages for pain and suffering if the plaintiff is unable to prove that the decedent consciously experienced the time between an attack and his death." *Est. of Hirshfeld v. Islamic Republic of Iran*, 330 F. Supp. 3d 107, 145 (D.D.C. 2018); *see also Roth*, 78 F. Supp. 3d at 402; *Valore*, 700 F. Supp. 2d at 77; *Wultz*, 864 F. Supp. 2d at 38.

Forty-six estate Plaintiffs seek pain and suffering awards of $500,000. *See* Pls.' Mem. at 8; Damages Table. The estates of Michael Anaya and Duncan Crookston seek augmented awards. *See* Pls.' Mem. at 11–12, 21–22.

        a.        Forty-six Estates Seeking $500,000

Plaintiffs assert that "there is no specific record or eyewitness evidence of" pain and suffering experienced by these 46 servicemembers before dying. Mot. at 8. They nonetheless request $500,000 per plaintiff based on an orthopedic surgeon's opinion that victims who die from traumatic injury—even those who die instantaneously—"experience pain and psychological trauma following clinical death for aa [sic] period between two and 10 minutes." Mot., Ex. B, Expert Report of Dr. Francis X. McGuigan, Orthopedic Surgeon ("McGuigan Report") 3–4, ECF No. 45-3.

The Court declines to adopt this pseudoscientific theory of pain and suffering. Courts require proof of consciousness between injury and death—even if only minutes—to award pain and suffering damages. *See Hirshfeld*, 330 F. Supp. 3d at 145; *Roth*, 78 F. Supp. 3d at 402; *Valore*,

700 F. Supp. 2d at 77; *Wultz*, 864 F. Supp. 2d at 38. Plaintiffs' theory flies in the face of this case law—and accepted medical science—as it would grant compensable pain and suffering damages to *all* decedents who die of trauma.

However, counsel for Plaintiffs is incorrect to say that Plaintiffs lack evidence of consciousness for all 46 estates. The Court has reviewed the evidence submitted by Plaintiffs which—contrary to counsel's representations—*does* indicate consciousness before dying in some cases. The Court grants the following awards to ensure a similar outcome as similarly situated plaintiffs. *See Neiberger*, 2022 WL 17370239, at *12. These plaintiffs should not be punished for their counsel's mistakes.

First is David Knapp, who survived the initial attack and spent 16 months in the hospital after a double amputation. *See* Ex. 684 at 2–3. After leaving the hospital, Knapp returned home for about a year, after which he died from a heart attack. *See id.* at 3. Because Knapp experienced over a year of pain and suffering before dying, an award for such damages is appropriate. *See Force*, 617 F. Supp. 3d at 34. Knapp's injuries were comparable to those meriting a $10 million award. *See Weinstein*, 184 F. Supp. 2d at 22–23. However, such awards "incorporate[] an element of future pain and suffering, which survivors of attacks must bear," *Fritz*, 324 F. Supp. 3d at 61, which is inapplicable to Knapp, who is deceased. Thus, an award lower than $10 million is appropriate. *See id.* The Court therefore grants Knapp's estate $7.5 million.

Next, Barry Mayo was "conscious and talking for the approx. 5 minutes it took to drive him" to a medical treatment facility before he died at the facility. Ex. 579 at 41. These minutes of consciousness are sufficient to establish pain and suffering damages. *See Selig*, 573 F. Supp. 3d at 64. The Court grants Mayo's estate $500,000.

Finally, Joshua Modgling was heard "crying for help" and lived for approximately six minutes before he died. Ex. 630 at 54, 63. These minutes of consciousness establish compensable pain and suffering. *See Selig*, 573 F. Supp. 3d at 64. The Court grants Modgling's estate $500,000.

          b.      Estate Plaintiffs Seeking Upward Adjustments

The estate of Michael Anaya seeks $5 million for Anaya's 75 minutes of conscious pain and suffering between EFP attack and death. *See* Pls.' Mem. at 11–12. Anaya was "aware" and "responsive to questions" during this time. *Id.* Courts typically award $1 million where a trauma victim lives for one to two hours before dying. *See Selig,* 573 F. Supp. 3d at 64–65 (victim lived for several hours); *Doe A-1 v. Democratic People's Repub. of Korea*, No. 18-cv-252, 2021 WL 723257, at *7 (D.D.C. Feb. 24, 2021) (victim lived between a few minutes and a few hours); *Flatow v. Islamic Republic of Iran*, 999 F. Supp. 1, 29 (D.D.C. 1998) (victim lived three to five hours). The Court will follow suit here: "although [Anaya's] suffering was no doubt terrible, it was not substantially different from the suffering of other victims who have received" a $1 million award. *Selig*, 573 F. Supp. 3d at 65.

Second, the estate of Duncan Crookston requests $8 million for Crookston's five months of conscious pain and suffering between EFP attack and death. *See* Pls.' Mem. at 21. Crookston lost his limbs, underwent multiple serious surgeries, and suffered multiple severe infections caused by the loss of his extremities and severe burns across most of his body. *See id.* Courts award pain and suffering award amounts of around $8 million in similar circumstances. *See, e.g.*, *Wultz*, 864 F. Supp. 2d at 38 (victim suffered severe bleeding for nearly a month, lost organs and part of his leg, and experienced many infections). The Court therefore grants Crookston's estate $8 million.

C.     Family Members

Solatium "damages seek to compensate victims for the '[m]ental anguish, bereavement and grief' resulting from a loved one's death or injury." *Pautsch v. Islamic Republic of Iran*, No. 20-cv-3859, 2024 WL 2864215, at *2 (D.D.C. June 6, 2024) (quoting *Fraenkel*, 892 F.3d at 356–57). "So long as the plaintiffs are immediate family members, there is a 'presumption that family members in direct lineal relationship suffer compensable mental anguish, . . . and testimony proving a close relationship will usually be sufficient to sustain an award of solatium damages.'" *Doe v. Democratic People's Republic of Korea Ministry of Foreign Affs. Jungsong-Dong*, 414 F. Supp. 3d 109, 128–29 (D.D.C. 2019) (quoting *Kaplan v. Hezbollah*, 213 F. Supp. 3d 27, 38 (D.D.C. 2016)). Although these emotional impacts "are by their very nature unquantifiable," *Pautsch*, 2024 WL 2864215, at *2 (quoting *Moradi*, 77 F. Supp. 3d at 72), the "so-called *Heiser* framework . . . provides baseline figures and a basic methodology by which to ascertain" the appropriate amount of solatium damages, *Taitt v. Islamic Republic of Iran*, 664 F. Supp. 3d 63, 91 (D.D.C. 2023) (citing *Heiser*, 466 F. Supp. 2d 229). Application of this framework helps ensure "that individuals with similar injuries receive similar awards." *Taitt*, 664 F. Supp. 3d at 91 (quoting *Peterson*, 515 F. Supp. 2d at 54).

"As a starting point, the family of a deceased victim typically receives damages in the amount of $8 million for a spouse, $5 million for a child or parent, and $2.5 million for a sibling." *Taitt*, 664 F. Supp. 3d at 92 (citing *Schooley v. Islamic Republic of Iran*, No. 17-cv-1376, 2019 WL 2717888, at *74 (D.D.C. June 27, 2019)). "These amounts are halved for the family of an injured victim, with courts generally awarding $4 million to a spouse, $2.5 million to a child or parent, and $1.25 million to a sibling." *Id.* "Decisions to deviate from the starting points provided

by the *Heiser* framework are committed to the discretion of the particular court in each case." *Id.* at 91–92 (quoting *Oveissi v. Islamic Republic of Iran*, 768 F. Supp. 2d 16, 26 (D.D.C. 2011)).

Here, 80 parents, ten step-parents, 90 siblings or step-siblings, 33 spouses, and 46 children seek the base solatium awards established by *Heiser*. *See* Damages Table. Four Plaintiffs ask for augmented awards. *See id.*

    1.   *Family Members with Established Close Relationships to the Servicemember*

Most plaintiffs have provided affidavits that establish their close relationship to their deceased or injured family member and their "mental anguish, bereavement and grief" upon their family member's injury or death. *Fraenkel*, 892 F.3d at 356–57 (quoting *Flatow v. Islamic Republic of Iran*, 999 F. Supp. 1, 30 (D.D.C. 1998)). Amongst plaintiffs who were step-family to their deceased or injured family members, the Court is satisfied that they were "functional equivalents of immediate family members." *Bettis v. Islamic Republic of Iran*, 315 F.3d 325, 337 (D.C. Cir. 2003). No factors requiring downward departures from the *Heiser* baseline award amounts—such as those described in Sections 3 and 4 below—are present in these instances. These plaintiffs are accordingly entitled to the full applicable award amounts under *Heiser*.[3]

---

[3] These plaintiffs are: Chelsea Adair; Nadja Altman; Gloria Prosser; Charles Altman; Michael Altman; Cheryl Anaya; Trista Moffett; Carmelo Anaya; Briana Waswo; Robert Anderson; Elizabeth Beem; Diane Beem; Joseph Beem; Cassandra Beem; Kaitlyn Beem; Kelly Beem; Cynthia Colon; Joseph Beem, Jr.; Vanessa Beyers; Tim Beyers; Sonja Beyers; Tyler Beyers; Misty Blickenstaff; M. Blickenstaff; Pamela Blickenstaff Jones; Jared Blickenstaff; Adrianne Blickenstaff; Trista Carter; Jennifer Botts; Dara Botts; John S. Botts; Elizabeth Cunningham; Peggy Donaldson; Eldridge Butler; Megan Byers; Cameron Byers; Nadia Cadavero; David Cadavero; Kristia Markarian; Rosa Milagro Ascensio; Saul Rauda; Yeny Rauda; Jasmyn Rauda; Evelyn Rauda; Linda Cope; Philip Cope; Jacob Cope; Jonathan Cope; Holly Craven; Kay Stockdale; Lucas Dahlman; Amber Ahrens; Loramay Diamond; Taylor Diamond; Madison Diamond; Sean Diamond; Sally Diamond Wiley; Jason Diamond; Michael Diamond; Barry Edds; Julia Edds; Joel Edds; Lonnie W. Ford; Jessica Matson; Shawn Ford; Randy Gage; Julie Rosa; Faye Mroczkowski; Laura Gonzalez; Benedict Gonzalez; Benedict Jacob Gonzalez; J. Hancock;

2. *Family Members Who Provided No Evidence*

Many plaintiffs have provided no evidence, in the form of affidavits or otherwise, in support of their request for damages.[4] Plaintiffs explain that some family members "were unwilling to draft or incapable of drafting Declarations in which they would have described the relationship they had with their surviving or deceased Soldier and the effects their Soldiers' injuries or deaths

---

Samantha Hancock; Savannah Tscherny; Deborah Harris; Gary Henry; Betty Kline; John Kline, Jr.; Jeanette Knapp; Deborah Otte; David Kube; Jonathan Kube; Jessica Kube; Jason Kube; Jennifer Kube; Anthony Lill; Charmaine Lill; Kortne Jones; Stephanie Marciante; Maria Marciante; Luigi Marciante; Enza Marciante Balestrieri; Sarah Martinez; John Mayo; Rebecca Mayo; Andy Mayo; Melinda Mixon; Walter Mixon; Kenneth Mixon; Kimberly Spillyards; Julie Montano; Keith Modgling; Christopher Modgling; Kellilynn Stuart; Michelle Modgling; Kenneth Schaffer; Glenn Morris; Amy Morris; Kristi Pearson; Maria Paupore; Sharon Osborne; Mailey Paupore; Cody Paupore; Thomas Paupore; Leslie Bueno; Julie Payne; Jon Marie Pearson; Daniel Perez; Vicki Perez; Lisa Thompson; Lowell Keith Thompson; Brenna Corbin; Lois Richard; Joseph Richard, Jr.; Carmen Richard Billedeaux; Julie Rosenberg; Kathy Moore; Cassandra Rzepa; K. Rzepa; Ann Rzepa; David Michael Shaidell; Cheryl Ann Saaristo; Leah Marie Saaristo; Brian Saaristo, Jr.; Shirley Ann Saaristo; Brenda Angell; Kayleen Schild; Koby Schild; Keely Schild; Bruce Schild; Brooks Schild; Diane Sowinski; Jared Sowinski; Austin Sowinski; Erin Dructor; Audrey Barber; Callie McGee; Stephanie Benefield; Mae Takai; Jonamae Takai; Niana Takai; Juan Takai; Jolene Takai; Jermaine Takai; Tammy Richard; Glenn Richard; Heather Richard; Karen Thorne; Walter Tollefson; Mary Steinman; Kathryn Tollefson Miller; Maria Vazquez; Pablo Vazquez; Pablo Vazquez, Jr.; Marisel Vazquez; Javier Vazquez; Marianne Vendela; Margaret Wakeman; David Wakeman; William Zachary Wakeman; Wendy Green; Chad Weikel; Lydia Lantrip; Billie Wells, Jr.; Jeremy Wells; Randall Wendling; Carrie Wendling; Jennifer White; Julia Brooks; Marcus Ramos; Charlene Wilcox; Bianca Wilcox; Ona Wilcox; and Charles Wilcox, III. The applicable award amounts are reflected in the table following this opinion.

[4] These plaintiffs are: Constance Ahearn; Kevin Ahearn; Janet Waswo; James Waswo; Michelle Dearing; Sherri Cottrell; E. Cottrell; James Cottrell; Megan Cottrell; Doeshie Waters; Larry Stockdale; Samantha Gage; Michael Gage; Tamara Gage; Brenda Richards; Dirrick Benjamin; Joanna Harris; J. Harris; Skye Otero; Mikayla Lill; Cody Jacob Lill; Tia Mixon; T.R. Mixon; Adam Morris; Cassidy Morris; Joe Paupore; Mariah Coward; Jennifer Rubio; N. Rubio-Hernandez; Barbara J. Liimatainen; Jim Schumann; Brent Anderson; Kristie Nelson; Patricia Cruze; Doyle Thorne; Joey Robinson; Jessica Mecklenburg; Yarissa Torres; Melanie Atzmann; Steven Ulloa; Francisca Marmol; Jose Ulloa; Ruberterna Ulloa; Stephanie Marmol; Simona Francis; and Joseph Zapfe. *See* Pls.' Resp. Court's Min. Order 1–3, ECF No. 50; Ex. 482 (email from Janet Waswo asking to be excluded from case); Exhibit List at 5, 6, 9, 19 (not including exhibits on behalf of Michelle Dearing, Sherri Cottrell, Brenda Richards, Melanie Atzmann; Jose Ulloa, or Ruberterna Ulloa).

have had on them." Pls.' Mem. at 3 n.1. Although "the quantum and quality of evidence that might satisfy a court can be less than that normally required" at this stage, *Fraenkel*, 892 F.3d at 353 (citing *Owens v. Republic of Sudan*, 864 F.3d 751, 785 (D.C. Cir. 2017)), and although the Court is sensitive to the emotional toll of revisiting traumatic memories, Plaintiffs cannot prevail on default as to damages without any evidence whatsoever. Indeed, "the Court must deny an award of solatium damages to [a family member] for lack of evidence . . . . where *no* evidence is offered to show injury that an award of solatium damages might compensate." *See Roth*, 78 F. Supp. 3d at 406. And counsel for Plaintiffs offers no basis to deviate from this caselaw, which begs the question of how counsel can make a request as to these plaintiffs in good faith. The Court awards zero damages—without prejudice—to these plaintiffs. These plaintiffs retain the right to move again for damages if supported by competent evidence.

3.    *Family Members with Downward Departures under Heiser*

The following plaintiffs have provided evidence that merits downward departures from the *Heiser* framework.

a.    Family members who did not provide evidence of "mental anguish, bereavement [or] grief."

The following plaintiffs provided nearly-identical declarations saying that they are "unable to provide a written Declaration describing [their] experience:" Doris Voncile Bennett; Dempsey Lee Bennett; Darnell Travon Bennett; Brandy Cottrell; Kevyn Perez; and Ben Schumann. *See* Exs. 694, 695, 655, 874, 612. These declarations explain that the injury or death of their loved one was so traumatic that they are unwilling to revisit the event. *See id.* This is totally understandable. However, counsel for Plaintiffs only needed to adduce "testimony proving a close relationship [which is] usually [] sufficient to sustain an award of solatium damages." *Doe*, 414 F. Supp. 3d at 129 (internal citation omitted). But counsel failed to do so. "In such a circumstance and with little

else to go on regarding even the [Plaintiff]s' relationship to [their family member], the Court will award each [two-fifths of the amount] that can be available to [family member]s." *Pennington*, 2022 WL 168261, at *2 (citing *Roth*, 78 F. Supp. 3d at 403).

        b.     Family members who were young at the time of death or injury.

If a plaintiff is young at the time of their family member's death or injury, they may recover solatium damages if they "suffered emotional distress and other adverse effects of the impact of [the attack on their family member] as they were growing up." *Akins v. Islamic Republic of Iran*, 332 F. Supp. 3d 1, 44 (D.D.C. 2018); *see also M.M. v. Islamic Republic of Iran*, No. 21-cv-2783, 2023 WL 8867943, at *17, 19 (D.D.C. Dec. 22, 2023) (awarding solatium damages to an infant, one-and-a-half-year-old, and three-year-old who did "not immediately comprehend the loss" of their fathers but demonstrated emotional distress growing up). However, plaintiffs are not entitled to solatium damages where "there is little evidence showing that [the family member] experienced the severe emotional distress necessary to sustain a solatium award." *Est. of Brown v. Islamic Republic of Iran*, 872 F. Supp. 2d 37, 44 (D.D.C. 2012).

The following plaintiffs were very young at the time of the death or injury of their parent and have not offered evidence of "the severe emotional distress necessary to sustain a solatium award," *Est. of Brown*, 872 F. Supp. 2d at 44: J. Altman (6 months); A.R. Calderon (1 year); A.J. Calderon (1 year); L. Cope (10 months); C. Blickenstaff (2 years); A. Hancock (a few weeks); L. Marciante (6 weeks); K. Payne (1 month); C. Rzepa (2 months); I. Takai (10 days); K. Takai (4 years); and J.T. Weikel (8 months). *See* Ex. 59 (Decl. of Nadja Altman on behalf of J. Altman); Ex. 6 (Decl. of Mirtha V. Ponce on behalf of A.R. Calderon and A.J Calderon); Ex. 41 (Decl. of Erica Rene Owens on behalf of L. Cope); Ex. 112 (Decl. of Misty Blickenstaff on behalf of C. Blickenstaff); Ex. 453 (Decl. of Stacie Tscherny on behalf of J. Hancock and A. Hancock); Ex.

666 (Decl. of Stephanie Marciante on behalf of L. Marciante); Ex. 456 (Decl. of Julie Payne on behalf of A. Payne and K. Payne); Ex. 137 (Decl. of Cassandra Rzepa on behalf of C. Rzepa); Ex. 72 (Decl. of Mae Takai on behalf of K. Takai and I. Takai); Ex. 12 (Decl. of Wendy Theresa Green on behalf of J. Weikel). Lacking evidence of emotional distress, the Court cannot grant these Plaintiffs solatium awards. The Court awards no damages—without prejudice—to these plaintiffs. These plaintiffs retain the right to move again for damages if supported by competent evidence.

Other young Plaintiffs, however, have provided sufficient evidence to establish "the[ir] severe emotional distress necessary to sustain a solatium award." *Est. of Brown*, 872 F. Supp. 2d at 44. Although E. Beyers was only eight months old at the time of her father's death, she has "hurt[]" throughout her life due to his loss. Ex. 140 at 4. She "cr[ies] out for him, saying she misses him and wishes he could be alive" and "asks him to visit her in her dreams." *Id.* at 4–5. A. Diamond was four years old at the time of her father's death, and "really could not understand what had happened." Ex. 117 at 6. However, she "would cry at night for her daddy" and still has "deep sadness" about his loss. *Id.* at 6–7. A. Payne was one-and-a-half years old at the time of her father's death, however, she "ha[d] a very hard time because she knew something was wrong" and "would go through fits. She did not stop asking about Daddy for a long time." Ex. 456 at 4. J. Rosenberg was three years old at the time of his father's death and, although he "has minimal memory of his father," Ex. 698 at 3, his "emotions of losing [his father] arise on what would seem to be an ordinary day," such as becoming "overwhelmed with emotions and beg[inning] to cry" in school at the assignment to write a letter to a solider. *Id.* His younger brother, M. Rosenberg, "has no memory of his father." Ex. 699 at 3. However, "[t]he fact of having no memory leaves [M.] with a feeling of emptiness that can't be filled." *Id.* The Court awards the full solatium damages award amount to these plaintiffs.

> c.   Family members with attenuated relationships to the servicemember.

A downward departure is appropriate where there is "attenuation in a relationship." *Gration v. Islamic Republic of Iran*, No. 21-cv-1859, 2023 WL 5221955, at *34 (D.D.C. Aug. 15, 2023). The following plaintiffs did not establish a relationship with the servicemember sufficient to award the full *Heiser* base amount.

Linda Mattison-Ford only knew her stepson, Joshua Ford, for three to four years before he was killed. *See* Ex. 28 at 2. This warrants a downward departure due to the length of Linda and Joshua's relationship as compared with that of a parent who raised a child. *See Gration*, 2023 WL 5221955, at *34. Moreover, although Linda describes that she "los[t] a great step-son," she otherwise describes only how Joshua's death affected her husband. Ex. 28 at 2; *cf. O'Brien v. Islamic Republic of Iran*, 853 F. Supp. 2d 44, 48 (D.D.C. 2012) (no solatium damages to family member who was "[u]nab[le] to recall suffering emotional distress after the [attack on his family member]"). The Court therefore awards Linda Mattison-Ford $500,000.

James "Michael" Wiley married his deceased stepson's mother when his stepson, Sean Wiley, was 25 years old. *See* Ex. 121 at 1. Wiley had known Sean from a young age and treated Sean as if he were his "own," and describes that Sean's death "devastated" him. *Id.* at 2. However, a downward departure from *Heiser* is merited by the length of Wiley and Sean's relationship as compared with that of a parent who raised a child from birth. *See Gration*, 2023 WL 5221955, at *34. The Court therefore awards Wiley $2 million.

Thomas Moore, Jr. did not provide a unique declaration describing his relationship with his stepson, Ryan Russell. *See* Ex. 585. Instead, Moore's wife—Ryan's mother—provided a declaration in which she describes marrying Moore when Ryan was 12. *See id.* The declaration is signed by both Mr. and Ms. Moore, but is written from Ms. Moore's perspective. *See id.* Due to

the paucity of evidence on the effect of Ryan's death on Moore, Jr. specifically or the extent of their relationship, the Court awards Moore, Jr. $2 million. *Cf. O'Brien*, 853 F. Supp. 2d at 48.

Kayla Oppegard, stepsister to deceased servicemember Jason Schumann, lived with Jason for four years before he graduated from high school. *See* Ex. 615 at 1. Ms. Oppegard describes her deep distress upon learning of Jason's death. *See id.* at 2. However, the relatively short length of their relationship merits an award of $1.5 million. *See Gration*, 2023 WL 5221955, at *34.

David "Blake" Lantrip, stepbrother of injured servicemember Joshua Wells, primarily grew up in a different household from Joshua. *See* Ex. 102 at 1. Mr. Lantrip reports that he and Joshua had a close relationship, and that he went into a "state of shock" when he heard of Joshua's injury. *Id.* at 1–2. He also reports that watching Joshua suffer has been "hard." *Id.* Because the stepbrothers primarily grew up separately and without additional evidence concerning the effect of the attack on Mr. Lantrip, the Court awards Blake $500,000. *See Gration*, 2023 WL 5221955, at *34.

Finally, Edward Zapfe, brother of deceased servicemember William Zapfe, offered a declaration that neither described his relationship with William nor his reaction to William's death. *See* Ex. 636. Without evidence concerning the nature of their relationship or the effect of William's death, the Court will award Zapfe $500,000. *See Pennington*, 2022 WL 168261, at *2 (citing *Roth*, 78 F. Supp. 3d at 403); *cf. O'Brien*, 853 F. Supp. 2d at 48. This determination is made without prejudice, should Zapfe choose to submit additional evidence.

4.    *Family Member Plaintiffs Seeking Augmented Base Awards*

Upward deviations from the *Heiser* base amounts "may be warranted when, *inter alia*, 'evidence establish[es] an especially close relationship between the plaintiff and decedent, particularly in comparison to the normal interactions to be expected given the familial relationship;

medical proof of severe pain, grief or suffering on behalf of the claimant [is presented]; and circumstances surrounding the terrorist attack [rendered] the suffering particularly more acute or agonizing.'" *Est. of Brown*, 872 F. Supp. 2d at 43 (quoting *Oveissi*, 768 F. Supp. 2d at 26–27).

Four plaintiffs seek augmented base awards: Mirtha Ponce, surviving spouse of Roland Calderon; Erica Cope, former spouse of plaintiff Joshua Cope; Leesha Crookston, mother of deceased Duncan Crookston; and Stacie Tscherny, mother of plaintiff Jerral Hancock. *See* Pls.' Mem. at 15–31. Counsel for these four plaintiffs offers no legal support for this request. *See id.*

### a.     Mirtha Ponce (surviving spouse of Roland Calderon)

Mirtha Ponce requests $10 million due to "the extreme nature of [her] solatium injuries." Pls.' Mem. at 16. Plaintiffs' motion describes that Ponce loved her husband—who was killed by EFP attack in 2006—very much and still misses him dearly; the difficulty of raising young twins alone; Ponce fainted when she learned of Calderon's death; and that Ponce was unable to recognize her husband's face at the funeral. *See id.* at 15–16. However, Plaintiffs do not offer evidence in support of these details: Ms. Ponce's affidavit describes only her marriage to her husband and her sons' experience growing up without their father. *See* Ex. 6 at 1. "When courts award upward departures, they usually do so because of an unusual circumstance beyond the ordinary anguish that results from losing a family member." *Pennington*, 2022 WL 168261, at *3 (quoting *Selig*, 573 F. Supp. 3d at 66). The injuries that Ms. Ponce establishes by affidavit are the type of injuries that the base solatium award is meant to cover, which the Court therefore awards her.

### b.     Erica Cope (former spouse of Joshua Cope)

Erica Cope requests $12 million due to "the extreme nature of [her] solatium injuries." Pls.' Mem. at 21. Ms. Cope was married to Joshua Cope at the time of the attack that severely injured him; they divorced nine years later because of her husband's physical and emotional injuries. *See*

*id.* at 19. Ms. Cope undertook extensive caretaking of Joshua and effectively raised their three kids on her own. *See id.* at 20.

While tragic, upward adjustments are not warranted for "relatives of wounded and killed servicemembers . . . [whose] lives spiraled downward after the attack, leading to divorce and addiction . . . and other mental-health issues." *Pennington*, 2022 WL 168261, at *3. "Once again, the Court does not see a basis to deviate from the already-substantial awards, which take into consideration the likelihood of serious detrimental effects from these events on families." *Id.* The Court therefore awards Ms. Cope the base solatium award.

c.     Leesha Crookston (mother of deceased, Duncan Crookston)

Leesha Crookston requests $10 million due to "the extreme nature of [her] solatium injuries." Pls.' Mem. at 22. Ms. Crookston spent the last five months of her son Duncan Crookston's life with him after he lost all four limbs in an EFP attack. *See id.* at 21; Ex. 662 at 4–5. Ms. Crookston also suffered the attempted suicide of her other son due to Duncan's injury and death. *See* Pls.' Mem. at 21–22; Ex. 662 at 7. While tragic, Ms. Crookston suffered injuries that the base award established under *Heiser* is meant to recompense. *See Pennington*, 2022 WL 168261, at *3 The Court therefore awards Ms. Crookston the base solatium award.

d.     Stacie Tscherny (mother of Plaintiff Jerral Hancock)

Stacie Tscherny, the mother of plaintiff Jerral Hanckock, requests $7.5 million in solatium damages due to "the extreme nature of her multiple psychological and financial hardships endured in having to perform around-the-clock dependent care for her son." Pls.' Mem. at 31. Ms. Tscherny became her son's full-time caretaker after his injury and paralysis. *See id.* Ms. Tscherny quit her job to care for her son. *See id.* at 30. She describes how difficult and time-consuming it is to provide

this round-the-clock care. *See id.* Ms. Tscherny now lives on a reduced, strict budget and worries about her financial solvency as she ages. *See id.*

Solatium damages are awarded "for injury to the feelings and loss of . . . comfort and society," *Fraenkel*, 892 F.3d at 356, not for the economic injuries. Ms. Tscherny's admirable sacrifices undertaken to care for her son do not directly bear upon the solatium analysis. And "the *Heiser* standards account for the emotional distress of a parent who sees her children injured." *Mark v. Islamic Republic of Iran*, 626 F. Supp. 3d 16, 37 (D.D.C. 2022). The Court awards Ms. Tscherny the base solatium award.

D.    <u>Punitive Damages</u>

The Court bifurcates the damages question and will return separately to Plaintiffs' punitive damages request.

**IV.    CONCLUSION**

For the foregoing reasons, the Court grants Plaintiffs damages in the amounts set forth in the table below.

Date: June 30, 2024

ZIA M. FARUQUI
UNITED STATES MAGISTRATE JUDGE

**AWARD TABLE**

| Last Name or Estate | First Name | Relationship | Base Award (Solatium or Pain and Suffering) | Economic Damages | Total Compensatory Damages Awarded |
|---|---|---|---|---|---|
| Estate of James Adair | | Estate | $0 | $1,014,478 | $1,014,478 |
| Adair | Chelsea | Spouse | $8,000,000 | | $8,000,000 |
| Ahearn | Constance | Parent | $0 | | $0 |
| Ahearn | Kevin | Sibling | $0 | | $0 |
| Altman | Jake | Self | $5,000,000 | $2,111,612 | $7,111,612 |
| Altman | Nadja | Spouse | $4,000,000 | | $4,000,000 |
| Altman | J. | Son | $0 | | $0 |
| Prosser | Gloria | Parent | $2,500,000 | | $2,500,000 |
| Altman | Charles | Sibling | $1,250,000 | | $1,250,000 |
| Altman | Michael | Sibling | $1,250,000 | | $1,250,000 |
| Estate of Michael Anaya | | Estate | $1,000,000 | $389,580 | $1,389,580 |
| Anaya | Cheryl | Parent | $5,000,000 | | $5,000,000 |
| Moffett | Trista | Sibling | $2,500,000 | | $2,500,000 |
| Anaya, Jr. | Carmelo | Sibling | $2,500,000 | | $2,500,000 |
| Anderson | Bryan | Self | $11,000,000 | $620,810 | $11,620,810 |
| Waswo | Janet | Parent | $0 | | $0 |
| Waswo | James | Step-parent | $0 | | $0 |
| Anderson | Robert | Sibling | $1,250,000 | | $1,250,000 |
| Waswo | Briana | Sibling | $1,250,000 | | $1,250,000 |
| Beem | Brian | Self | $7,000,000 | $2,768,536 | $9,768,536 |
| Beem | Elizabeth | Spouse | $4,000,000 | | $4,000,000 |
| Beem | Diane | Parent | $2,500,000 | | $2,500,000 |
| Beem | Joseph | Parent | $2,500,000 | | $2,500,000 |
| Beem | Cassandra | Daughter | $2,500,000 | | $2,500,000 |
| Beem | Kaitlyn | Daughter | $2,500,000 | | $2,500,000 |
| Beem | Kelly | Daughter | $2,500,000 | | $2,500,000 |
| Colon | Cynthia | Sibling | $1,250,000 | | $1,250,000 |
| Beem, Jr. | Joseph | Sibling | $1,250,000 | | $1,250,000 |
| Estate of Durrell Bennett | | Estate | $0 | $406,817 | $406,817 |
| Bennett | Doris Voncile | Parent | $2,000,000 | | $2,000,000 |
| Bennett | Dempsey Lee | Parent | $2,000,000 | | $2,000,000 |
| Bennett | Darnell Travon | Sibling | $1,000,000 | | $1,000,000 |
| Estate of Nathan Beyers | | Estate | $0 | $1,415,566 | $1,415,566 |
| Beyers | Vanessa | Spouse | $8,000,000 | | $8,000,000 |
| Beyers | E. | Daughter | $5,000,000 | | $5,000,000 |
| Beyers | Tim | Parent | $5,000,000 | | $5,000,000 |
| Beyers | Sonja | Step-parent | $5,000,000 | | $5,000,000 |
| Beyers | Tyler | Sibling | $2,500,000 | | $2,500,000 |
| Blickenstaff | John | Self | $8,000,000 | $1,987,571 | $9,987,571 |

| Blickenstaff | Misty | Spouse | $4,000,000 | | $4,000,000 |
|---|---|---|---|---|---|
| Blickenstaff | M. | Daughter | $2,500,000 | | $2,500,000 |
| Blickenstaff | C. | Daughter | $0 | | $0 |
| Jones | Pamela Blickenstaff | Parent | $2,500,000 | | $2,500,000 |
| Blickenstaff | Jared | Sibling | $1,250,000 | | $1,250,000 |
| Blickenstaff | Adrianne | Sibling | $1,250,000 | | $1,250,000 |
| Carter | Trista | Sibling | $1,250,000 | | $1,250,000 |
| Botts | John A. | Self | $7,000,000 | $2,162,430 | $9,162,430 |
| Botts | Jennifer | Spouse | $4,000,000 | | $4,000,000 |
| Botts | Dara | Parent | $2,500,000 | | $2,500,000 |
| Botts | John S. | Parent | $2,500,000 | | $2,500,000 |
| Cunningham | Elizabeth | Sibling | $1,250,000 | | $1,250,000 |
| Donaldson | Peggy | Parent | $5,000,000 | | $5,000,000 |
| Butler | Eldridge | Sibling | $2,500,000 | | $2,500,000 |
| Estate of Adrian Butler | | Estate | $0 | $477,218 | $477,218 |
| Byers | Brandon | Self | $7,500,000 | $1,615,026 | $9,115,026 |
| Byers | Megan | Spouse | $4,000,000 | | $4,000,000 |
| Byers | Cameron | Daughter | $2,500,000 | | $2,500,000 |
| Estate of Jonathan Cadavero | | Estate | $0 | $1,208,726 | $1,208,726 |
| Cadavero | Nadia | Parent | $5,000,000 | | $5,000,000 |
| Dearing | Michelle | Spouse | $0 | | $0 |
| Cadavero | David | Parent | $5,000,000 | | $5,000,000 |
| Markarian | Kristia | Sibling | $2,500,000 | | $2,500,000 |
| Ponce | Mirtha | Spouse | $8,000,000 | | $8,000,000 |
| Calderon | A.R. | Son | $0 | | $0 |
| Calderon | A.J. | Son | $0 | | $0 |
| Ascencio | Rosa Milagro | Parent | $5,000,000 | | $5,000,000 |
| Rauda | Saul | Step-parent | $5,000,000 | | $5,000,000 |
| Rauda | Yeny | Sibling | $2,500,000 | | $2,500,000 |
| Rauda | Jasmyn | Sibling | $2,500,000 | | $2,500,000 |
| Rauda | Evelyn | Sibling | $2,500,000 | | $2,500,000 |
| Estate of Roland Calderon-Ascencio | | Estate | $0 | $344,177 | $344,177 |
| Cope | Joshua | Self | $11,000,000 | $2,008,930 | $13,008,930 |
| Owens (formerly Cope) | Erica | Spouse | $4,000,000 | | $4,000,000 |
| Cope | L. | Daughter | $0 | | $0 |
| Cope | Linda | Parent | $2,500,000 | | $2,500,000 |
| Cope | Philip | Parent | $2,500,000 | | $2,500,000 |
| Cope | Jacob | Sibling | $1,250,000 | | $1,250,000 |
| Cope | Jonathan | Sibling | $1,250,000 | | $1,250,000 |
| Cottrell | Sherri | Spouse | $0 | | $0 |
| Cottrell | E. | Son | $0 | | $0 |
| Cottrell | James | Son | $0 | | $0 |
| Cottrell | Brandy | Daughter | $2,000,000 | | $2,000,000 |
| Cottrell | Megan | Daughter | $0 | | $0 |

| | | | | | |
|---|---|---|---|---|---|
| Waters | Doeshie | Parent | $0 | | $0 |
| Craven | Josh | Self | $5,000,000 | $1,155,728 | $6,155,728 |
| Craven | Holly | Spouse | $4,000,000 | | $4,000,000 |
| Estate of Duncan Crookston | | Estate | $8,000,000 | $325,764 | $8,325,764 |
| Crookston | Leesha | Parent | $5,000,000 | | $5,000,000 |
| Dahlman | Louis | Self | $8,000,000 | $1,515,072 | $9,515,072 |
| Stockdale | Kay | Parent | $2,500,000 | | $2,500,000 |
| Stockdale | Larry | Step-parent | $0 | | $0 |
| Dahlman | Lucas | Sibling | $1,250,000 | | $1,250,000 |
| Ahrens | Amber K. | Sibling | $1,250,000 | | $1,250,000 |
| Estate of Sean Diamond | | Estate | $0 | $1,477,593 | $1,477,593 |
| Diamond | Loramay | Spouse | $8,000,000 | | $8,000,000 |
| Diamond | Taylor M. | Daughter | $5,000,000 | | $5,000,000 |
| Diamond | Madison J. | Daughter | $5,000,000 | | $5,000,000 |
| Diamond | Sean R. | Son | $5,000,000 | | $5,000,000 |
| Diamond | A. | Daughter | $5,000,000 | | $5,000,000 |
| Wiley | Sally Diamond | Parent | $5,000,000 | | $5,000,000 |
| Wiley | James "Michael" | Step-parent | $2,000,000 | | $2,000,000 |
| Diamond | Jason | Sibling | $2,500,000 | | $2,500,000 |
| Diamond | Michael | Sibling | $2,500,000 | | $2,500,000 |
| Donaldson | James | Self | $10,000,000 | $389,211 | $10,389,211 |
| Edds | Barry | Parent | $5,000,000 | | $5,000,000 |
| Edds | Julia | Parent | $5,000,000 | | $5,000,000 |
| Edds | Joel | Sibling | $2,500,000 | | $2,500,000 |
| Forbes, IV | Norman | Self | $5,000,000 | $474,075 | $5,474,075 |
| Ford | Lonnie W. | Parent | $5,000,000 | | $5,000,000 |
| Mattison-Ford | Linda | Step-parent | $500,000 | | $500,000 |
| Matson | Jessica | Sibling | $2,500,000 | | $2,500,000 |
| Ford | Shawn | Sibling | $2,500,000 | | $2,500,000 |
| Estate of Joshua Ford | | Estate | $0 | $516,009 | $516,009 |
| Gage | Samantha | Spouse | $0 | | $0 |
| Gage | Michael | Son | $0 | | $0 |
| Gage | Randy | Parent | $5,000,000 | | $5,000,000 |
| Gage | Tamara | Step-parent | $0 | | $0 |
| Rosa | Julie | Sibling | $2,500,000 | | $2,500,000 |
| Estate of Joseph Gage | | Estate | $0 | $1,787,804 | $1,787,804 |
| Gagne | Derek | Self | $10,000,000 | $447,200 | $10,447,200 |
| Mroczkowski | Faye | Parent | $2,500,000 | | $2,500,000 |
| Estate of Shawn Gajdos | | Estate | $0 | $262,217 | $262,217 |
| Richards | Brenda | Parent | $0 | | $0 |
| Estate of Zachariah Gonzalez | | Estate | $0 | $419,080 | $419,080 |
| Gonzalez | Laura | Parent | $5,000,000 | | $5,000,000 |
| Gonzalez | Benedict | Parent | $5,000,000 | | $5,000,000 |

| | | | | | |
|---|---|---|---|---|---|
| Gonzalez | Benedict Jacob "Jake" | Sibling | $2,500,000 | | $2,500,000 |
| Hancock | Jerral | Self | $11,500,000 | $1,573,680 | $13,073,680 |
| Hancock | J. | Son | $2,500,000 | | $2,500,000 |
| Hancock | A. | Daughter | $0 | | $0 |
| Tscherny | Stacie | Parent | $2,500,000 | | $2,500,000 |
| Benjamin | Dirrick | Step-parent | $0 | | $0 |
| Tscherny | Savannah | Sibling | $1,250,000 | | $1,250,000 |
| Hancock | Samantha | Sibling | $1,250,000 | | $1,250,000 |
| Estate of Blake Harris | | Estate | $0 | $1,727,706 | $1,727,706 |
| Harris | Joanna | Spouse | $0 | | $0 |
| Harris | J. | Son | $0 | | $0 |
| Harris | Deborah | Parent | $5,000,000 | | $5,000,000 |
| Henry | Gary | Parent | $5,000,000 | | $5,000,000 |
| Estate of Keith Kline | | Estate | $0 | $509,817 | $509,817 |
| Kline | Betty | Parent | $5,000,000 | | $5,000,000 |
| Kline, Jr. | John | Sibling | $2,500,000 | | $2,500,000 |
| Estate of David Knapp | | Estate | $7,500,000 | $358,536 | $7,858,536 |
| Knapp | Jeanette | Parent | $5,000,000 | | $5,000,000 |
| Estate of Christopher Kube | | Estate | $0 | $967,933 | $967,933 |
| Otte | Deborah | Parent | $5,000,000 | | $5,000,000 |
| Kube | David | Parent | $5,000,000 | | $5,000,000 |
| Kube | Jonathan | Sibling | $2,500,000 | | $2,500,000 |
| Kube | Jessica | Sibling | $2,500,000 | | $2,500,000 |
| Kube | Jason | Sibling | $2,500,000 | | $2,500,000 |
| Kube | Jennifer | Sibling | $2,500,000 | | $2,500,000 |
| Estate of Eric Lill | | Estate | $0 | $1,448,778 | $1,448,778 |
| Otero | Skye | Spouse | $0 | | $0 |
| Lill | Mikayla | Daughter | $0 | | $0 |
| Lill | Cody Jacob | Son | $0 | | $0 |
| Lill | Anthony | Parent | $5,000,000 | | $5,000,000 |
| Lill | Charmaine | Parent | $5,000,000 | | $5,000,000 |
| Jones | Kortne | Sibling | $2,500,000 | | $2,500,000 |
| Estate of Luigi Marciante, Jr. | | Estate | $0 | $1,327,155 | $1,327,155 |
| Marciante | Stephanie | Spouse | $8,000,000 | | $8,000,000 |
| Marciante | L. | Son | $0 | | $0 |
| Marciante | Maria | Parent | $5,000,000 | | $5,000,000 |
| Marciante | Luigi | Parent | $5,000,000 | | $5,000,000 |
| Balestrieri | Enza Marciante | Sibling | $2,500,000 | | $2,500,000 |
| Martinez | Sarah | Spouse | $4,000,000 | | $4,000,000 |
| Martinez | Saul | Self | $10,000,000 | $2,008,635 | $12,008,635 |
| Mayo | John | Parent | $5,000,000 | | $5,000,000 |
| Mayo | Rebecca | Parent | $5,000,000 | | $5,000,000 |
| Mayo | Andy | Sibling | $2,500,000 | | $2,500,000 |
| Estate of Barry Mayo | | Estate | $500,000 | $417,529 | $917,529 |

| | | | | | |
|---|---|---|---|---|---|
| Estate of Justin Mixon | | Estate | $0 | $1,269,900 | $1,269,900 |
| Mixon | Tia | Spouse | $0 | | $0 |
| Mixon | T.R. | Son | $0 | | $0 |
| Mixon | Melinda | Parent | $5,000,000 | | $5,000,000 |
| Mixon | Walter | Parent | $5,000,000 | | $5,000,000 |
| Mixon | Kenneth | Sibling | $2,500,000 | | $2,500,000 |
| Spillyards | Kimberly | Sibling | $2,500,000 | | $2,500,000 |
| Estate of Joshua Modgling | | Estate | $500,000 | $331,435 | $831,435 |
| Montano | Julie | Parent | $5,000,000 | | $5,000,000 |
| Modgling | Keith | Parent | $5,000,000 | | $5,000,000 |
| Modgling | Christopher | Sibling | $2,500,000 | | $2,500,000 |
| Stuart | Kellilynn | Sibling | $2,500,000 | | $2,500,000 |
| Modgling | Michelle | Sibling | $2,500,000 | | $2,500,000 |
| Schaffer | Kenneth | Sibling | $2,500,000 | | $2,500,000 |
| Morris | Glenn | Parent | $5,000,000 | | $5,000,000 |
| Morris | Amy | Parent | $5,000,000 | | $5,000,000 |
| Morris | Adam | Sibling | $0 | | $0 |
| Morris | Cassidy | Sibling | $0 | | $0 |
| Estate of Daniel Morris | | Estate | $0 | $1,639,172 | $1,639,172 |
| Pearson | Kristi | Spouse | $8,000,000 | | $8,000,000 |
| Estate of Andrew Nelson | | Estate | $0 | $1,060,341 | $1,060,341 |
| Paupore | Maria | Spouse | $4,000,000 | | $4,000,000 |
| Paupore | Mailey | Daughter | $2,500,000 | | $2,500,000 |
| Paupore | Cody | Son | $2,500,000 | | $2,500,000 |
| Osborne | Sharon | Parent | $2,500,000 | | $2,500,000 |
| Paupore | Thomas | Parent | $2,500,000 | | $2,500,000 |
| Bueno | Leslie | Sibling | $1,250,000 | | $1,250,000 |
| Paupore | Joe | Sibling | $0 | | $0 |
| Paupore | Nicholas | Self | $6,000,000 | $2,017,571 | $8,017,571 |
| Payne | Julie | Spouse | $8,000,000 | | $8,000,000 |
| Payne | A. | Daughter | $5,000,000 | | $5,000,000 |
| Payne | K. | Daughter | $0 | | $0 |
| Estate of Cameron Payne | | Estate | $0 | $1,218,167 | $1,218,167 |
| Estate of Andrew Pearson | | Estate | $0 | $3,899,826 | $3,899,826 |
| Pearson | Jon Marie | Spouse | $8,000,000 | | $8,000,000 |
| Perez | Daniel | Parent | $5,000,000 | | $5,000,000 |
| Perez | Vicki | Parent | $5,000,000 | | $5,000,000 |
| Perez | Kevyn | Sibling | $1,000,000 | | $1,000,000 |
| Estate of Emily Perez | | Estate | $0 | $698,763 | $698,763 |
| Estate of Joshua Plocica | | Estate | $0 | $385,491 | $385,491 |
| Thompson | Lisa | Parent | $5,000,000 | | $5,000,000 |
| Thompson | Lowell Keith | Step-parent | $5,000,000 | | $5,000,000 |
| Corbin | Brenna | Sibling | $2,500,000 | | $2,500,000 |
| Coward | Mariah | Sibling | $0 | | $0 |
| Richard | Lois Elaine | Parent | $5,000,000 | | $5,000,000 |

| | | | | | |
|---|---|---|---|---|---|
| Richard, Jr. | Joseph | Parent | $5,000,000 | | $5,000,000 |
| Billedeaux | Carmen Richard | Sibling | $2,500,000 | | $2,500,000 |
| Estate of Mark Rosenberg | | Estate | $0 | $4,677,932 | $4,677,932 |
| Rosenberg | Julie | Spouse | $8,000,000 | | $8,000,000 |
| Rosenberg | J. | Son | $5,000,000 | | $5,000,000 |
| Rosenberg | M. | Son | $5,000,000 | | $5,000,000 |
| Rubio | Jennifer | Spouse | $0 | | $0 |
| Rubio-Hernandez | N. | Son | $0 | | $0 |
| Moore | Kathy | Parent | $5,000,000 | | $5,000,000 |
| Moore, Jr. | Thomas | Step-parent | $2,000,000 | | $2,000,000 |
| Estate of Ryan Russell | | Estate | $0 | $439,155 | $439,155 |
| Rzepa | Jason | Self | $10,000,000 | $2,290,536 | $12,290,536 |
| Rzepa | Cassandra | Spouse | $4,000,000 | | $4,000,000 |
| Rzepa | C. | Son | $0 | | $0 |
| Rzepa | K. | Son | $2,500,000 | | $2,500,000 |
| Rzepa | Ann | Parent | $2,500,000 | | $2,500,000 |
| Shaidell | David Michael | Sibling | $1,250,000 | | $1,250,000 |
| Saaristo | Cheryl Ann | Spouse | $2,500,000 | | $2,500,000 |
| Saaristo | Leah Marie | Daughter | $2,500,000 | | $2,500,000 |
| Saaristo, Jr. | Brian | Son | $2,500,000 | | $2,500,000 |
| Saaristo | Shirley Ann | Parent | $2,500,000 | | $2,500,000 |
| Angell | Brenda | Sibling | $1,250,000 | | $1,250,000 |
| Liimatainen | Barbara J. | Sibling | $0 | | $0 |
| Saaristo | Brian | Self | $10,000,000 | $1,439,772 | $11,439,772 |
| Schild | Kayleen | Spouse | $8,000,000 | | $8,000,000 |
| Schild | Koby | Son | $5,000,000 | | $5,000,000 |
| Schild | Keely | Daughter | $5,000,000 | | $5,000,000 |
| Schild | Bruce | Sibling | $2,500,000 | | $2,500,000 |
| Schild | Brooks | Sibling | $2,500,000 | | $2,500,000 |
| Estate of Richard Schild | | Estate | $0 | $1,217,260 | $1,217,260 |
| Schumann | Jim | Parent | $0 | | $0 |
| Schumann | Ben | Sibling | $1,000,000 | | $1,000,000 |
| Anderson | Brent | Sibling | $0 | | $0 |
| Nelson | Kristie | Sibling | $0 | | $0 |
| Oppegard | Kayla | Sibling | $1,500,000 | | $1,500,000 |
| Estate of Jason Schumann | | Estate | $0 | $1,661,683 | $1,661,683 |
| Traynor Sowinski | Diane | Parent | $5,000,000 | | $5,000,000 |
| Sowinski | Jared | Sibling | $2,500,000 | | $2,500,000 |
| Sowinski | Austin | Sibling | $2,500,000 | | $2,500,000 |
| Estate of Nicholas Sowinski | | Estate | $0 | $519,384 | $519,384 |
| Dructor | Erin L. | Spouse | $8,000,000 | | $8,000,000 |
| Estate of Blake Stephens | | Estate | $0 | $1,611,228 | $1,611,228 |
| Barber | Audrey | Spouse | $8,000,000 | | $8,000,000 |
| McGee | Callie | Sibling | $2,500,000 | | $2,500,000 |
| Benefield | Stephanie | Sibling | $2,500,000 | | $2,500,000 |

| | | | | | |
|---|---|---|---|---|---|
| Estate of Brandon Stout | | Estate | $0 | $369,060 | $369,060 |
| Takai | Mae | Spouse | $4,000,000 | | $4,000,000 |
| Takai | Jonamae | Daughter | $2,500,000 | | $2,500,000 |
| Takai | Niana | Daughter | $2,500,000 | | $2,500,000 |
| Takai | I. | Daughter | $0 | | $0 |
| Takai | K. | Daughter | $0 | | $0 |
| Cruze | Patricia | Parent | $0 | | $0 |
| Takai | Juan | Parent | $2,500,000 | | $2,500,000 |
| Takai | Jolene | Sibling | $1,250,000 | | $1,250,000 |
| Takai | Jermaine | Sibling | $1,250,000 | | $1,250,000 |
| Takai | John | Self | $7,500,000 | $1,485,623 | $8,985,623 |
| Richard | Tammy | Parent | $5,000,000 | | $5,000,000 |
| Richard | Glenn | Parent | $5,000,000 | | $5,000,000 |
| Richard | Heather | Sibling | $2,500,000 | | $2,500,000 |
| Estate of Brandon Teeters | | Estate | $0 | $378,522 | $378,522 |
| Thorne | Karen | Parent | $5,000,000 | | $5,000,000 |
| Thorne | Doyle | Sibling | $0 | | $0 |
| Robinson | Joey | Sibling | $0 | | $0 |
| Tollefson | Walter | Parent | $5,000,000 | | $5,000,000 |
| Steinman | Mary | Parent | $5,000,000 | | $5,000,000 |
| Mecklenburg | Jessica | Sibling | $0 | | $0 |
| Miller | Kathryn Tollefson | Sibling | $2,500,000 | | $2,500,000 |
| Estate of John Tollefson | | Estate | $0 | $307,180 | $307,180 |
| Tong | Andrew "AJ" | Self | $7,500,000 | $2,632,754 | $10,132,754 |
| Torres | Yarissa | Spouse | $0 | | $0 |
| Estate of Teodoro Torres | | Estate | $0 | $448,996 | $448,996 |
| Estate of Jose E. Ulloa | | Estate | $0 | $1,633,769 | $1,633,769 |
| Atzmann | Melanie | Spouse | $0 | | $0 |
| Ulloa | Steven | Son | $0 | | $0 |
| Marmol | Francisca | Parent | $0 | | $0 |
| Ulloa | Jose | Parent | $0 | | $0 |
| Ulloa | Ruberterna | Sibling | $0 | | $0 |
| Marmol | Stephanie | Sibling | $0 | | $0 |
| Estate of Omar Vazquez | | Estate | $0 | $1,037,823 | $1,037,823 |
| Vazquez | Maria | Parent | $5,000,000 | | $5,000,000 |
| Vazquez | Pablo | Parent | $5,000,000 | | $5,000,000 |
| Vazquez, Jr. | Pablo | Sibling | $2,500,000 | | $2,500,000 |
| Vazquez | Marisel | Sibling | $2,500,000 | | $2,500,000 |
| Vazquez | Javier | Sibling | $2,500,000 | | $2,500,000 |
| Vendela | Marianne | Parent | $2,500,000 | | $2,500,000 |
| Vendela | Travis | Self | $10,000,000 | $1,185,131 | $11,185,131 |
| Wager | Michelle | Self | $9,000,000 | $840,651 | $9,840,651 |
| Wagner | Bryan | Self | $7,500,000 | $398,543 | $7,898,543 |
| Wakeman | Margaret | Parent | $5,000,000 | | $5,000,000 |
| Wakeman | David A. | Parent | $5,000,000 | | $5,000,000 |

| Wakeman | William Zachary | Sibling | $2,500,000 | | $2,500,000 |
|---|---|---|---|---|---|
| Estate of Dustin Wakeman | | Estate | $0 | $503,121 | $503,121 |
| Green | Wendy | Spouse | $8,000,000 | | $8,000,000 |
| Weikel | J.T. | Son | $0 | | $0 |
| Weikel | Chad | Sibling | $2,500,000 | | $2,500,000 |
| Estate of Ian Weikel | | Estate | $0 | $2,517,909 | $2,517,909 |
| Lantrip | Lydia | Parent | $2,500,000 | | $2,500,000 |
| Wells, Jr. | Billie | Parent | $2,500,000 | | $2,500,000 |
| Lantrip | David "Blake" | Sibling | $500,000 | | $500,000 |
| Wells | Jeremy | Sibling | $1,250,000 | | $1,250,000 |
| Wells | Joshua | Self | $10,000,000 | $1,551,377 | $11,551,377 |
| Wendling | Randall | Parent | $5,000,000 | | $5,000,000 |
| Wendling | Carrie | Parent | $5,000,000 | | $5,000,000 |
| Estate of Michael Wendling | | Estate | $0 | $432,093 | $432,093 |
| White | Jennifer | Spouse | $8,000,000 | | $8,000,000 |
| Brooks | Julia | Parent | $5,000,000 | | $5,000,000 |
| Ramos | Marcus | Sibling | $2,500,000 | | $2,500,000 |
| Estate of Lucas T. White | | Estate | $0 | $1,391,650 | $1,391,650 |
| Wilcox | Charlene | Parent | $5,000,000 | | $5,000,000 |
| Wilcox | Bianca | Sibling | $2,500,000 | | $2,500,000 |
| Wilcox | Ona | Sibling | $2,500,000 | | $2,500,000 |
| Wilcox, III | Charles | Sibling | $2,500,000 | | $2,500,000 |
| Estate of Carlos Wilcox | | Estate | $0 | $442,022 | $442,022 |
| Francis | Simona | Parent | $0 | | $0 |
| Estate of LeRon Wilson | | Estate | $0 | $297,589 | $297,589 |
| Zapfe | Joseph | Sibling | $0 | | $0 |
| Zapfe | Edward | Sibling | $500,000 | | $500,000 |
| **TOTALS** | | | | | **$1,019,872,428** |